## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILLY MIKALI AMDUSO, | |
| and | |
| JOYCE AUMA OMBESE ABUR, in her own right, as Executrix of the ESTATE OF ERIC ABUR ONYANGO, Deceased, and on behalf of her child TILDA ABUR, | |
| and | CIVIL ACTION NO.:_____ |
| JAMES ANDAYI MUKABI, spouse of Milly Mikali Amduso | |
| and | |
| HAMSA SAFULA ASDI, in her own right, as Executrix of the ESTATE OF ABALIAH MUSYDKA MWILU, Deceased, and on behalf of her children HAMIDA MWILU, VONZAIDRISS MWILU, and ASHA MWILU | |
| and | |
| GERALD W. BOCHART, | |
| and | |
| JOMO MATIKO BOKE, | |
| and | |
| MONICAH KEBAYI MATIKO, spouse of Jomo Matiko Boke, | |
| and | |
| VELMA AKOSA BONYO,  in her own right, as Executrix of the ESTATE OF CHRISPINE BONYO, Deceased, and on behalf of the children | |

−1−

|                                                                                                     |   |
|-----------------------------------------------------------------------------------------------------|---|
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| DOREEN BONYO, ELIJAH BONYO, ANGELA                                                                  | * |
| BONYO, and WINNIE BONYO,                                                                             | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| BENSON OKUKU BWAKU,                                                                                  | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| BEATRICE MUGEMI BWAKU, spouse of                                                                    | * |
| Benson Okuko Bwaku,                                                                                  | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| BELINDA CHAKA,                                                                                       | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| MURABU CHAKA, spouse of Belinda Chaka,                                                              | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| BONIFACE G. CHEGE,                                                                                   | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| LUCY WAIRIMU, spouse of Boniface G. Chege,                                                          | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| CATHERINE LUCY NYAMBURA MWANGI,                                                                      | * |
| spouse of Hilary Ambrose Fernandes,                                                                 | * |
|                                                                                                     | * |
| and                                                                                                 | * |
|                                                                                                     | * |
| ANASTASIA GIANOPULOS, as Executrix of the                                                           | * |
| ESTATE OF PHAEDRA VERONTAMITIS,                                                                      | * |
| Deceased, and on behalf of the children                                                             | * |
| LEON VERONTAMITIS, PAUL                                                                              | * |
| VERONTAMITIS, and                                                                                   | * |
| ALEXANDER VERONTAMITIS,                                                                              | * |
|                                                                                                     | * |

and                                                          *
                                                             *
GRACE NJERI GICHO, in her own right, as                      *
Executrix of the ESTATE OF PETER KABAU                       *
MACHARIA, Deceased, and on behalf of the                     *
children DIANA NJOKI,                                        *
                                                             *
and                                                          *
                                                             *
LUCY MUTHONI GITAU, in her own right, as                     *
Executrix of the ESTATE OF LAWRENCE                          *
AMBROSE GITAU, Deceased, and on behalf of the*
children MARGARET WAMBUI GITAU, SUSAN *
NJERI GITAU, CATHERINE WAITHERA GITAU,*
FELISTER WANJIRU GITAU and ERNEST                            *
GIGHIRI GITAU,                                               *
                                                             *
and                                                          *
                                                             *
CATHERINE W. GITUMBU, in her own right,                      *
as Executrix of the ESTATE OF JOEL GITUMBU                   *
KAMA, Deceased, and on behalf of the children                *
DAVID KAMAN, PHILIPE KAMAN, PETER                            *
KAMAN, and PERRIS KAMAN,                                     *
                                                             *
and                                                          *
                                                             *
JAPETH MUNJAL GODIA,                                         *
                                                             *
and                                                          *
                                                             *
MERAB A. GODIA, spouse of Japeth                             *
Munjal Godia,                                                *
                                                             *
and                                                          *
                                                             *
JOTHAM ODIANGO GODIA,                                        *
                                                             *
and                                                          *
                                                             *
GRACE AKANYA, spouse of                                      *
Jonatham Odiango Godia,                                      *
                                                             *
and                                                          *
                                                             *

OMARI IDI, in her own right, as Executrix of the    \*
ESTATE OF HINDU OMARI IDI, Deceased, and    \*
on behalf of the children MAHAMUD IDI,    \*
RASHID IDI, and HAMIDA IDI,    \*
   \*
and    \*
   \*
CAROLINE NGUHI KAMAU,    \*
   \*
and    \*
   \*
KIMANI KAMAU, spouse of    \*
Caroline Nguhi Kamau,    \*
   \*
and    \*
   \*
HANNAH NGENDA KAMAU, in her own right, as\*
Executrix of the ESTATE OF VINCENT KAMAU  \*
NYOIKE, Deceased, and on behalf of the children  \*
STANLEY NYOIKE, SIMON NGUGI, MERCY  \*
WANJIRE, JENNIFER NJERI, and ANTHONY  \*
NJOROGE,    \*
   \*
and    \*
   \*
JANE KAMAU, in her own right, as Executrix of  \*
the ESTATE OF JOSEPH NDUTA KAMAU,  \*
Deceased, and on behalf of the children MONICAH\*
WAIRIMO KAMAU, and JOAN WANJIKO  \*
KAMAU,    \*
   \*
and    \*
   \*
JOSINDA KATUMBA KAMAU, in her own right,  \*
As Executrix of the ESTATE OF VINCENT  \*
KAMAU NYOIKE, Deceased, and on behalf of the  \*
Children FAITH WANZA KAMAU, CHRISTINE  \*
M. KAMAU, CAROLYNE W. KAMAU,  \*
DUNCAN NYOIKE, and RUTH NDUTA,  \*
   \*
and    \*
   \*
JANE KAVINDU KATHUKA, in her own right, as \*
Executrix of the ESTATE OF GEOFFREY MULU  \*
KALIO, Deceased, and on behalf of the children  \*

—4—

and                                                     *
                                                        *
DAWN NTHAMBI MULU,                                      *
                                                        *
and                                                     *
                                                        *
IKONYE MICHAEL KIARIE,                                  *
                                                        *
and                                                     *
                                                        *
JANE MWERU KIARIE, spouse of                            *
Ikonye Michael Kiarie,                                  *
                                                        *
and                                                     *
                                                        *
HUMPHREY KIBIRU,                                        *
                                                        *
and                                                     *
                                                        *
JENNIFER WAMBUI, spouse of                              *
Humphrey Kibiru,                                        *
                                                        *
and                                                     *
                                                        *
ELIZABETH MULI KIBUE,                                   *
                                                        *
and                                                     *
                                                        *
MICHAEL KIBUE KAMAU, spouse of                          *
Elizabeth Muli Kibue,                                   *
                                                        *
and                                                     *
                                                        *
DAVID K. KIBURU,                                        *
                                                        *
and                                                     *
                                                        *
JUDY WALTHERA, spouse of David K. Kiburu,               *
                                                        *
and                                                     *
                                                        *
FAITH WAMBUI KIHATO, in her own right, as               *
Executrix of the ESTATE OF TONY KIHATO                  *
IRUNGU, Deceased, and on behalf of the children         *
JACQUELINE IRUNGU and STEVE INRUGU,                     *

```
                                                    *
and                                                 *
                                                    *
HARRISON KARIUKI KIMANI,                            *
                                                    *
and                                                 *
                                                    *
GRACE WANJIKU KIMANI, spouse of                     *
Harrison Kariuki Kimani,                            *
                                                    *
and                                                 *
                                                    *
GRACE NJERI KIMATA, in her own right, as            *
Executrix of the ESTATE OF FRANCIS WATORO*
MANAI, Deceased, and on behalf of the children      *
VICTOR MANAI and RACHEAL WAMBUI,                    *
                                                    *
and                                                 *
                                                    *
ALICE MUZHOMI KIONGO, in her own right, as          *
Executrix of the ESTATE OF JOSEPH KAMAU             *
KIONGO, Deceased, and on behalf of the children     *
ANNA WAMBUI, PAULINE NYAMBURU, and                  *
MEREY WAIRUMU,                                      *
                                                    *
and                                                 *
                                                    *
LUCY KAMAU KIONGO, in her own right, as             *
Executrix of the ESTATE OF JOSEPH KAMAU             *
KIONGO, Deceased, and on behalf of the children     *
NEWTON KAMAU, PETER IKONYA, TERESIA                 *
WAITIMER, PAULINE WANKIA KAMAU, and                 *
the ESTATE OF TERESIA WAIRIMU KAMAU,                *
                                                    *
and                                                 *
                                                    *
LUCY KAMAU KIONGO, as Executrix of the              *
ESTATE OF TERESIA WAIRIMU KAMAU,                    *
                                                    *
and                                                 *
                                                    *
ELIZABETH VICTORIA KITAO,                           *
                                                    *
and                                                 *
                                                    *
```

−6−

and                                                    \*
                                                       \*
RAPHAEL N. KIVINDYO,                                   \*
                                                       \*
and                                                    \*
                                                       \*
MARGARET MWIKALI NZOMO, spouse of                      \*
Raphael N. Kivindyo,                                   \*
                                                       \*
and                                                    \*
                                                       \*
LUKA MWALIE LITWAJ,                                    \*
                                                       \*
and                                                    \*
                                                       \*
MARY VUTAGWA MWALIE, spouse of                         \*
Luka Mwalie Litwaj,                                    \*
                                                       \*
and                                                    \*
                                                       \*
STANLEY KINYUA MACHARIA,                               \*
                                                       \*
and                                                    \*
                                                       \*
NANCY N. MACHARI, spouse of                            \*
Stanley Kinyua Macharia,                               \*
                                                       \*
and                                                    \*
                                                       \*
ELIZABETH VUTAGE MALOBA, in her own                    \*
right, as Executrix of the ESTATE OF FREDERICK\*
MALOBA YAFES, Deceased, and on behalf of the \*
children MARLON OKILE MALOBA, LEWIS                    \*
MAFWAVO MALOBA, and SHARON                             \*
ADHIAMBO MALOBA,                                       \*
                                                       \*
and                                                    \*
                                                       \*
MARGARET ONYACHI MALOBA, in her own                    \*
right, as Executrix of the ESTATE OF FREDRICK \*
MALOBA YAFES, Deceased, and on behalf of the \*
children KENNETH MALOBA, FAITH                         \*
ACHEING, DERRICK MAOAKITWE, STEVEN                     \*
ODHIAMBO, and BELINDA ADHIAMBO,                        \*
                                                       \*

and                                                           *
                                                              *
SARAH MWENDIA MBOGO, in her own right, as *
Executrix of the ESTATE OF FRANCIS MBOGO       *
NJUNGE, Deceased, and on behalf of the children  *
MESHARK IRERI, ISACK KARIUKI, REUBEN      *
NYAGA, NANCY WANJERU, EPHANUS NJAGI,*
STEPHE NJUKI and ANNE MUCHOGO,               *
                                                              *
and                                                           *
                                                              *
STELLA WAMBUI MBUGUA,                              *
                                                              *
and                                                           *
                                                              *
SOLOMON MBUGUA MBUUN, spouse of            *
Stella Wambui Mbugua,                                    *
                                                              *
and                                                           *
                                                              *
GEORGE MAGAK MIMBA,                                *
                                                              *
and                                                           *
                                                              *
NANCY MAGAK, spouse of                               *
George Magak Mimba,                                       *
                                                              *
and                                                           *
                                                              *
EMILY KANAIZA MINAY,                                 *
                                                              *
and                                                           *
                                                              *
HUDSON CHORE MAKIDIAH, spouse of          *
Emily Kanaiza Minay,                                       *
                                                              *
and                                                           *
                                                              *
BARBARA E. MULI,                                         *
                                                              *
and                                                           *
                                                              *
STEPHEN MULI, spouse of Barbara E. Muli,     *
                                                              *
and                                                           *

—8—

CHARLES MWAKA MULWA,

and

CATHERINE NDUKI MWAKA,
spouse of Charles Mwaka Mulwa,

and

RAPHAEL PETER MUNGUTI,

and

MARY MBENEKA MUNGUTI, spouse of
Raphael Peter Munguti,

and

BENSON NDEGWA MURUTHI,

and

PHOEBE NYAGUTHI NDEGWA, spouse of
Benson Ndegwa Muruthi,

and

NICHOLAS MULWA MUTISO,

and

ANGECA MWONGELI, spouse of
Nicholas Mulwa Mutiso,

and

SAMMY NG'ANG'A MWANGI

and

LUCY N. NG'ANG'A, spouse of
Sammy Ng'ang'a Mwangi,

and

SARAH TIKOLO NANIAI, in her own right, as *
Executrix of the ESTATE OF MOSES NAMAI, *
Deceased, and on behalf of the children NIGEEL *
ANDIIKA NAMAI

and

JAMES NDEDA,

and

ROSELYNE KASORANI, spouse of James Ndeda, *

and

CHARLES MWANGI NDIBUI,

and

MARGRET MWANGI, spouse of
Charles Mwangi Ndibui,

and

FRANCIS MAINA NDIBUI,

and

AARON MAKAU NDIVO,

and

LYDIAH MDILA MAKAU spouse of
Aaron Makau Ndivo,

and

MARY MUTHONI NDUNGU, in her own right, as *
Executrix of the ESTATE OF FRANCIS BDUNGU*
MBUGUA, Deceased, and on behalf of the children *
EDITH NJERI, SAMUEL MBUGWA, ANGES
WANJIKU, JAMLECK GITAU, JOHN MWIRY,
and ANASTASIAH LUCY MUGURE.

and                                                         *
                                                            *
OMUCHIRWA CHARLES OCHOLA,                                   *
                                                            *
and                                                         *
                                                            *
REAL AID OCHOLA, spouse of                                  *
Omuchirwa Charles Ochola,                                   *
                                                            *
and                                                         *
                                                            *
MARY MAKAU OFISI,                                           *
                                                            *
and                                                         *
                                                            *
JOHN MAKAU OFISI, spouse of                                 *
Mary Makau Ofisi,                                           *
                                                            *
and                                                         *
                                                            *
JULIUS GWARDO OGORO,                                        *
                                                            *
and                                                         *
                                                            *
ELIZABETH KERUBO GWARO, spouse of                           *
Julius Gwaro Ogoro,                                         *
                                                            *
and                                                         *
                                                            *
PRISCILLA NDULO OKATCH, in her own right                    *
as Executrix of the ESTATE OF MAURICE                       *
OKATUH OGOLLA, Deceased, and on behalf of                   *
the children JACKLINE ACHIENG, ROSEMARY                     *
ANYANGO, SAMSON OGOLLA, and                                 *
DENNIS OKOTH,                                               *
                                                            *
and                                                         *
                                                            *
CAROLINE OCHI OKECH,                                        *
                                                            *
and                                                         *
                                                            *
JONATHAN GILBERT OKECH, spouse of                           *
Caroline Ochi Okech,                                        *

and                                             *
                                                *
PATRICK OUMA OKECH,                             *
                                                *
and                                             *
                                                *
PHELSITER AKINYI OUMA AMBOGO, spouse            *
of Patrick Ouma Okech,                          *
                                                *
and                                             *
                                                *
JOASH OTAO OKINDO,                              *
                                                *
and                                             *
                                                *
LYDIAH NYABOKA OTAO, spouse of                  *
Joash Otao Okindo,                              *
                                                *
and                                             *
                                                *
ROSEMARY A. OLEWE, in her own right, as         *
Executrix of the ESTATE OF FRANCIS OLEWE        *
OCHILO, Deceased, and on behalf of the children *
CHARLES OLEWE, JULIET OLEWE, and                *
WENDY OLEWE,                                    *
                                                *
and                                             *
                                                *
DANIEL OWITI OLOO,                              *
                                                *
and                                             *
                                                *
MAGDALINE ANYANGO OWITI, spouse of              *
Daniel Owiti Oloo,                              *
                                                *
and                                             *
                                                *
WELLINGTON M. OLUOMA,                           *
                                                *
and                                             *
                                                *
MARY AKOTSI MUDECHE, spouse of                  *
Wellington M. Oluoma,                           *
                                                *
and                                             *

–12–

|                                                                                                                                                                                  |     |
| -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | --- |
|                                                                                                                                                                                  | *   |
| FLORENCE PAMELA OMORI, in her own right, As Executrix of the ESTATE OF EDWIN OPIYO OMORI, Deceased, and on behalf of the children BRYAN BOAZ OMORI, and JERRY ORETA OMORI,       | *   |
| and                                                                                                                                                                              | *   |
| DOREEN ATIENO OPORT,                                                                                                                                                             | *   |
| and                                                                                                                                                                              | *   |
| OPORT OPORT, spouse of Doreen Atieno Oport,                                                                                                                                      | *   |
| and                                                                                                                                                                              | *   |
| SAMUEL ODHIAMOB ORIARO,                                                                                                                                                          | *   |
| and                                                                                                                                                                              | *   |
| BETTY OBUNGA, spouse of Samuel Odhiamob Oriaro,                                                                                                                                  | *   |
| and                                                                                                                                                                              | *   |
| TOBIAS OYANDA OTIENO,                                                                                                                                                            | *   |
| and                                                                                                                                                                              | *   |
| RACHEL OYANDA, spouse of Tobias Oyanda Otieno,                                                                                                                                   | *   |
| and                                                                                                                                                                              | *   |
| MARGARET KANINI OTOLO, in her own right, as Executrix of the ESTATE OF ROGER TOKA OTOLO, Deceased, and on behalf of the children VICTOR OTOLO, ABRAHAM OTOLO, and RICHARD OTOLO, | *   |
| and                                                                                                                                                                              | *   |
| TRUSHA PATEL,                                                                                                                                                                    | *   |

–13–

and                                              *
                                                 *
PANKAY PATEL, spouse of Trusha Patel,            *
                                                 *
and                                              *
                                                 *
JACINTA W. WAHOME,                               *
                                                 *
and                                              *
                                                 *
JOSEPH M. WAHOME, as spouse of                   *
Jacinta W. Wahome,                               *
                                                 *
and                                              *
                                                 *
WINFRED WAIRIMU WAMAI, in her own right,         *
as Executrix of the ESTATE OF ADAM TITUS         *
WAMAI, Deceased, and on behalf of the children   *
WILLIE WAMAI, LLOYD WAMAI, and                   *
ANGELA WAMAI.                                    *
                                                 *
              Plaintiffs                         *
                                                 *
v.                                               *
                                                 *
REPUBLIC OF SUDAN                                *
Ministry of External Affairs                     *
People's Palace                                  *
Khartoum, Sudan                                  *
                                                 *
and                                              *
                                                 *
MINISTRY OF THE INTERIOR                         *
OF THE REPUBLIC OF THE SUDAN                     *
People's Palace                                  *
Khartoum, Sudan                                  *
                                                 *
and                                              *
                                                 *
THE ISLAMIC REPUBLIC OF IRAN                     *
Ministry of Foreign Affairs                      *
Khomeini Avenue                                  *
United Nations Street                            *
Tehran, Iran                                     *
                                                 *

and                                          *
                                             *
THE IRANIAN MINISTRY                         *
OF INFORMATION AND SECURITY                  *
Pasdaran Avenue                              *
Golestan Yekom                               *
Tehran, Iran                                 *
                                             *
                  Defendants                 *
*******************************************

## COMPLAINT

Plaintiffs, Joyce Auma Ombese Abur, et al., file this lawsuit pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A or its predecessor law, 28 U.S.C. § 1605(a)(7), to the extent it continues to apply to this case, and related statutes. The lawsuit is brought to recover for their damages suffered as a result of the Sudanese and Iranian sponsored terrorist attacks upon the Embassies of the United States located in Dar Es Salaam, Tanzania and Nairobi, Kenya on August 7, 1998.

The scope of potential plaintiffs in a lawsuit brought under 28 U.S.C. § 1605A, the new state sponsor of terrorism exception to foreign sovereign immunity, includes non-US nationals if the "claimant or victim was at the time" of the terrorist bombing an "employee of the Government of the United States . . ." or were "an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment . . . ." 28 U.S.C. § 1605A(a)(2)(A)(ii).

1. Jurisdiction in this Court arises pursuant to 28 U.S.C. §§ 1605A, or its predecessor law, 28 U.S.C. § 1605(a)(7), to the extent it continues to apply to this case, 1330(a), 1331 and 1332(a)(2).

2. The Plaintiffs in this case are two U.S. nationals and non-US nationals who were "employee of the Government of the United States . . ." or were "an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment . . . ." at the time of the bombings.

3. Regarding the two U.S. nationals, subject matter jurisdiction is properly asserted under 28 U.S.C. § 1605A or in the alternative 28 U.S.C. § 1605(a)(7).[1]

4. While acting within the scope of their employment or office, agents, employees and officials of the Islamic Republic of Iran ("Iran") provided the technical know-how and tactical training that allowed Al Qaeda to build the bombs that destroyed the embassies. This qualifies as material support as it is defined under 28 U.S.C. § 1605A.

5. While acting within the scope of their employment or office, agents, employees and officials of the Republic of Sudan ("Sudan") provided a broad range of critical support to Al Qaeda over a number of years without which Al Qaeda would have never been able to relocate from Afghanistan to Africa or grow into an organization capable of performing the attacks on the embassies. This qualifies as material support as it is defined under 28 U.S.C. § 1605A.

6. With regard to non-US national plaintiffs, Iran and the Sudan waived their sovereign immunity under 28 U.S.C. § 1605A when they aided and abetted, conspired with and materially supported the terrorist group that destroyed the two US embassies. The provision of material support by Iran and the Sudan meets the requirements for subject matter

---

[1] Hereinafter, subsequent references to 28 U.S.C. § 1605A are intended to encompass both 28 U.S.C. § 1605A and its predecessor law, 28 U.S.C. § 1605(a)(7), to the extent it continues to apply to this case. 28 U.S.C. § 1605A on its face creates subject matter jurisdiction for US nationals and non-US national who were "employee[s] of the Government of the United States . . ." or were "an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment . . . ." 28 U.S.C. § 1605A(a)(2)(A)(ii). 28 U.S.C. § 1605(a)(7) only creates subject matter jurisdiction for US nationals.

jurisdiction established by 28 U.S.C. § 1605A as to the US national and non-national plaintiffs. 28 U.S.C. § 1605A allows non-US nationals, if the claimant or the victim was an "employee of the Government of the United States . . .", or were "an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment . . . ." 28 U.S.C. § 1605A(a)(2)(A)(ii), to bring suit against the state-sponsors of terrorism who caused their personal injury or death. All non-US nationals were either employees of the Government of the United States, an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment or a family member thereof.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

8.  The causes of action contained in the eight counts later enumerated herein in this Complaint are based upon the following sources of law:

> a.     a new federal private right of action 28 U.S.C. § 1605A(c), which is available both to US national and non-US national Plaintiffs and wherever the common or statutory law of a Plaintiff's residence contains rights or makes further damages available that are not duplicative of the recovery afforded under 28 U.S.C. § 1605A(c) as Plaintiffs have causes of action under the common or statutory law of the US state or foreign country where they were domiciled at the time of the attack;
>
> b.     as described above for the non-US nationals Plaintiffs, the common and statutory laws of Kenya for wrongful death, solatium, loss of consortium, assault and battery, intentional infliction of emotion distress and survival, whether statutory or common law, including but not limited

-17-

to the Kenyan Fatal Accidents Act, and

 c. as described above for the US national Plaintiffs, the common law of the States of Virginia and Washington, dealing with assault and battery, loss of consortium and intentional infliction of emotional distress, whether statutory or common law.

## PARTIES

 A. **Nairobi, Kenya, Embassy Bombing Plaintiffs:**

9. Plaintiff, **JOYCE AUMA OMBESE ABUR**, is a citizen of Kenya and is the widow of the late **ERIC ABUR ONYANGO**, who was employed by the U. S. Government as Voucher Examiner and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right, in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the child **TILDA ABUR.**

10. Plaintiff, **MILLY MIKALI AMDUSO**, injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U. S. Government as a Janitoress and is a citizen of Kenya who brings this action in his/her own right.

11. Plaintiff, **JAMES ANDAYI MUKABI,** a citizen of Kenya and the spouse of **Milly Mikali Amduso,** who was employed by the U. S. Government as a Janitoress, and brings this action for his/her loss of society and severe emotional distress.

12. Plaintiff, **GERALD W. BOCHART**, injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, is a citizen of the State of Washington, who brings this action in his/her own right.

13. Plaintiff, **JOMO MATIKO BOKE,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U. S. Government as a Security Officer, and is a citizen of Kenya who brings this action in his/her own right.

14. Plaintiff, **MONICAH KEBAYI MATIKO**, a citizen of Kenya and the spouse of **Jomo Matiko Boke**, who was employed by the U. S. Government as a Security Officer, and brings this action for his/her loss of society.

15. Plaintiff, **VELMA AKOSA BONYO**, is a citizen of Kenya and is the widow of the late **CHRISPINE BONYO**, who was employed by the U. S. Government as a Financial Analyst and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on the behalf of the children **DOREEN BONYO, ELIJAH BONYO, ANGELA BONYO,** and **WINNIE BONYO.**

16. Plaintiff, **BENSON OKUKU BWAKU,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as Security Officer and is a citizen of Kenya who brings this action in his/her own right.

17. Plaintiff, **BEATRICE MUGEMI BWAKU,** a citizen of Kenya and the spouse of **Benson Okuku Bwaki**, who was employed by the U.S. Government as Security Officer, and brings this action for his/her loss of society and severe emotional distress.

18. Plaintiff, **BONIFACE G. CHEGE,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Telephone Accountant and is a citizen of Kenya who brings this action in his/her own right.

19. Plaintiff, **LUCY WAIRIMU,** a citizen of Kenya and the spouse of **Boniface G. Chege,** who was employed by the U.S. Government as a Telephone Accountant, and brings this action for his/her loss of society and severe emotional distress.

20. Plaintiff, **HILARY AMBROSE FERNANDES,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Reproduction and Fax Operator and is a citizen of Kenya who brings this action in his/her own right.

21. Plaintiff, **CATHERINE LUCY NYAMBURA MWANGI,** a citizen of Kenya and the spouse of **Hilary Ambrose Fernandes,** who was employed by the U.S. Government as a Reproduction and Fax Operator, and brings this action for his/her loss of society and severe emotional distress.

22. Plaintiff, **ANASTASIA GIANOPULOS,** is a citizen of Kenya and is the Executrix of the **ESTATE OF PHAEDRA VERONTAMITIS,** who was employed by the U.S. Government as a Personnel Specialist and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.  Plaintiff brings this action in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and also on behalf of the children **LEON VERONTAMITIS, PAUL VERONTAMITIS,** and **ALEXANDER VERONTAMITIS.**

23. Plaintiff, **CATHERINE W. GITUMBU,** is a citizen of Kenya and is the widow of the late **JOEL GITUMBU KAMAN,** who was employed by the U.S. Government as a Supervisor of the Finance Department and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.  Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death,

Survival and other claims pled in this Complaint, and on behalf of the children **DAVID KAMAN, PHILIPE KAMAN, PETER KAMAN,** and **PERRIS KAMAN.**

24. Plaintiff, **JAPETH MUNJAL GODIA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as the Mailroom Supervisor and is a citizen of Kenya who brings this action in his/her own right.

25. Plaintiff, **MERAB A. GODIA,** a citizen of Kenya and the spouse of **Japeth Munjal Godia,** who was employed by the U.S. Government as the Mailroom Supervisor, and brings this action for his/her loss of society and severe emotional distress.

26. Plaintiff, **JOTHAM ODIANGO GODIA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as the Mail Clerk and is a citizen of Kenya who brings this action in his/her own right.

27. Plaintiff, **GRACE AKANYI,** a citizen of Kenya and the spouse of **Jotham Odiango Godia,** who was employed by the U.S. Government as the Mail Clerk, and brings this action for his/her loss of society and severe emotional distress.

28. Plaintiff, **OMARI IDI OMARI a/k/a ALI HUSSEIN ALI,,** is a citizen of Kenya and is the widower of the late **HINDU OMARI IDI,** who at the time of her death was employed by the U.S. Government as a Secretary and who was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **MUHAMID IDI, RASHID IDI,** and **HAMIDA IDI.**

29. Plaintiff, **CAROLINE NGUHI KAMAU,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as an Agricultural Marketing Specialist and is a citizen of Kenya who brings this action in his/her own right.

30. Plaintiff, **KIMANI KIMAU,** a citizen of Kenya and the spouse of **Carolilne Nguhi Kamau,** who was employed by the U.S. Government as an Agricultural Marketing Specialist, and brings this action for his/her loss of society and severe emotional distress.

31. Plaintiff, **IKONYE MICHAEL KIARIE,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Telephone Supervisor and is a citizen of Kenya who brings this action in his/her own right.

32. Plaintiff, **JANE MWERU KIARIE,** a citizen of Kenya and the spouse of **Ikonye Michael Kiarie**, was employed by the U.S. Government as a Telephone Supervisor, and brings this action for his/her loss of society and severe emotional distress.

33. Plaintiff, **HUMPHREY KIBIRU,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Maintenance Inspector in the Housing Division and is a citizen of Kenya who brings this action in his/her own right.

34. Plaintiff, **JENNIFER WAMBUI,** a citizen of Kenya and the spouse of **Humphrey Kibiru,** who was employed by the U.S. Government as a Maintenance Inspector in the Housing Division, and brings this action for his/her loss of society and severe emotional distress.

35. Plaintiff, **ELIZABETH MULI KIBUE,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Procurement Agent and is a citizen of Kenya who brings this action in his/her own right.

36. Plaintiff, **MICHAEL KIBUE KAMAU,** a citizen of Kenya and the spouse of **Elizabeth Muli Kibue,** who was employed by the U.S. Government as a Procurement Agent, and

brings this action for his/her loss of society and severe emotional distress. Plaintiff, **DAVID K. KIBURU,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Shipment Clerk/Expeditor and is a citizen of Kenya who brings this action in his/her own right.

37. Plaintiff, **JUDY WALTHERA,** a citizen of Kenya and the spouse of **David K. Kibiru,** who was employed by the U.S. Government as a Shipment Clerk/Expeditor, and brings this action for his/her loss of society and severe emotional distress.

38. Plaintiff, **FAITH WAMBUI KIHATO**, is a citizen of Kenya and is the widow of the late **TONY KIHATO IRUNGU,** who was employed by the U.S. Government as a Motor Pool Supervisor and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya. Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, an on behalf of the children **JACQUELINE IRUNGU** and **STEVE IRUNGU.**

39. Plaintiff, **HARRISON KARIUKI KIMANI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Driver and is a citizen of Kenya who brings this action in his/her own right.

40. Plaintiff, **GRACE WANJIKU KIMANI,** a citizen of Kenya and the spouse of **Harrison Kariuki Kimani,** who was employed by the U.S. Government as a Driver, and brings this action for his/her loss of society and severe emotional distress.

41. Plaintiff, **ELIZABETH VICTORIA KITAO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Secretary to the Maintenance Facility Specialist and is a citizen of Kenya who brings this action in his/her own right.

42. Plaintiff, **RAPHAEL N. KIVINDYO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Senior APO Clerk and is a citizen of Kenya who brings this action in his/her own right.

43. Plaintiff, **MARGARET MWIKALI NZOMO,** a citizen of Kenya and the spouse of **Raphael N. Kivindyo,** who was employed by the U.S. Government as a Senior APO Clerk, and brings this action for his/her loss of society and severe emotional distress.

44. Plaintiff, **LUKA MWALIE LITWAJ,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Driver and is a citizen of Kenya who brings this action in his/her own right.

45. Plaintiff, **STANLEY KINYUA MACHARIA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Local Security Investigator and is a citizen of Kenya who brings this action in his/her own right.

46. Plaintiff, **MARY VUTAGWA MWALIE,** a citizen of Kenya and the spouse of **Stanley Kinyua Macharia,** who was employed by the U.S. Government as a Local Security Investigator, and brings this action for his/her loss of society and severe emotional distress.

47. Plaintiff, **STELLA WAMBUI MBUGUA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Procurement Clerk in the ASO and is a citizen of Kenya who brings this action in his/her own right.

48. Plaintiff, **SOLOMON MBUGUA MBUUN,** a citizen of Kenya and the spouse of **Stella Wambui Mbugua,** who was employed by the U.S. Government as a Procurement Clerk in the ASO, and brings this action for his/her loss of society and severe emotional distress.

49. Plaintiff, **GEORGE MAGAK MIMBA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Computer Management Specialist and is a citizen of Kenya who brings this action in his/her own right.

50. Plaintiff, **NANCY MAGAK,** a citizen of Kenya and the spouse of **George Magak Mimba,** who was employed by the U.S. Government as a Computer Management Specialist, and brings this action for his/her loss of society and severe emotional distress.

51. Plaintiff, **EMILY KANAIZA MINAY,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Janitoress and is a citizen of Kenya who brings this action in his/her own right.

52. Plaintiff, **HUDSON CHORE MAKIDIAH,** a citizen of Kenya and the spouse of **Emily Kanaiza Minay,** who was employed by the U.S. Government as a Janitoress, and brings this action for his/her loss of society and severe emotional distress.

53. Plaintiff, **BARBARA E. MULI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Nurse in the Medical Unit and is a citizen of Kenya who brings this action in his/her own right.

54. Plaintiff, **STEPHEN MULI,** a citizen of Kenya and the spouse of **Barbara E. Muli,** who was employed by the U.S. Government as a Nurse in the Medical Unit, and brings this action for his/her loss of society and severe emotional distress.

55. Plaintiff, **CHARLES PETER MULWA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Technician and is a citizen of Kenya who brings this action in his/her own right.

56. Plaintiff, **CATHERINE NDUKI MKAWA,** a citizen of Kenya and the spouse of **Charles Peter Mulwa,** who was employed by the U.S. Government as a Technician, and brings this action for his/her loss of society and severe emotional distress.

57. Plaintiff, **RAPHAEL PETER MUNGUTI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Budget Analyst and is a citizen of Kenya who brings this action in his/her own right.

58. Plaintiff, **MARY MBENEKA MUNGUTI,** a citizen of Kenya and the spouse of **Raphael Peter Munguti,** who was employed by the U.S. Government as a Budget Analyst and brings this action for his/her loss of society and severe emotional distress.

59. Plaintiff, **BENSON NDEGWA MURUTHI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, is a citizen of Kenya who brings this action in his/her own right. Upon information and belief **BENSON NDEGWA MURUTHI** was employed by the US Government at the time of his injury.

60. Plaintiff, **PHOEBE NYAGUTHI NDEGWA,** a citizen of Kenya and the spouse of **Benson Ndegwa Muruthi,** brings this action for his/her loss of society and severe emotional distress.

61. Plaintiff, **NICHOLAS MULWA MUTISO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Deliveries Clerk and is a citizen of Kenya who brings this action in his/her own right.

62. Plaintiff, **ANGECA MWONGELI,** a citizen of Kenya and the spouse of **Nicholas Mulwa Mutiso,** who was employed by the U.S. Government as a Deliveries Clerk, and brings this action for his/her loss of society and severe emotional distress.

63. Plaintiff, **SAMMY NG'ANG'A MWANGI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Budget Analyst/Accountant and is a citizen of Kenya who brings this action in his/her own right.

64. Plaintiff, **LUCY N. NG'ANG'A,** a citizen of Kenya and the spouse of **Sammy Ng'ang'a Mwangi,** who was employed by the U.S. Government as a Budget Analyst/Accountant, and brings this action for his/her loss of society and severe emotional distress.

65. Plaintiff, **JAMES NDEDA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Systems Analyst and is a citizen of Kenya who brings this action in his/her own right.

66. Plaintiff, **ROSELYNE KASORANI,** a citizen of Kenya and the spouse of **James Ndeda,** who was employed by the U.S. Government as a Systems Analyst, and brings this action for his/her loss of society and severe emotional distress.

67. Plaintiff, **CHARLES MWANGI NDIBUI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Financial Assistant and is a citizen of Kenya who brings this action in his/her own right.

68. Plaintiff, **MARGARET MWANGI,** a citizen of Kenya and the spouse of **Charles Mwangi Ndibui,** who was employed by the U.S. Government as a Financial Assistant, and brings this action for his/her loss of society and severe emotional distress.

69. Plaintiff, **FRANCIS MAINA NDIBUI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Procurement Agent and is a citizen of Kenya who brings this action in his/her own right.

70. Plaintiff, **AARON MAKAU NDIVO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a GSO Charforce and is a citizen of Kenya who brings this action in his/her own right.

71. Plaintiff, **LYDIAH MDILA MAKAU,** a citizen of Kenya and the spouse of **Aaron Makau Ndivo,** who was employed by the U.S. Government as a GSO Charforce, and brings this action for his/her loss of society and severe emotional distress.

72. Plaintiff, **OMUCHIRWA CHARLES OCHOLA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed as Contract Gardner under a contract awarded by the U.S. Government and is a citizen of Kenya who brings this action in his/her own right.

73. Plaintiff, **RAEL A. OCHOLA,** a citizen of Kenya and the spouse of **Omuchirwa Charles Ochola,** who was employed as Contract Gardner under a contract awarded by the U.S. Government, and brings this action for his/her loss of society and severe emotional distress.

74. Plaintiff, **MARY MAKAU OFISI,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Voucher Examiner and is a citizen of Kenya who brings this action in his/her own right.

75. Plaintiff, **JOHN MAKAU OFISI,** a citizen of Kenya and the spouse of **Mary Makau Ofisi,** who was employed by the U.S. Government as a Voucher Examiner, and brings this action for his/her loss of society and severe emotional distress.

76. Plaintiff, **JULIUS GWARO OGORO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as Driver and is a citizen of Kenya who brings this action in his/her own right.

77. Plaintiff, **ELIZABETH KERUBO GWARO,** a citizen of Kenya and the spouse of **Julius Gwaro Ogoro,** who was employed by the U.S. Government as Driver, and brings this action for his/her loss of society and severe emotional distress.

78. Plaintiff, **CAROLINE OCHI OKECH,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as an Administrative Assistant and is a citizen of Kenya who brings this action in his/her own right.

79. Plaintiff, **JONATHAN GILBERT OKECH,** a citizen of Kenya and the spouse of **Caroline Ochi Okech,** who was employed by the U.S. Government as an Administrative Assistant, and brings this action for his/her loss of society and severe emotional distress.

80. Plaintiff, **PATRICK OUMA OKECH,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as Chauffer and is a citizen of Kenya who brings this action in his/her own right.

81. Plaintiff, **PHELSITER AKINYI OUMA AMBOGO,** a citizen of Kenya and the spouse of **Patrick Ouma Okech,** who was employed by the U.S. Government as a Chauffer, and brings this action for his/her loss of society and severe emotional distress.

82. Plaintiff, **JOASH OTAO OKINDO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Senior Guard and is a citizen of Kenya who brings this action in his/her own right.

83. Plaintiff, **LYDIAH NYABOKA OTAO,** a citizen of Kenya and the spouse of **Joash Otao Okindo,** who was employed by the U.S. Government as a Senior Guard, and brings this action for his/her loss of society and severe emotional distress.

84. Plaintiff, **DANIEL OWITI OLOO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Clerk and is a citizen of Kenya who brings this action in his/her own right.

85. Plaintiff, **MAGDELINE ANYABGO OWITI,** a citizen of Kenya and the spouse of **Daniel Owiti Oloo,** who was employed by the U.S. Government as a Clerk, and brings this action for his/her loss of society and severe emotional distress.

86. Plaintiff, **WELLINGTON M. OLUOMA,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Telephone Operator, and is a citizen of Kenya who brings this action in his/her own right.

87. Plaintiff, **MARY AKOTSI MUDECHE,** a citizen of Kenya and the spouse of **Wellington M. Oluoma,** who was employed by the U.S. Government as a Telephone Operator, and brings this action for his/her loss of society and severe emotional distress.

88. Plaintiff, **DOREEN ATIENO OPORT,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as an Immigration Assistant and is a citizen of Kenya who brings this action in his/her own right.

89. Plaintiff, **OPORT OPORT,** a citizen of Kenya and the spouse of **Doreen Atieno Oport,** was employed by the U.S. Government as an Immigration Assistant, and brings this action for his/her loss of society and severe emotional distress.

90. Plaintiff, **SAMUEL ODHIAMOB ORIARO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Computer Assistant/Computer Management and is a citizen of Kenya who brings this action in his/her own right.

91. Plaintiff, **BETTY OBUNGA,** a citizen of Kenya and the spouse of **Samuel Odhiamob Oriaro,** who was employed by the U.S. Government as a Computer Assistant/Computer Management, and brings this action for his/her loss of society and severe emotional distress.

92. Plaintiff, **TOBIAS OYANDA OTIENO,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Commercial Specialist and is a citizen of Kenya who brings this action in his/her own right.

93. Plaintiff, **RACHEL OYANDA,** a citizen of Kenya and the spouse of **Tobias Oyanda Otieno,** who was employed by the U.S. Government as a Commercial Specialist, and brings this action for his/her loss of society and severe emotional distress.

94. Plaintiff, **MARGARET KANINI OTOLO,** is a citizen of Kenya and is the widow of the late **ROGER TOKA OTOLO,** who at the time of his death was employed by the U.S. Government in the Ministry of Agriculture and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.    Plaintiff brings this action in her own right and in her capacity as Exec.utrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **VICTOR OTOLO, ABRAHAM OTOLO,** and **RICHARD OTOLO.**

95. Plaintiff, **TRUSHA PATEL,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, is a citizen of the State of Virginia who brings this action in his/her own right.

96. Plaintiff, **PANKAY PATEL,** a citizen of Kenya and the spouse of **Trusha Patel,** who is a citizen of the State of Virginia, and brings this action for his/her loss of society and severe emotional distress.

97. Plaintiff, **JACINTA W. WAHOME,** injured in the terrorist bombing of the U.S. Embassy at Nairobi, Kenya, was employed by the U.S. Government as a Procurement Agent and is a citizen of Kenya who brings this action in his/her own right.

98. Plaintiff, **JOSEPH M. WAHOME,** a citizen of Kenya and the spouse of **Jacinta W. Wahome,** who was employed by the U.S. Government as a Procurement Agent, and brings this action for his/her loss of society and severe emotional distress.

99. Plaintiff, **GRACE NJERI GICHO**, is a citizen of Kenya and is the widow of the late **PETER KABAU MACHARIA,** who at the time of his death was employed by the U.S. Government as an Accountant and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **DIANA NJOKI.**

100.    Plaintiff, **LUCY MUTHONI GITAU**, is a citizen of Kenya and is the widow of the late **LAWRENCE AMBROSE GITAU,** who at the time of his death was employed by the U.S. Government as an Accountant and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **MARGARET WAMBUI GITAU, SUSAN NJERI GITAU, CATHERINE WAITHERA GITAU, FELISTER WANJIRU GITAU,** and **ERNEST GIGHIRI GITAU.**

101.    Plaintiff, **HANNAH NGENDA KAMAU**, is a citizen of Kenya and is the widow of the late **VINCENT KAMAU NYOIKE,** who at the time of his death was employed by the U.S. Government as a Shipping Officer and was killed as a result of the August 7, 1998 terrorist

attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **STANLEY NYOIKE, SIMON NGUGI, MERCY WANJIRE, JENNIFER NJERI,** and **ANTHONY NJOROGE.**

102.    Plaintiff, **JANE NDUTA KAMAU**, is a citizen of Kenya and is the widow of the late **JOSEPH KAMAU KIONGO,** who at the time of his death was employed by the U.S. Government as a G.S.O. Supervisor and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **MONICAH WAIRIMO KAMAU,** and **JOAN WANJIKO KAMAU.**

103.    Plaintiff, **JOSINDA KATUMBA KAMAU**, is a citizen of Kenya and is the widow of the late **VINCENT KAMAU NYOIKE,** who at the time of his death was employed by the U.S. Government in the Shipping Department and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **FAITH WANZA KAMAU, CHRISTINE M. KAMAU, CAROLYNE W. KAMAU, DUNCAN NYOIKE** and **RUTH NDUTA.**

104.    Plaintiff, **JANE KAVINDU KATHUKA**, is a citizen of Kenya and is the widow of the late **GEOFFREY MULU KALIO,** who at the time of his death was employed by the U.S. Government as a Shipping Assistant and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right

and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **DAWN NTHAMBI MULU.**

105.   Plaintiff, **GRACE NJERI KIMATA**, is a citizen of Kenya and is the widow of the late **FRANCIS WATORO MAINA,** who at the time of his death was employed by the U.S. Government as Shipment Clerk and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **VICTOR MANAI,** and **RACHEAL WAMBUI.**

106.   Plaintiff, **ALICE MUZHOMI KAMAU KIONGO**, is a citizen of Kenya and is the widow of the late **JOSEPH KAMAU KIONGO,** who at the time of his death was employed by the U.S. Government as a Shipping Manager and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **ANNA WAMBUI, PAULINE NYAMBURU,** and **MEREY WAIRUMU.**

107.   Plaintiff, **LUCY KAMAU KIONGO**, is a citizen of Kenya and is the widow of the late **JOSEPH KAMAU KIONGO,** who at the time of his death was employed by the U.S. Government as a Shipping Manager and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **NEWTON KAMAU, PETER IKONYA,**

**TERESIA WAITIMER, PAULINE WANKIA KAMAU** and the estate of **TERESIA WAIRIMU KAMAU.**

108.    Plaintiff, **LUCY KAMAU KIONGO**, is a citizen of Kenya and was also the mother of the late **TERESIA WAIRIMU KAMAU,** who was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.    Plaintiff brings this action in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint.

109.    Plaintiff, **ELIZABETH VUTAGE MALOBA**, is a citizen of Kenya and is the widow of the late **FREDERICK MALOBA YAFES,** who at the time of his death was employed by the U.S. Government as a Budget Analyst/Accountant and who was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.    Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **MARLON OKILE MALOBA, LEWIS MAFWAVO MALOBA,** and **SHARON ADHIAMBO MALOBA.**

110.    Plaintiff, **MARGARET ONYACHI MALOBA**, is a citizen of Kenya and is the widow of the late **FREDRICK MALOBA YAFES,** who at the time of his death was employed by the U.S. Government as a Budget Analyst/Accountant and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.    Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **KENNETH MALOBA, FAITH ACHEING, DERRICK MAOAKITWE, STEVEN ODHIAMBO,** and **BELINDA ADHIAMBO.**

111.    Plaintiff, **SARAH MWENDIA MBOGO**, is a citizen of Kenya and is the widow of the late **FRANCIS MBOGO NJUNGE,** who at the time of his death was employed by the U.S. Government as a Cleaning Supervisor and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **MESHARK IRERI, ISACK KARIUKI, REUBEN NYAGA, NANCY WANJERU, EPHANUS NJAGI, STEPHE NJUKI** and **ANNE MUCHOGO.**

112.    Plaintiff, **SARAH TIKOLO NANIAI**, is a citizen of Kenya and is the widow of the late **MOSES NAMAI,** who at the time of his death was employed by the U.S. Government as a Driver and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **NIGEEL ANDIIKA NAMAI.**

113.    Plaintiff, **MARY MUTHONI NDUNGU**, is a citizen of Kenya and is the widow of the late **FRANCIS BDUNGU MBUGUA,** who at the time of his death was employed by the U.S. Government as a Driver and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **EDITH NJERI, SAMUEL MBUGWA, ANGES WANJIKU, JAMLECK GITAU, JOHN MWIRY,** and **ANASTASIAH LUCY MUGURE.**

114.   Plaintiff, **PRISCILLA NDULO OKATCH**, is a citizen of Kenya and is the widow of

the late **MAURICE OKATUH OGOLLA,** who at the time of his death was employed by

the U.S. Government as a Driver and who was killed as a result of the August 7, 1998

terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her

own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival

and other claims pled in this Complaint, and on behalf of the children **JACKLINE**

**ACHIENG, ROSEMARY ANYANGO,** and **SAMSON OGOLLA.**

115.   Plaintiff, **ROSEMARY A. OLEWE**, is a citizen of Kenya and is the widow of the late

**FRANCIS OLEWE OCHILO,** who at the time of his death was employed by the U.S.

Government as an Economist and who was killed as a result of the August 7, 1998 terrorist

attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right

and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other

claims pled in this Complaint, and on behalf of the children **CHARLES OLEWE, JULIET**

**OLEWE,** and **WENDY OLEWE.**

116.   Plaintiff, **FLORENCE PAMELA OMORI**, is a citizen of Kenya and is the widow of

the late **EDWIN OPIYO OMORI,** who at the time of his death was employed by the U.S.

Government as a Special Political Assistant and was killed as a result of the August 7, 1998

terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her

own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival

and other claims pled in this Complaint, and on behalf of the children **BRYAN BOAZ**

**OMORI,** and **JERRY ORETA OMORI**

117.   Plaintiff, **WINIFRED WAIRIMU WAMAI**, is a citizen of Kenya and is the widow of

the late **ADAMS TITUS WAMAI,** who at the time of his death was employed by the U.S.

Government as a Commercial Specialist and was killed as a result of the August 7, 1998 terrorist attack on the U.S. Embassy at Nairobi, Kenya.   Plaintiff brings this action in her own right and in her capacity as Executrix and beneficiary of the Wrongful Death, Survival and other claims pled in this Complaint, and on behalf of the children **WILLIE CHANGE,** **LLOYD MURIUKI,** and **ANGELA WANJIKY.**

118.    Plaintiff, **BELINDA CHAKA,** injured in the terrorist bombing was employed by the U.S. Government as a Systems Analyst and is a citizen of Kenya who brings this action in his/her own right.

119.    Plaintiff, **MURABU CHAKA,** a citizen of Kenya and the spouse of **Belinda Chaka,** who was employed by the U.S. Government as a Systems Analyst, and brings this action for his/her loss of society and severe emotional distress.

## C.    Defendants:

112.    Defendant, the **ISLAMIC REPUBLIC OF IRAN** (hereinafter referred to as "Iran"), is a foreign state within the meaning of 28 U.S.C. §1391(f) and 1603(a).

113.    Defendant, IRAN, has been designated as a foreign state that sponsors terrorism within the meaning of 28 U.S.C. § 1605A and the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C. §2371(b).

114.    Defendant, IRAN, has been found to be liable as a state sponsor of international terrorism under 28 U.S.C. § 1605(a)(7), especially in connection with acts perpetrated by its state sponsored paramilitary terrorist organization known as "Hezbollah," in various cases before this court, including *Anderson v. the Islamic Republic of Iran,* 90 F. Supp. 2d 107 (D.D.C. 2000), and *Cicippio v. The Islamic Republic of Iran,* 18 F. Supp. 2d 62 (D.D.C. 1998).

115.   IRAN, through its officials, officers, agents and employees, provided material support and resources to OSAMA BIN LADEN and AL QAEDA both directly and through its surrogate, Hezbollah. The support provided by IRAN to OSAMA BIN LADEN and AL QAEDA assisted in or contributed to the preparation and execution of the plans that culminated in the terrorist bombing of the U.S. Embassies at Nairobi, Kenya, and Dar es Salaam, Tanzania, and the deaths and injuries caused by those bombings.

116.   Defendant, the **REPUBLIC OF SUDAN** (hereinafter referred to as "Sudan"), is a foreign state within the meaning of 28 U.S.C. § 1391(f) and 1603(a).

117.   SUDAN has been designated as a foreign state that sponsors terrorism within the meaning of 28 U.S.C. § 1605A and the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C. §2371(b).

118.   SUDAN, through its officials, officers, agents and employees, provided material support and resources to OSAMA BIN LADEN and AL QAEDA. The support provided by SUDAN to OSAMA BIN LADEN and AL QAEDA assisted in or contributed to the preparation and execution of the plans that culminated in the U.S. Embassy bombings at Nairobi, Kenya, and Dar Es Salaam, Tanzania, and the extrajudicial killing and/or injury of the Plaintiffs.

119.   At times relevant hereto, OSAMA BIN LADEN and AL QAEDA committed and threatened to further commit acts of violence and terror against the United States and its citizens. Defendant, SUDAN, aided these terrorist schemes by, among other things, allowing territory under their control to be used as a safe-haven and base of operations for OSAMA BIN LADEN and AL QAEDA and providing the use of various government agencies to facilitate the terrorist goals and illegal conduct of Al Qaeda.

## FACTS

**A.     The history, organization, and function of Al Qaeda:**

120.   In or about 1989, OSAMA BIN LADEN, MUHAMMAD ATEF, and others founded an
international terrorist group that became known as "AL QAEDA" ("the Base"). OSAMA
BIN LADEN was the "emir" (prince) of AL QAEDA and was its leader at all relevant
times. Members of AL QAEDA pledged an oath of allegiance (called a "bayat") to
OSAMA BIN LADEN and AL QAEDA.

121.   From 1989 until about 1991, AL QAEDA was headquartered in AFGHANISTAN and in
Peshawar, Pakistan. In or about 1991, the leadership of AL QAEDA, including OSAMA
BIN LADEN, relocated to the Sudan. AL QAEDA was headquartered in the Sudan from
approximately 1991 until approximately 1996 but also maintained offices in various parts
of the world. In 1996, OSAMA BIN LADEN and other members of AL QAEDA
relocated to AFGHANISTAN .

122.   OSAMA BIN LADEN and AL QAEDA violently opposed the United States for several
reasons. First, the United States was regarded as an "infidel" because it was not governed
in a manner consistent with the group's extremist interpretation of Islam. Second, the
United States was viewed as providing essential support for other "infidel" governments
and institutions, particularly the governments of Saudi Arabia and Egypt, the nation of
Israel, and the United Nations organization, which were regarded as enemies of the
group. Third, AL QAEDA opposed the involvement of the United States armed forces in
the Gulf War in 1991 and in Operation Restore Hope in Somalia in 1992 and 1993. In
particular, AL QAEDA opposed the continued presence of American military forces in

Saudi Arabia (and elsewhere on the Saudi Arabian peninsula) following the Gulf War. Fourth, AL QAEDA opposed the United States Government because of the arrest, conviction and imprisonment of persons belonging to AL QAEDA or its affiliated terrorist groups or those with whom it worked. For these and other reasons, OSAMA BIN LADEN declared "*jihad*," or holy war, against the United States, which he has carried out through AL QAEDA and its affiliated organizations.

123.    AL QAEDA functioned both on its own and through some of the terrorist organizations that operated under its umbrella, including: Egyptian Islamic Jihad, which was led by Ayman al-Zawahiri, and at times, the Islamic Group (also known as "el Gamaa Islamia" or simply "Gamaa't"), and a number of jihad groups in other countries, including the Sudan, Egypt, Saudi Arabia, Yemen, Somalia, Eritrea, Djibouti, Afghanistan, Pakistan, Bosnia, Croatia, Albania, Algeria, Tunisia, Lebanon, the Philippines, Tajikistan, Azerbaijan, and the Kashmiri region of India and the Chechnyan region of Russia. AL QAEDA also maintained cells and personnel in a number of countries to facilitate its activities, including in Kenya, Tanzania, the United Kingdom, Germany, Canada, Malaysia, and the United States.

124.    AL QAEDA had a command and control structure which included a "*majlis al shura*" (or consultation council) which discussed and approved major undertakings, including terrorist operations.

125.    AL QAEDA and a "military committee" which considered and approved "military" matters.

126.    OSAMA BIN LADEN and AL QAEDA also forged alliances with the National Islamic Front in the Sudan, with representatives of IRAN, and its associated terrorist group

Hezbollah, and with representatives of the government of IRAQ for the purpose of working together against their perceived common enemy in the West, the United States.

127.    Since at least 1989, OSAMA BIN LADEN and the terrorist group AL QAEDA sponsored, managed, and/or financially supported training camps in AFGHANISTAN. Those camps were used to instruct members and associates of AL QAEDA and its affiliated terrorist groups in the use of firearms, explosives, chemical weapons, and other weapons of mass destruction. In addition to providing training in the use of various weapons, these camps were used to conduct operational planning against United States targets around the world and experiments in the use of chemical and biological weapons. These camps were also used to train others in security and counterintelligence methods, such as the use of codes and passwords, and to teach members and associates of AL QAEDA about traveling to perform operations. For example, AL QAEDA instructed its members and associates to dress in "Western" attire and to use other methods to avoid detection by security officials. The group also taught its members and associates to monitor media reports of its operations to determine the effectiveness of their terrorist activities.

128.    Since on or about 1996, OSAMA BIN LADEN and others operated AL QAEDA from their headquarters in AFGHANISTAN.  During this time, OSAMA BIN LADEN and others forged close relations with the TALIBAN and MUHAMMAD OMAR in AFGHANISTAN . OSAMA BIN LADEN openly informed other AL QAEDA members and associates outside AFGHANISTAN of their support of, and alliance with, the TALIBAN and MUHAMMAD OMAR.

    **B.    The "fatwahs" and the "jihad" terrorist campaign against Americans:**

129.   One of the principal goals of AL QAEDA was to drive the United States armed forces out
       of Saudi Arabia (and elsewhere on the Saudi Arabian peninsula) and Somalia by
       violence. These goals eventually evolved into a declaration of *jihad* against America and
       all Americans. Members of AL QAEDA issued "*fatwahs*" (rulings on Islamic law)
       indicating that such attacks on Americans were both proper and necessary.

130.   At various times from on or about 1992, OSAMA BIN LADEN, working together with
       members of the *fatwah* committee of AL QAEDA, disseminated *fatwahs* to other
       members and associates of AL QAEDA.  These *fatwahs* directed that United States
       citizens should be attacked and murdered.

On various occasions, OSAMA BIN LADEN and other co-conspirators advised members of AL

       QAEDA that it was proper to engage in violent actions against "infidels" (nonbelievers),

       even if others might be killed by such actions, because if the others were "innocent," they

       would go to paradise, and if they were not "innocent," they deserved to die.

   **C.     The sovereign nation defendants furnished critical aid to underwrite the
           terrorist conspiracy against the United States:**

131.   In furtherance of the conspiracy, the named Defendants and unknown John Doe
       Defendants committed the following acts:

       a.     At various times from at least as early as 1990, Defendants and their unknown co-
              conspirators provided military and intelligence training in various areas, including
              AFGHANISTAN, IRAQ, IRAN, Pakistan, and the Sudan, for the use of AL
              QAEDA and its affiliated groups.

       b.     At various times from at least as early as 1989, Defendants and others known and
              unknown, engaged in financial and business transactions on behalf of AL

QAEDA, including, but not limited to: purchasing land for training camps; purchasing warehouses for storage of items, including explosives; purchasing communications and electronics equipment; transferring funds between corporate accounts; and transporting currency and weapons to members of AL QAEDA and its associated terrorist organizations in various countries throughout the world.

c.      In the early 1990s, the government of Sudan sent overtures to Bin Laden and Al Qaeda, inviting the group to relocate en mass from Afghanistan to the Sudan. Jamal Ahmed Al-Fadl, a top Al Qaeda lieutenant who served Bin Laden in Afghanistan as well as the Sudan, learned of the impending relationship between Al Qaeda and the Sudanese government for the first time at one of the meetings in Peshwar, Pakistan that occurred between the Sudanese government, Bin Laden and other Al Qaeda members.  The representatives of the Sudanese government, promised the support of that government should Al Qaeda come to the Sudan.  Al Qaeda thereafter used Sudanese Airways planes to ferry anti-tank rockets and Stinger missiles from Afghanistan to the Sudan.

d.      The government of the Sudan is run by President Field Marshall Omar Hassan al-Bashir, the head of state of the Sudan, through an alliance of the military and the National Congress Party, formerly the National Islamic Front.

e.      Al-Fadl went to the Sudan to secure residential and commercial property for Al Qaeda.  The purpose of some of the property was to provide a safe place to train Al Qaeda militants.

f.      Essam Al Riddi, a pilot who worked for Bin Laden in 1993, stated that he purchased a plane for Bin Laden; oversaw its refurbishment; and flew it to Khartoum in 1993.

g.      While Al Riddi stayed in Khartoum, he dined with Bin Laden and had several discussions with him. Bin Laden was staying in a large villa in Khartoum, with an office and a guesthouse. The Sudanese government provided security for Al Qaeda. 15-20 Sudanese men dressed in Sudanese army fatigues, using jeeps with Sudanese army license plates, were stationed at the villa.

h.      Al Qaeda provided Al Riddi with a plane from the Sudan Airlines to ferry militants to Nairobi. Bin Laden discussed the possibility of Al Riddi transporting some Stinger missiles from Pakistan to the Sudan.

i.      Bin Laden assured him that the Sudanese and Pakistani intelligence agencies would cooperate with the weapons transfer.

j.      The training that Al Qaeda engaged in the Sudan included explosives training. The loud noises drew the local police after complaints from neighbors and Al Fadl was among those arrested. He was quickly released, due to the close relationship between Al Qaeda, and the Sudanese intelligence service, a Defendant in this action. According to Al-Fadl:

> [W]e call the intelligence office because we have relationship with them, and the intelligence office came and they tell the local police we take care of that, and don't worry about that. And they take us to the jail, and they say you shouldn't do that, we tell you to refresh[2], not to make real explosives.

---

[2] "Refresh" meant refresher courses for the militants who had already received training in the past.

k.    Al-Fadl saw a letter from President al-Bashir that explained the relationship between Al Qaeda and the Sudanese intelligence.  With the explicit approval of Bin Laden, Al-Fadl also personally worked with the Sudanese intelligence officers.

l.    The Sudanese intelligence officers and government officials, at all times, acted within the scope of their office or agency during the activities described in this Complaint.

m.    The intelligence officers were organized into a "delegation office" to meet the needs of the Al Qaeda group in the Sudan.  There was an explicit fear that agents from foreign governments or informants would disclose Al Qaeda's location and activities in the Sudan.  Some of these informants were consequently jailed in the Sudan.  Al-Fadl would identify suspicious foreigners to the Sudanese intelligence as Al Qaeda sought to keep its presence and activities in the Sudan secret.

n.    The delegation office, staffed with Sudanese intelligence officers, also helped provide security for Al Qaeda and facilitated the movement of weapons in and out of the country.  On one particular trip, the weapons were taken out of the country by delivering four crates of weapons to a hangar at a Sudanese military base, and then to a port facility owned by the Sudanese army.

o.    The letter from President al-Bashir was absolutely essential to the operations of the Al Qaeda terrorist group, which was secretly training in the Sudan.  The letter allowed Al Qaeda members, such as Al Fadl, to bypass tax and customs collection on international shipments and guaranteed their shipments, coming or going, would not be inspected.

p.    Weapons and explosive shipments moved through a quay protected by the Sudanese military in Port Sudan into a barracks used by Sudanese armored and mechanized infantry. The letter would allow shipments from overseas to bypass inspection at a port and then travel back to Khartoum without inspection by the local police at the numerous checkpoints along the way.

q.    The delegation office, the Sudanese government's go-between with Al Qaeda, also protected Al Qaeda members, such as Al-Fadl, from the interference of Sudanese immigrations office at the airport. This was important because if Al Qaeda members were caught abroad and their passports were stamped with Sudanese immigration markings, it would be clear to foreign agents where the organization was located.

r.    Al Qaeda also set up a number of companies that provided it with critical income so that it to continue its growth and evolution into a lethal organization with global reach. However, Al Qaeda did not come to Sudan to operate as a regular capitalist enterprise. Rather, the purpose of the investment in Sudanese business activity was as adjunct to its mission of aggression against the West, as explicitly stated by Bin Laden himself:

> . . . [O]ur agenda is bigger than business. We not going to make business here, but we need to help the government and the government help our  group, and this our purpose.

s.    Among the Sudanese companies founded by Al Qaeda were: Laden International Company for import and export; Taba Investment for currency exchange; Hijra Construction Company, which built the largest road existing in Sudan; and the Al Themar al Mubaraka, which ran the farm where Al Qaeda trained its militants in

–47–

explosives. The Hijra Construction Company purchased explosives for its road and bridge building activities.

t.      Al Qaeda also had extensive holdings in Khartoum, including business offices, guesthouses, farms and residential houses. Bin Laden even had a bank account in Khartoum in his true name. Al Qaeda purchased some of the companies directly from the Sudanese government. The funding that these companies provided to Al Qaeda was critical to its survival and continued existence. At a meeting, which included Bin Laden, the fluctuation of Sudanese currency caused great concern as most of Al Qaeda's income was derived from this business activity.

u.      Al Qaeda's position regarding the United States was clear, as early as, in 1992 when Bin Laden issued a fatwa against the United States due to its presence in the Gulf region during the First Gulf War and its actions in Somalia. The discussion surrounding the fatwa included an explicit allowance for the murder of innocent civilians. Al Qaeda provided support to groups in Somalia, Yemen, the Philippines, Tajikistan, and Pakistan, among others.

v.      The partnership forged with the Sudanese government derived benefits for both parties, as do all successful partnerships. The Sudanese government employed Al Qaeda to manufacture chemical weapons in a section of Khartoum, called Hilat Koko, for use against the rebels in southern Sudan. Al-Fadl traveled to the chemical weapons manufacturing area with a Sudanese military officer, who explained the need for chemical weapons by the Sudanese government.

w.      Al Qaeda also provided communications equipment and Kalishnikov rifles for the Sudanese army, founded by the Islamic National Front, to fight the Christian

rebels in the south. Al-Fadl, as part of this arrangement, also worked directly for the Sudanese government. For example, a Sudanese intelligence office who also worked in the immigration office, approached Al-Fadl and asked him to spy on a government opposition leader. Al-Fadl arrested the opposition leader and tried to turn him away from his work against the Sudanese government. The Sudanese intelligence officer advised Al-Fadl to lie to the opposition leader, to tell him that Al-Fadl had quit Al Qaeda and had stopped working with the government. Al-Fadl reported back to the head of the delegation office, the group of Sudanese intelligence officers that protected Al Qaeda; facilitated communications with the Sudanese government; and provided logistical support.

x.     Dr. Abdullah Mohamed Yusef, a member of the Islamic National Front, through which President al-Bashir ran the Sudanese government, organized travel, documents and funneled economic aid to Al Qaeda while it was located in the Sudan.

y.     Al Qaeda entered into a transaction to purchase uranium through the former President of the Sudan, currently an officer in the Sudanese army. The quality of the uranium was tested in Hilat Koko, the section of Khartoum where the government was partnered with Al Qaeda in the manufacture of chemical weapons. Al-Fadl discussed the uranium test with a member of the Sudanese government, whose brother "runs" the building where the chemical weapon manufacture was housed.

z.     Without the material support, assistance, and aid provided by Sudanese government officials acting within the scope of their agency, employment or

office, Al Qaeda could not have carried out the United States embassy bombings that caused plaintiffs' injuries. Such material support, assistance, and aid fits within the definition of material support as described by 18 U.S.C. § 2339A.

aa.   The Defendants not only knew that Al Qaeda was attempting to conceal itself in the Sudan, but facilitated and furthered Al Qaeda's concealment through the activities of the Sudanese intelligence services. The scale of support that Defendants furnished Al Qaeda was substantial. The regime invited Al Qaeda to roost in the Sudan and knew of, at least from 1992 onward, Al Qaeda's anti-US crusade.

bb.   The then and current regime of Sudan explicitly allied itself with Al Qaeda for an illegal and unlawful purpose. The regime conspired with Al Qaeda in the manufacture of weapons and training of terrorists, all the while knowing of Al Qaeda's anti-US crusade. The provision of support to a terrorist organization is illegal and unlawful. The explicit purpose of their agreement was to make each stronger. The US Embassy bombings greatly enhanced Al Qaeda's worldwide reputation and attracted money, recruits and support from those allied against the United States.

cc.   At various times from at least 1990, IRAN has provided material support to OSAMA BIN LADEN and AL QAEDA, often through its state-sponsored terrorist organization, Hezbollah. That support included advice and assistance in planning attacks against American targets. Information was often shared and exchanged between AL QAEDA and IRAN.

dd.     For many years, the Department of State has included IRAN among the *"state sponsors of terrorism."* Indeed, more than once in recent years, the Department of State has described IRAN as *"the most active"* among state sponsors of terrorism. The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards and the Defendant, the Iranian Ministry of Information. The above referred to activities of Hezbollah were financed, technologically supported and commanded by Iranian military/intelligence operatives.

ee.     In October 2001, an OSAMA BIN LADEN operative, Ali Mohamed, confessed in Federal District Court in New York that he and senior Bin Laden operatives had met with Hezbollah security chief Imad Mughniyah who is believed to have carried out the bombings of the U.S. Embassy in Beirut and the Marine barracks in 1983.

ff.     On many occasions, Bin Laden had praised the 1983 Beirut Marine barracks bombing conducted by Hezbollah and Iranian agents. Bin Laden sought out Hezbollah and their Iranian commanders for their tactical expertise for large scale operations.   In 1993-4, Al Qaeda operatives received specialized-explosives training in Lebanon from Hezbollah operatives.

gg.     In June 1996, Iran's Ministry of Information and Security hosted a meeting of terrorist leaders in Tehran that included Mugniyah and senior aides to OSAMA BIN LADEN. Senior aides to OSAMA BIN LADEN subsequently met with Mugniyah on several occasions.

    hh.    The purpose of the meetings between Bin Laden, Al Qeada, Hezbollah operatives, and Iranian agents was to share information on how to build a technologically advanced bomb that could destroy a building. Al Qeada did not have the know-how, prior to its contacts with Hezbollah operatives and Iranian agents, to conduct the 1998 embassy bombings.

    ii.    Based on evidence developed in connection with the war in Afghanistan, senior officials in the U.S. Government, including Secretary of Defense Donald Rumsfeld, believe that AL QAEDA and TALIBAN members have now taken refuge in IRAN.

132.    The officials, agents, and employees of the foreign sovereign Defendants were acting within the scope of their agency, office or employment when they provided support to the terrorists and terrorist group that destroyed the two US embassies. They did so because, for various reasons, it was the policy of their respective governments to aid Al Qaeda.

    **D.    The events leading up to the Embassy bombings:**

133.    On or about 1994, MOHAMED SADEEK ODEH moved to Mombassa, Kenya, to set up businesses with AL QAEDA money which was used to support AL QAEDA members in Kenya. While in Kenya, ODEH was visited by MUHAMMED ATEF, the military commander of AL QAEDA.

134.    In or about 1994, WADIH EL HAGE moved to Nairobi, Kenya, and established businesses and other organizations (*e.g.*, "Help Africa People") in Kenya. While in Kenya, WADIH EL HAGE met repeatedly with one of Al Qaeda's military commanders, the late Abu Ubaidah al Banshiri.

135.   On or about October 25, 1994, Khalid Al Fawwaz, a member of AL QAEDA, transferred
the Kenyan business "Asma Limited" to the late Abu Ubaidah al Banshiri.

136.   In or about 1996, in Mombasa, Kenya, Fahid Ali Msalam, a member of AL QAEDA,
displayed explosives and detonators obtained in Tanzania to the MOHAMED SADEEK
ODEH.

137.   Beginning in the latter part of 1993, Anas Al Liby and other members of AL QAEDA
began contemplating an attack against the U.S. Embassy in Nairobi, Kenya, in retaliation
for the United States' participation in Operation Restore Hope in Somalia.

138.   In or about the latter part of 1993, Anas Al Liby and others conducted a visual and
photographic surveillance of the U.S. Embassy at Nairobi, Kenya.

139.   In or about 1994, Anas Al Liby, together with other members of AL QAEDA reviewed
files concerning possible terrorist attacks against: (i) the U.S. Embassy at Nairobi, Kenya;
(ii) the building then housing the U.S. Agency for International Development in Nairobi,
Kenya; and (iii) British, French and Israeli targets in Nairobi, Kenya.

140.   In or about 1994, members of AL QAEDA also contemplated possible terrorist attacks
against targets in various countries other than Kenya.

141.   In or about 1994, KHALFAN KHAMIS MOHAMED traveled to an AL QAEDA camp
in Afghanistan where he received training in explosives.

142.   Beginning in or about 1996, MOHAMED RASHED DAOUD AL-'OWHALI traveled to
an AL QAEDA camp in Afghanistan where he received training in explosives, hijacking,
kidnapping, assassination and intelligence techniques.

143.   In or about 1996, following his training in a number of camps in Afghanistan affiliated with AL QAEDA, MOHAMED RASHED DAOUD AL-'OWHALI met with OSAMA BIN LADEN and asked him for a "mission."

144.   In late February or early March 1997, WADIH EL HAGE, met and spoke with Mustafa Mohamed Fadhil, a member of AL QAEDA, and provided him with a new policy from OSAMA BIN LADEN to militarize the East African cell of AL QAEDA.

145.   On or about June 23, 1997, WADIH EL HAGE requested that $10,000 be transferred to an account in Kenya.  On or about July 3, 1997, this money was transferred to an account in Kenya controlled by WADIH EL HAGE.

146.   In or about March or April 1998, in Dar es Salaam, Tanzania, KHALFAN KHAMIS MOHAMED met with Mustafa Mohamed Fadhil, a member of AL QAEDA, and agreed to participate in a "jihad job."

147.   In or about May 1998, Fazul Abdullah Mohamed, a member of AL QAEDA, rented a villa at 43 New Runda Estates in Nairobi, Kenya.

148.   On or about May 4, 1998, KHALFAN KHAMIS MOHAMED applied for a Tanzanian passport in the name "Zahran Nassor Maulid."

149.   In or about June 1998, MOHAMED RASHED DAOUD AL-'OWHALI, and an individual known as "Azzam" filmed a videotape to celebrate their anticipated "martyrdom" in a bombing operation to be conducted against United States interests in East Africa.

150.   On or about June 19, 1998, "Azzam," using a passport in the name of "Gihad Ali," traveled from Karachi, Pakistan, to Nairobi, Kenya.

151. In or about June 1998, KHALFAN KHAMIS MOHAMED and Fahid Ali Msalam, purchased a white Suzuki Samurai ('the Suzuki Samurai") at a location in Dar es Salaam, Tanzania.

152. In or about June 1998, KHALFAN KHAMIS MOHAMED and Fahid Ali Msalam, rented house number 213 in the Ilala District of Dar es Salaam, Tanzania.

153. In or about late June or early July 1998, Fahid Ali Msalam and Sheikh Ahmed Salim Swedan, a member of AL QAEDA, purchased a Toyota Dyna truck ("the Nairobi Bomb Truck") in Mombasa, Kenya, and made alterations to the back of the truck.

154. In or about July 1998, Ahmed Khalfan Ghailani, a member of AL QAEDA, and Sheikh Ahmed Salim Swedan purchased a 1987 Nissan Atlas truck ("the Dar es Salaam bomb truck") in Dar es Salaam, Tanzania.

155. In or about July 1998, Sheikh Ahmed Salim Swedan arranged for mechanical and welding work to be done on the Dar es Salaam bomb truck at various locations in Dar es Salaam, Tanzania.

156. In or about July 1998, Sheikh Ahmed Salim Swedan purchased two large truck batteries from a location in Dar es Salaam, Tanzania.

157. In or about July 1998, Ahmed Khalfan Ghailani and Fahid Ali Msalam purchased oxygen and acetylene tanks in Dar es Salaam, Tanzania.

158. On or about July 31, 1998, MOHAMED RASHED DAOUD AL-'OWHALI, using a passport in the alias "Khaled Salem Saleh Bin Rashed," traveled from Karachi, Pakistan, to Nairobi, Kenya, arriving on August 2, 1998.

159. In or about late July 1998, in Dar es Salaam, Tanzania, KHALFAN KHAMIS MOHAMED, Mustafa Mohamed Fadhil, and others, participated in the grinding of TNT.

160. During the last week of July and the first week of August 1998, Mustafa Mohamed Fadhil, KHALFAN KHAMIS MOHAMED, and Fahid Ali Msalam met at the residence located at house 213 in the Ilala District of Dar es Salaam, Tanzania, to make final preparations for the bombing of the U.S. Embassy in Dar es Salaam, Tanzania.

161. In or about late July or early August 1998, Mustafa Mohamed Fahil, KHALFAN KHAMIS MOHAMED, Fahid Ali Msalam, and Ahmed Khalfan Ghailani loaded boxes of TNT, gas cylinder tanks, batteries, detonators, fertilizer, and sand bags into the back of the Dar es Salaam bomb truck.

162. On or about August 1, 1998, Abdullah Ahmed Abdullah, a member of AL QAEDA, advised MOHAMED SADEEK ODEH that all members of AL QAEDA had to leave Kenya by Thursday, August 6, 1998.

163. In or about early August 1998, Abdullah Ahmed Abdullah and MOHAMED SADEEK ODEH traveled from Mombasa, Kenya, to Nairobi, Kenya.

164. During the first week of August 1998, Abdullah Ahmed Abdullah, Fazul Abdullah Mohammed and MOHAMED RASHED DAOUD AL-'OWHALI, together with "Azzam" and other members of AL QAEDA, met at the villa located at number 43 New Runda Estates in Nairobi, Kenya, to make final preparations for the bombing of the U.S. Embassy at Nairobi, Kenya.

165. On or about August 1, 1998, Ahmed Khalfan Ghailani checked into the Hilltop Hotel in Narobi, Kenya.  On or about August 2, 1998, MOHAMMED SADEEK ODEH and Fazul Abdullah Mohammed, together with other members of AL QAEDA, met at the Hilltop Hotel in Nairobi, Kenya.

166.    On or about August 2, 1998, Sheikh Ahmed Salim Swedan and Mustafa Mohamed Fadhil
        left Nairobi, Kenya, for Karachi, Pakistan.

167.    On or about August 3, 1998, Fahid Ali Msalam purchased air travel tickets to Pakistan
        for himself and MOHAMED SADEEK ODEH.

168.    On or about August 4, 1998, Abdullah Ahmed Abdullah, Fazul Abdullah Mohammed
        and MOHAMED RASHED DAOUD AL-'OWHALI, together with "Azzam" and other
        members of AL QAEDA, reconnoitered the U.S. Embassy in Nairobi, Kenya.

169.    On or about August 6, 1998, Abdullah Ahmed Abdullah and Ahmed Khalfan Ghailani
        left Nairobi, Kenya, for Karachi, Pakistan.

170.    On or about August 6, 1998, MOHAMED SADEEK ODEH and Fahid Ali Msalam left
        Nairobi, Kenya, for Karachi, Pakistan.


        **E.      The bombing at the U.S. Embassy in Nairobi, Kenya:**

171.    On August 7, 1998, at approximately 9:30 a.m. local time, Fazul Abdullah Mohammed
        drove a pick-up truck from the villa located at 43 New Runda Estates to the vicinity of
        the U.S. Embassy in Nairobi, Kenya.  Meanwhile, MOHAMED RASHED DAOUD AL-
        'OWHALI rode in the Nairobi Bomb Truck driven by "Azzam" (a Saudi national)
        containing a large bomb to the U.S. Embassy in Nairobi, Kenya.  MOHAMED RASHED
        DAOUD AL-'OWHALI possessed four stun-type grenades, a handgun, bullets, and keys
        to the padlocks on the Nairobi bomb truck.

172.    On August 7, 1998, at approximately 10:30 a.m., MOHAMED RASHED DAOUD AL-
        'OWHALI got out of the Nairobi bomb truck as it approached the rear of the U.S.

Embassy building and threw a stun grenade in the direction of a security guard before attempting to flee.

173.  On August 7, 1998, at approximately 10:30 a.m., "Azzam" drove the Nairobi bomb truck to the rear of the U.S. Embassy building and fired a handgun at the windows of the Embassy building.

174.  On August 7, 1998, at approximately 10:30 a.m., "Azzam" detonated the explosive device contained in the Nairobi bomb truck at a location near the rear of the Embassy building, demolishing a multi-story secretarial college and severely damaging the U.S. Embassy building and the Cooperative Bank Building, causing a total of more than 213 deaths, as well as injuries to more than 4,500 people, including Plaintiffs.

    **F.    The bombing at the U.S. Embassy in Dar es Salaam, Tanzania:**

175.  On or about August 7, 1998, KHALFAN KHAMIS MOHAMED accompanied "Ahmed the German" (an Egyptian national) in the Dar es Salaam Bomb Truck during a portion of the ride to the U.S. Embassy.

176.  On August 7, 1998, at approximately 10:40 a.m., "Ahmed the German" detonated an explosive device contained, along with oxygen and acetylene tanks and truck batteries, in the Dar es Salaam bomb truck, in the vicinity of the U.S. Embassy building located in Dar es Salaam, Tanzania, severely damaging the Embassy building and causing the deaths of at least 11 persons, including Tanzanian citizens, on the embassy property, as well as injuries to at least 85 people.

## CAUSES OF ACTION

### COUNT I
### WRONGFUL DEATH
(Under 28 U.S.C. § 1605A(c) and Kenyan statutory law)

177.   Plaintiffs incorporate by reference the averments in the preceding paragraphs as though
fully set forth at length.

178.   Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio, Joel
Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau
Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua,
Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent
Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori,
Eric Abur Onyango, Roger Toka Otolo, and Adam Titus Wamai, who died at the U.S.
Embassy at Nairobi, Kenya, are survived by family members who are entitled to recover
damages from all Defendants for wrongful death. These family members are entitled to
damages resulting from the deaths of the Decedents caused by the actions of the
Defendants.

179.   As a further result of intentional and reckless acts, omissions, and other tortious conduct
of the Defendants, Plaintiffs have been caused to expend various sums to raise the estates
of Decedents and have incurred other expenses for which they are entitled to recover.

### COUNT II
### LOSS OF CONSORTIUM
(Under 28 U.S.C. § 1605A(c) and Kenyan common law)

180.   Plaintiffs incorporate herein by reference the averments contained in the preceding
paragraphs as though fully set forth at length.

181.   As a further and direct proximate result of the acts of the Defendants, the Plaintiffs, JOYCE
       AUMA OMBESE ABUR, VELMA AKOSA BONYO, ANASTASIA GIANOPULOS,
       CATHERINE W. GITUMBU, OMARI IDI OMARI A/K/A ALI HUSSEIN ALI, FAITH
       WAMBUI KIHATO, MARGARET KANINI OTOLO, GRACE NJERI GICHO, LUCY
       MUTHONI GITAU, HANNAH NGENDA KAMAU, JANE NDUTA KAMAU,
       JOSINDA KATUMBA KAMAU, JANE KAVINDU KATHUKA, GRACE NJERI
       KIMATA, ALICE MUZHOMI KAMAU KIONGO, LUCY KAMAU KIONGO,
       ELIZABETH VUTAGE MALOBA, MARGARET ONYACHI MALOBA, SARAH
       MWENDIA MBOGO, SARAH TIKOLO NANIAI, MARY MUTHONI NDUNGU,
       PRISCILLA NDULO OKATCH, ROSEMARY A. OLEWE, FLORENCE PAMELA
       OMORI AND WINIFRED WAIRIMU WAMAI, the  spouses of the decedents, were caused
       to sustain a loss of services, comfort, society, and attentions in the past and future and
       suffered a loss of consortium to the detriment of the marital relationship and have suffered
       damages.

## COUNT III
## ASSAULT AND BATTERY
(Under 28 U.S.C. § 1605A(c), Kenyan common law and US state common law)

182.   On Plaintiffs incorporate herein by reference the averments contained in the preceding
       paragraphs as though fully set forth at length.

183.   The actions of the defendants caused and led directly to the 1998 bombings, their
       bombing of the embassies intentionally and willfully put the surviving plaintiffs, and the
       decedents prior to their deaths, in fear for their lives and apprehension of harm and injury
       as a direct result of fear of imminent death or mutilation.

–60–

184.    The explosion was intended to cause harmful contact with the plaintiffs and decedents, and in fact caused such contact, at the bomb sites and put them in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon the Plaintiffs and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

185.    The personal injuries and losses suffered by the surviving Plaintiffs and decedents, and the consequences resulting therefrom, were proximately caused by the intentional and reckless acts, omissions, and other tortious conduct of all Defendants as described herein.

**COUNT IV**
**SURVIVAL**
(Under 28 U.S.C. § 1605A(c) and Kenyan statutory or common law)

186.    On Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

187.    Plaintiffs bring this action for damages suffered by the estates of Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio, Joel Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua, Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori, Eric Abur Onyango, Roger Toka

Otolo, and Adam Titus Wamai as a result of their deaths, including their pain and suffering, inconvenience, loss of life and life's pleasures, loss of earnings and earning capacity, and other items of damages.

188. As a result of the Defendants' wrongful conduct, Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OR SOLATIUM
(under 28 U.S.C. § 1605A(c), Kenyan common law and US state common law)

189. On Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

190. All Defendants knew that U.S. Embassy bombings would kill or injure the innocent United States Plaintiffs and foreign Plaintiffs at their place of work, leaving family members to grieve for their losses.

191. As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Defendants, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, caused the surviving Plaintiffs, and the decedents prior to their deaths, severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have thereby suffered damages

192. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment.

193.   The conduct of all Defendants was undertaken in an intentional manner to murder or injure the Plaintiffs and to cause the contemporaneous and permanent emotional suffering of the heirs of the murdered victims.

194.   As a direct and proximate result of the deaths of the Decedents, their heirs have been deprived of loss of society, future aid, assistance, services, comfort, and financial support.

195.   As a direct and proximate result of the Defendants' cowardly, barbaric and outrageous acts of murder, the heirs of the Decedents will forever grieve their deaths.

196.   The Defendants, by engaging in this unlawful conduct, recklessly and/or intentionally inflicted severe emotional distress upon the Plaintiffs.

### COUNT VI
### AIDING AND ABETTING
(under 28 U.S.C. § 1605A(c), Kenyan common law and US state common law)

197.   Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

198.   Defendants did knowingly and willfully provide substantial assistance to the terrorists and the terrorist organization that willfully and deliberately committed the two embassy bombings, which caused the injuries, and/or deaths of the plaintiffs.  All Defendants were aware of the goals of Al Qaeda and were aware or should have been aware that the aid and assistance furnished to Al Qaeda would aid and abet Al Qaeda's terrorist activities, including the two US embassy bombings.

199.   For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of the plaintiffs, all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

## COUNT VII
## CIVIL CONSPIRACY

(under 28 U.S.C. § 1605A(c), Kenyan common law and US state common law)

200.  Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

201.  As set forth more fully above, all Defendants, known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed, tacitly and/or expressly, to kill Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio, Joel Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua, Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori, Eric Abur Onyango, Roger Toka Otolo, and Adam Titus Wamai, and to inflict personal injuries upon the surviving Plaintiffs.

202.  As set forth above, all Defendants conspired and agreed to provide material support and resources to AL QAEDA, and the bombers in furtherance of Al Qaeda's overall goal to kill or injure American citizens and other persons present or employed at the U.S. Embassies in Nairobi, Kenya, and in Dar es Salaam, Tanzania.

203.  The Defendants' conspiracy resulted in the August 7, 1998 Embassy attacks that killed Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio, Joel Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua, Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori,

Eric Abur Onyango, Roger Toka Otolo, and Adam Titus Wamai, or injured the surviving
Plaintiffs.

204.   As a result of the Defendants' conspiracy, Plaintiffs suffered damages as fully set forth in
the paragraphs above which are incorporated herein by reference.

### COUNT VIII
### PUNITIVE DAMAGES
(under 28 U.S.C. § 1605A(c))

205.   Plaintiffs incorporate herein by reference the averments contained in the preceding
paragraphs as though fully set forth at length.

206.   As set forth more fully above, all Defendants, known and unknown, unlawfully, willfully
and knowingly combined, conspired, confederated and agreed, tacitly and/or expressly, to
kill Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio,
Joel Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau
Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua,
Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent
Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori,
Eric Abur Onyango, Roger Toka Otolo, and Adam Titus Wamai, and to inflict personal
injuries upon the surviving Plaintiffs.

207.   As set forth above, all Defendants conspired and agreed to provide material support and
resources to AL QAEDA, and the bombers in furtherance of Al Qaeda's overall goal to
kill or injure American citizens and other persons present or employed at the U.S.
Embassies in Nairobi, Kenya, and in Dar es Salaam, Tanzania.

208.   The Defendants' conspiracy resulted in the August 7, 1998 Embassy attacks that killed
Chrispine Bonyo, Lawrence Ambrose Gitau, Hindu Omari Idi, Geoffrey Mulo Kalio, Joel

Gitumbu Kaman, Teresa Wairimu Kamau, Joseph Kamau Kiongo, Peter Kamau Macharia, Francis Watoro Maina, Frederick Yafes Maloba, Francis Bdungu Mbugua, Abalaiah Musydka Mwilu, Geoffrey Moses Namai, Francis Mbogo Njunge, Vincent Kamau Nyoike, Francis Olewe Ochilo, Maurice Okatuh Ogolla, Edwin Opiyo Omori, Eric Abur Onyango, Roger Toka Otolo, and Adam Titus Wamai, or injured the surviving Plaintiffs.

209.    Defendants' outrageous actions can not be tolerated by a civilized society and deserves the harshest condemnation of an ordered legal system.

210.    As a result of the Defendants' conspiracy, Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

## DAMAGES

211.    As a direct and proximate result of the intentional, willful, reckless, and careless actions of the Defendants, Plaintiffs have suffered severe and permanent personal injuries, damages, and losses, including the following:

(a)     the severe mental anguish suffered by Plaintiffs;

(b)     the severe pain and suffering suffered by Plaintiffs;

(c)     the inability of Plaintiffs to perform the usual household and personal activities that they normally would have performed through the remainder of their natural life expectancies;

(d)     loss of Plaintiffs' and Decedents' earnings and future earning potential;

(e)     loss of Plaintiffs' and Decedents' lives and life's pleasures;

(f)     costs relating to managing the estates of Decedents; and

(g)     death of the Decedents by way of murder as a result of the Defendants' conduct
        and that of their co-conspirators; and

(h)     Economic damages, solatium, pain and suffering, and punitive damages under and
        28 U.S.C. § 1605A(c).

212.    The aforementioned personal injuries, death and losses incurred by the Plaintiffs were
        caused by the intentional outrageous acts, recklessness, and carelessness of all
        Defendants, acting individually and in concert, as well as other co-conspirators not yet
        identified, and of their agents, servants and/or employees acting within and during the
        course and scope of their employment, authority, or apparent authority.

213.    These aggravating circumstances also justify the award of exemplary damages to the non-
        US national Plaintiffs under Kenyan law.

214.    Plaintiffs demand judgment in their favor in general damages against all Defendants,
        jointly, severally, and *in solido*, in an amount in excess of One Billion ($1,000,000,000)
        Dollars.

215.    Plaintiffs also request an award of legal interest, costs, and such other relief as this
        Honorable Court deems appropriate.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that the Court grant judgment in their favor and against
the Defendants, jointly, severally, and *in solido* on Counts One through Ten, and grant to
Plaintiffs:

·       Compensatory and punitive damages in favor of Plaintiffs and against Defendants jointly,
        severally, and *in solido*, in the amounts demanded in this Complaint for Damages;

·       Prejudgment interest or other appropriate interest;

–67–

·   Costs and expenses;

·   Attorney's fees; and

·   Such other and further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted,

Edward MacAllister (No. 494558)
Steven R. Perles (No. 326975)
THE PERLES LAW FIRM, PC
1146 19th Street, NW
5th Floor
Washington, DC 20036
Telephone: (202) 955-9055
Telefax: (202) 955-3806

and

John Arthur Eaves, Jr., USDC Bar #432137
Eaves Law Firm
101 North State Street
Jackson, MS 39201
Telephone: (601) 355-7961
Telecopier: (601) 355-0530

and

William Wheeler, USDC Bar #10848
Jamie Franks, USDC Bar#100156
Wheeler & Franks
Post Office Box 681
Tupelo, MS 38802
Telephone: (662) 842-0380
Telecopier: (662) 842-7491

**ATTORNEYS FOR THE PLAINTIFFS**