**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MILLY MIKALI AMDUSO, et al.,**

**Plaintiffs,**

**v.**

**REPUBLIC OF SUDAN, et al.,**

**Defendants.**

**Civil Action No. 08-1361 (JDB)**

**MEMORANDUM OPINION**

Over fifteen years ago, on August 7, 1998, the United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania were devastated by simultaneous suicide bombings that killed hundreds of people and injured over a thousand. This Court has entered final judgment on liability under the Foreign Sovereign Immunities Act ("FSIA") in this civil action and several related cases—brought by victims of the bombings and their families—against the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps, and the Iranian Ministry of Information and Security (collectively "defendants") for their roles in supporting, funding, and otherwise carrying out these unconscionable acts. The next step in the case is to assess and award damages to each individual plaintiff, and in this task the Court has been aided by several special masters.

Plaintiffs are 113 Kenyan, Tanzanian, and United States citizens injured and killed in the bombings, and their immediate[1] family members.[2] Service of process was completed upon each

[1] One plaintiff, Stacy Waithere, is the granddaughter of deceased victim Joel Gitumbu Kamau. Because she is thus not an immediate family member, the Court will dismiss her claim because she does not have a viable cause of action. See Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 79 (D.D.C. 2010). Similarly, another plaintiff,

defendant, but defendants failed to respond, and a default was entered against each defendant. The Court has held that it has jurisdiction over defendants and that the foreign national plaintiffs who worked for the U.S. government are entitled to compensation for personal injury and wrongful death under 28 U.S.C. § 1605A(c)(3). See Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 148-51 (D.D.C. 2011). The Court has also held that, although those plaintiffs who are foreign national family members of victims lack a federal cause of action, they may nonetheless pursue claims under the laws of the District of Columbia. Id. at 153-57. A final judgment on liability was entered in favor of plaintiffs. Nov. 28, 2011 Order [ECF No. 62] at 2. The deposition testimony and other evidence presented established that the defendants were responsible for supporting, funding, and otherwise carrying out the bombings in Nairobi and Dar es Salaam. See Owens, 826 F. Supp. 2d at 135-47.

The Court then referred plaintiffs' claims to several special masters[3] to prepare proposed findings and recommendations for a determination of damages. Feb. 27, 2012 Order Appointing Special Masters [ECF No. 67] at 2. The special masters have now filed completed reports on each plaintiff. See Special Master Reports [ECF Nos. 73-250]. In completing those reports and in finding facts, the special masters relied on sworn testimony, expert reports, medical records, and other evidence. The reports extensively describe the key facts relevant to each of the plaintiffs

---

Yvonne Bochart, a deceased victim's widow, did not marry the victim until well after the bombings, and the Court will dismiss her claim as well. See id.

[2] A large number of plaintiffs are listed as plaintiffs both in this case and in the related case before this Court, Wamai v. Republic of Sudan, No. 08-1349 (D.D.C. July 25, 2014). Initially, plaintiffs in these two cases were represented by two different sets of attorneys. Some plaintiffs signed retainer agreements with both sets of attorneys, and so appeared as plaintiffs in both cases. Following mediation with Magistrate Judge Facciola, the attorneys settled the issue of which plaintiffs were represented by whom by signing a cooperation agreement and entering into joint representation of plaintiffs in both cases. See [ECF Nos. 54-57]. Of course, plaintiffs are entitled to only one award. As Wamai is the earlier-filed case, and because the joint representation vitiates any conflict between counsel, the Court will award damages to plaintiffs appearing in both cases only in Wamai, and will deny those same plaintiffs awards in this case.

Similarly, one plaintiff is listed in this case and in the Opati case (No. 12-1224), also currently pending before this Court. That plaintiff will be awarded damages in this case but not in the Opati case.

[3] Those special masters (collectively, "the special masters") are Kenneth L. Adams, John D. Aldock, Oliver Diaz, Jr., Deborah E. Greenspan, Brad Pigott, Stephen A. Saltzburg, and C. Jackson Williams.

and carefully analyze their claims under the framework established in mass tort terrorism cases. The Court commends each of the special masters for their excellent work and thoughtful analysis.

The Court hereby adopts all facts found by the special masters relating to all plaintiffs in this case, including findings regarding the plaintiffs' employment status or their familial relationship necessary to support standing under section 1605A(a)(2)(A)(ii). See Owens, 826 F. Supp. 2d at 149. Where the special masters have received evidence sufficient to find that a plaintiff is a U.S. national and is thus entitled to maintain a federal cause of action, the Court adopts that finding. The Court also adopts all damages recommendations in the reports, with the few adjustments described below. "Where recommendations deviate from the Court's damages framework, 'those amounts shall be altered so as to conform with the respective award amounts set forth' in the framework, unless otherwise noted." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010) (quoting Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) ("Peterson II"), abrogation on other grounds recognized in Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 65 (D.D.C. 2013)). As a result, the Court will award plaintiffs a total judgment of over $1.7 billion.

## I. CONCLUSIONS OF LAW

On November 28, 2011, the Court granted summary judgment on liability against defendants in this case. Nov. 28, 2011 Order [ECF No. 62] at 2. The U.S. citizens and foreign national U.S.-government-employee victims have a federal cause of action, while their foreign-national family members have a cause of action under D.C. law.

**a. The Government-Employee Plaintiffs Are Entitled To Damages On Their Federal Law Claims Under 28 U.S.C. § 1605A**

"To obtain damages in a Foreign Sovereign Immunities Act (FSIA) action, the plaintiff must prove that the consequences of the defendants' conduct were reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with application of the American rule on damages." Valore, 700 F. Supp. 2d at 83. Plaintiffs here have proven that the consequences of defendants' conduct were reasonably certain to—and indeed intended to—cause injury to plaintiffs. See Owens, 826 F. Supp. 2d at 135-46. As discussed by this Court previously, because the FSIA-created cause of action "does not spell out the elements of these claims that the Court should apply," the Court "is forced . . . to apply general principles of tort law" to determine plaintiffs' entitlement to damages on their federal claims. Id. at 157 n.3.

Survivors are entitled to recover for the pain and suffering caused by the bombings: acts of terrorism "by their very definition" amount to extreme and outrageous conduct and are thus compensable by analogy under the tort of "intentional infliction of emotional distress." Valore, 700 F. Supp. 2d at 77 (citing Restatement (Second) of Torts § 46(1) (1965)); see also Baker v. Socialist People's Libyan Arab Jamahriya, 775 F. Supp. 2d 48, 74 (D.D.C. 2011) (permitting plaintiffs injured in state-sponsored terrorist bombings to recover for personal injuries, including pain and suffering, under tort of "intentional infliction of emotional distress"); Estate of Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 153 (D.D.C. 2011) (same). Hence, "those who survived the attack may recover damages for their pain and suffering, . . . [and for] economic losses caused by their injuries. . . ." Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 55 (D.D.C. 2012) ("Oveissi II") (citing Valore, 700 F. Supp. 2d at 82-83); see 28 U.S.C. § 1605A(c). Accordingly, all plaintiffs who were injured in the 1998 bombings can recover for

their pain and suffering as well as their economic losses, and their immediate family members—if U.S. nationals—can recover for solatium. Bland, 831 F. Supp. 2d at 153. In addition, the estates of those who were killed in the attack are entitled to recover compensatory damages for wrongful death. See, e.g., Valore, 700 F. Supp. at 82 (permitting estates to recover economic damages caused to deceased victims' estates).

**b. Family Members Who Lack A Federal Cause Of Action Are Entitled To Damages Under D.C. Law**

This Court has previously held that it will apply District of Columbia law to the claims of any plaintiffs for whom jurisdiction is proper, but who lack a federal cause of action under the FSIA. Owens, 826 F. Supp. 2d at 153-57. This category includes only the foreign-national family members of the injured victims from the 1998 bombings. Individuals in this category seek to recover solatium damages under D.C. law based on claims of intentional infliction of emotional distress. To establish a prima facie case of intentional infliction of emotional distress under D.C. law, a plaintiff must show: (1) extreme and outrageous conduct on the part of the defendant which, (2) either intentionally or recklessly, (3) causes the plaintiff severe emotional distress. Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002). Acts of terrorism "by their very definition" amount to extreme and outrageous conduct, Valore, 700 F. Supp. 2d at 77; the defendants in this case acted intentionally and recklessly; and their actions caused each plaintiff severe emotional distress, see Owens, 826 F. Supp. 2d at 136-45; Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 74-75 (D.D.C. 2010). Likewise, D.C. law allows spouses and next of kin to recover solatium damages. D.C. Code § 16-2701. Based on the evidence submitted to the special masters, the Court concludes that the foreign-national family members of the victims of the 1998 bombings have each made out claims for intentional infliction of emotional distress and are entitled to solatium damages (with the few exceptions detailed below).

## II. DAMAGES

Having established that plaintiffs are entitled to damages, the Court now turns to the question of the amount of damages, which involves resolving common questions related to plaintiffs with similar injuries. The damages awarded to each plaintiff are laid out in the tables in the separate Order and Judgment issued on this date.

### a. Compensatory Damages

#### 1. Economic damages

Under the FSIA, injured victims and the estates of deceased victims may recover economic damages, which typically include lost wages, benefits and retirement pay, and other out-of-pocket expenses. 28 U.S.C. § 1605A(c). The special masters recommended that four deceased plaintiffs be awarded economic damages. To determine each plaintiff's economic losses resulting from the bombings, the special masters relied on economic reports submitted by the Center for Forensic Economic Studies ("CFES"), which estimated lost earnings, fringe benefits, retirement income, and the value of household services lost as a result of the injuries sustained from the bombing. In turn, CFES relied on information from the survivors as well as other documentation, including country-specific economic data and employment records. See, e.g., Report of Special Master Steven Saltzburg Concerning Francis Mbogo Njung'e, Ex. 1 [ECF No. 67-1] at 1-4 (further explaining methodology employed in creating the economic loss reports). The Court adopts the findings and recommendations of the special masters as to economic losses to be awarded to injured victims and the estates of deceased victims.

#### 2. Awards for pain and suffering due to injury

Courts determine pain-and-suffering awards for survivors based on factors including "the severity of the pain immediately following the injury, the length of hospitalization, and the extent

of the impairment that will remain with the victim for the rest of his or her life." O'Brien v. Islamic Republic of Iran, 853 F. Supp. 2d 44, 46 (D.D.C. 2012) (internal quotation marks omitted). When calculating damages amounts, "the Court must take pains to ensure that individuals with similar injuries receive similar awards." Peterson II, 515 F. Supp. 2d at 54. Recognizing this need for uniformity, courts in this district have developed a general framework for assessing pain-and-suffering damages for victims of terrorist attacks, awarding a baseline of $5 million to individuals who suffer severe physical injuries, such as compound fractures, serious flesh wounds, and scars from shrapnel, as well as lasting and severe psychological pain. See Valore, 700 F. Supp. 2d at 84. Where physical and psychological pain is more severe—such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead—courts have departed upward from this baseline to $7 million and above. See O'Brien, 853 F. Supp. 2d at 47. Similarly, downward departures to a range of $1.5 to $3 million are warranted where the victim suffers severe emotional injury accompanied by relatively minor physical injuries. See Valore, 700 F. Supp. 2d at 84-85.

Damages for extreme pain and suffering are warranted for those individuals who initially survive the attack but then succumb to their injuries. "When the victim endured extreme pain and suffering for a period of several hours or less, courts in these [terrorism] cases have rather uniformly awarded $1 million." Haim v. Islamic Republic of Iran, 425 F. Supp. 2d 56, 71 (D.D.C. 2006); see Peterson II, 515 F. Supp. 2d at 53-55. When the period of the victim's pain is longer, the award increases. Haim, 425 F. Supp. 2d at 72. And when the period is particularly brief, courts award less. For instance, where an individual "survived a terrorist attack for 15 minutes, and was in conscious pain for 10 minutes," a court in this district awarded $500,000.

See Peterson II, 515 F. Supp. 2d at 53. To the estates of those who are killed instantly, courts award no pain-and-suffering damages. The Court adopts the special masters' recommendations to award no pain-and-suffering damages to the estates of those plaintiffs who were killed instantly.

The need to maintain uniformity with awards to plaintiffs in prior cases and between plaintiffs in this case is particularly evident. A great number of plaintiffs were injured in the bombings. Those injuries, and evidence of those injuries, span a broad range. Although the special masters ostensibly applied the same guidelines, their interpretations of those guidelines understandably brought about recommendations of different awards even for plaintiffs who suffered very similar injuries—particularly those plaintiffs who did not suffer severe physical injuries. For those plaintiffs, the Valore court explained that downward departures to a range of $1.5 million to $3 million are appropriate, and the Court will apply that guideline as described at length in this Court's opinion in Wamai v. Republic of Sudan, No. 08-1349 (D.D.C. July 25, 2014). Those who suffered from injuries similar to plaintiffs who are generally awarded the "baseline" award of $5 million (involving some mix of serious hearing or vision impairment, many broken bones, severe shrapnel wounds or burns, lengthy hospital stays, serious spinal or head trauma, and permanent injuries) will be awarded that baseline. See Valore, 700 F. Supp. 2d at 84. The Court adopts the recommendations by special masters of awards consistent with these adjusted guidelines, and will adjust inconsistent awards accordingly.

3. Solatium

"In determining the appropriate amount of compensatory damages, the Court may look to prior decisions awarding damages for pain and suffering, and to those awarding damages for solatium." Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). Only

immediate family members—parents, siblings, spouses, and children—are entitled to solatium awards.[4] See Valore, 700 F. Supp. 2d at 79. The commonly accepted framework for solatium damages in this district is that used in Peterson II, 515 F. Supp. 2d at 52. See Valore, 700 F. Supp. 2d at 85; Belkin, 667 F. Supp. 2d at 23. According to Peterson II, the appropriate amount of damages for family members of deceased victims is as follows: $8 million to spouses of deceased victims, $5 million to parents of deceased victims, and $2.5 million to siblings of deceased victims. 515 F. Supp. 2d at 52. The appropriate amount of damages for family members of injured victims is as follows: $4 million to spouses of injured victims, $2.5 million to parents of injured victims, and $1.25 million to siblings of injured victims. Id. Courts in this district have differed somewhat on the proper amount awarded to children of victims. Compare Peterson II, 515 F. Supp. 2d at 51 ($2.5 million to child of injured victim), with Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim). The Court finds the Peterson II approach to be more appropriate: to the extent such suffering can be quantified, children who lose parents are likely to suffer as much as parents who lose children. Children of injured victims will thus be awarded $2.5 million and, consistent with the Peterson II approach of doubling solatium awards for relatives of deceased victims, children of deceased victims will be awarded $5 million.

Although these amounts are guidelines, not rules, see Valore, 700 F. Supp. 2d at 86, the Court finds the distinctions made by the Valore court to be responsible and reasonable, and hence it will adopt the same guidelines for determining solatium damages here. In the interests of

---

[4] Many of the injured or deceased victims of the family member plaintiffs in this case are plaintiffs not here but in a related case before this Court. See 1st Am. Compl., Wamai, No. 08-1349 (D.D.C. Sept. 5, 2008) [ECF No. 5] at 1-12. The special masters found that each plaintiff in this case claiming solatium damages is related to an injured or deceased victim entitled to pain-and-suffering damages; whether the Court found that victim to be entitled to damages in this case or in Wamai is not important. The awards of those injured or deceased victims support the family-member solatium awards in this case.

fairness and to account for the difficulty in assessing the relative severity of each family member's suffering, in this case and in related cases, the Court will depart from those guidelines only for one plaintiff who clearly suffered much less than other plaintiffs.[5]

In some instances, special masters recommended that spouses of deceased victims receive $10 million. See, e.g., Report of Special Master Deborah Greenspan Concerning Edwin Omori [ECF No. 220] at 5. Because the Court adopts the Peterson II guidelines, each of these recommendations will be adjusted and those plaintiffs will be awarded $8 million. 515 F. Supp. 2d at 52.

One plaintiff, Hannah Ngenda Kamau, is one of two widows of deceased victim Vincent Kamau Nyoike. Report of Special Master Jackson Williams Concerning Vincent Kamau Nyoike [ECF No. 239] at 3. Courts in Kenya generally recognize that more than one wife of a decedent may be entitled to an inheritance, and so this Court will consider Hannah Kamau to be an immediate family member entitled to a solatium award. See Charity Gacheri Kaburu v. Mary Gacheri M'ritaa, Succession Cause No. 251 of 2000 (High Court of Kenya 2014)[6] (appointing both of two widows as joint administrators). Under the circumstances, the Court will exercise its discretion, adopt the special master's recommendation, and award her the normal solatium amount for a deceased spouse. A different approach might involve pro rata awards of the normal solatium amount—and that may be appropriate in cases involving larger numbers of spouses—but just as multiple children do not receive pro rata shares, for similar reasons, the Court will award the full amount to Hannah Kamau.

[5] The special master's report on one plaintiff, Grace Godia, shows clearly that a reduced award is appropriate based on her testimony directly disclaiming emotional damage based on her husband's injury, except for a period of one month following the bombing. See Report of Special Master Deborah Greenspan Concerning Jotham Godia [ECF No. 123] at 4. Hence, the Court will exercise its discretion and reduce her award by half.

[6] Available at http://kenyalaw.org/caselaw/cases/view/99160.

For some plaintiffs, the special masters recommend that no solatium damages be awarded because the record does not contain sufficient evidence to support their claims. See Peterson II, 515 F. Supp. 2d at 46. The Court adopts those recommendations, and so Simon Ngugi, Charity Kiato, and Betty Orario will not be awarded damages. See Report of Special Master Kenneth Adams Concerning Vincent Kamau Nyoike [ECF No. 131] at 8-9; Report of Special Master Kenneth Adams Concerning Elizabeth Kiato [ECF No. 133] at 4; Report of Special Master Kenneth Adams Concerning Samuel Odhiambo Oriaro [ECF No. 181] at 5.

The Court finds that the special masters have appropriately applied the solatium damages framework to most of the plaintiffs in this case, and will adopt their recommendations with a few exceptions.[7] Other courts in this district have held that it is inappropriate for the solatium awards of family members to exceed the pain-and-suffering awards of surviving victims. See Davis, 882 F. Supp. 2d at 15; O'Brien, 853 F. Supp. 2d at 47; Bland, 831 F. Supp. 2d at 157. The Court will follow that approach here. The special masters recommended solatium awards exceeding the pain-and-suffering awards to the related victim in several cases, albeit sometimes inadvertently, because of this Court's adjustment of pain-and-suffering awards.[8] Hence, the Court will reduce those solatium awards to match corresponding pain-and-suffering awards where appropriate.[9]

---

[7] Some special master reports mistakenly refer to solatium awards as pain-and-suffering awards. See, e.g., Report of Special Master Kenneth Adams Concerning Boniface Chege [ECF No. 182] at 7. In those instances—where recommendations are consistent with the guidelines discussed herein—the Court adopts the amount of damages but rejects the special masters' recommendation that the plaintiffs be awarded pain-and-suffering damages.

[8] Because of an apparent clerical error, a special master recommended awarding Nancy Mimba, wife of injured victim George Magak Mimba, $750,000, while purporting to reduce her award so as not to exceed the award to Mr. Mimba—who will be awarded $2,500,000. The Court will adjust Nancy Mimba's award to be in line with the guidelines discussed.

[9] Some special masters recommended proportionally reducing solatium awards to reflect downward departures from the "standard" $5 million pain-and-suffering amount. See, e.g., Report of Special Master Jackson Williams Concerning Doreen Oport [ECF No. 230] at 8. For consistency, and because other courts in this district usually reduce solatium awards only to match injured victims' pain-and-suffering awards, the Court will not proportionally reduce solatium awards. Instead, the Court will reduce solatium awards to match pain-and-suffering awards.

**b. Punitive Damages**

Plaintiffs request punitive damages under section 1605A(c). Punitive damages "serve to punish and deter the actions for which they are awarded." Valore, 700 F. Supp. 2d at 87. Courts calculate the proper amount of punitive damages by considering four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." Oveissi II, 879 F. Supp. 2d at 56 (quoting Acosta, 574 F. Supp. 2d at 30). In this case, the first three factors weigh heavily in favor of an award of punitive damages: the character of defendants' actions and the nature and extent of harm to plaintiffs can accurately be described as horrific. Scores were murdered, hundreds of families were torn asunder, and thousands of lives were irreparably damaged. The need for deterrence here is tremendous. And although specific evidence in the record on defendants' wealth is scant, they are foreign states with substantial wealth.

Previous courts in this district, confronted with similar facts, have calculated punitive damages in different ways. See, e.g., Baker, 775 F. Supp. at 85 (surveying cases). One attractive method often used in FSIA cases is to multiply defendants' annual expenditures on terrorist activities by a factor of three to five. See, e.g., Valore, 700 F. Supp. 2d at 88-90. Unfortunately, there is not enough evidence in the record on defendants' expenditures during the relevant time period to adopt that approach here. Other courts have simply awarded families of terrorism victims $150 million in punitive damages. See, e.g., Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53, 75 (D.D.C. 2008), aff'd, 646 F.3d 1 (D.C. Cir. 2011). Using that approach here would result in a colossal figure, given the number of families involved.

This case, when combined with the related cases involving the same bombings where plaintiffs seek punitive damages,[10] involves over 600 plaintiffs. Valore was a similar case, involving another terrorist bombing sponsored by Iran: the bombing of the United States Marine barracks in Beirut, Lebanon. Two hundred and forty-one military servicemen were murdered in that bombing. A similar number of people, 224, died here, and hundreds more were injured. In Valore, then-Chief Judge Lamberth used the expenditures-times-multiplier method. All told, Judge Lamberth awarded approximately $4 billion in compensatory damages in cases involving the Beirut bombing and about $5 billion in punitive damages. Estate of Brown v. Islamic Republic of Iran, 872 F. Supp. 2d 37, 45 n.1 (D.D.C. 2012) (tallying awards). This case is quite similar in magnitude: all told, including the judgments issued in Owens, Mwila, and Khaliq, and the judgments to be issued in conjunction with this opinion and in Wamai, Onsongo, and Opati, the Court will have issued just over $5 billion in compensatory damages. Given that similarity, the inability of this Court to employ the expenditure-times-multiplier method, and in light of the "societal interests in punishment and deterrence that warrant imposition of punitive sanctions" in cases like this, the Court finds it appropriate to award punitive damages in an amount equal to the total compensatory damages awarded in this case. Beer v. Islamic Republic of Iran, 789 F. Supp. 2d 14, 17 (D.D.C. 2011) (citing Flatow v. Islamic Republic of Iran, 999 F. Supp. 2d 1 (D.D.C. 1998)). Doing so will result in a punitive damage award consistent with the punitive damage awards in analogous cases, particularly those involving the Beirut bombing, and will hopefully deter defendants from continuing to sponsor terrorist activities. The Court will apportion punitive damages among plaintiffs according to their compensatory damages. See Valore, 700 F. Supp. 2d at 90.

[10] Plaintiffs in Owens, Mwila, and Khaliq, cases (involving the same bombings) in which this Court previously awarded damages, did not seek punitive damages. See, e.g., Khaliq v. Republic of Sudan, No. 10-356, 2014 WL 1284973, at *3 (D.D.C. Mar. 28, 2014).

**c. Prejudgment Interest**

An award of prejudgment interest at the prime rate is appropriate in this case. See Oldham v. Korean Air Lines Co., 127 F.3d 43, 54 (D.C. Cir. 1997); Forman v. Korean Air Lines Co., 84 F.3d 446, 450-51 (D.C. Cir. 1996). Prejudgment interest is appropriate on the whole award, including pain and suffering and solatium—although not including the punitive damage award, as that is calculated here by reference to the entire compensatory award—with one exception. See Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 214-15 (D.D.C. 2012) (awarding prejudgment interest on the full award). But see Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 30 n.12 (D.D.C. 2011) (declining to award prejudgment interest on solatium damages). Because some of the economic loss figures recommended by the special masters have already been adjusted to reflect present discounted value, see District of Columbia v. Barritaeu, 399 A.2d 563, 568-69 (D.C. 1979), the Court will not apply the prejudgment interest multiplier to the economic loss amounts except those calculated in 1998 dollars. See Doe, 943 F. Supp. 2d at 186 (citing Oldham, 127 F.3d at 54); Report of Special Master Steven Saltzburg Concerning Francis Mbogo Njung'e, Ex. 1 [ECF No. 67-1] at 1-4 (explaining how to properly apply interest here without double-counting). See Doe, 943 F. Supp. 2d at 186 (citing Oldham, 127 F.3d at 54). Awards for pain and suffering and solatium are calculated without reference to the time elapsed since the attacks. Because plaintiffs were unable to bring their claims immediately after the attacks, they lost use of the money to which they were entitled upon incurring their injuries. Denying prejudgment interest on these damages would allow defendants to profit from the use of the money over the last fifteen years. Awarding prejudgment interest, on the other hand, reimburses plaintiffs for the time value of money, treating the awards as if they were awarded promptly and invested by plaintiffs.

The Court will calculate the applicable interest using the prime rate for each year. The D.C. Circuit has explained that the prime rate—the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest, one "more appropriate" than more conservative measures such as the Treasury Bill rate, which represents the return on a risk-free loan. See Forman, 84 F.3d at 450. Although the prime rate, applied over a period of several years, can be measured in different ways, the D.C. Circuit has approved an award of prejudgment interest "at the prime rate for each year between the accident and the entry of judgment." See id. Using the prime rate for each year is more precise than, for example, using the average rate over the entire period. See Doe, 943 F. Supp. 2d at 185 (noting that this method is a "substantially more accurate 'market-based estimate'" of the time value of money (citing Forman, 84 F. 3d at 451)). Moreover, calculating interest based on the prime rate for each year is a simple matter.[11] Using the prime rate for each year results in a multiplier of 2.26185 for damages incurred in 1998.[12] Accordingly, the Court will use this multiplier to calculate the total award.[13]

## CONCLUSION

The 1998 embassy bombings shattered the lives of all plaintiffs in this case. Reviewing their personal stories reveals that, even more than fifteen years later, they each still feel the horrific effects of that awful day. Damages awards cannot fully compensate people whose lives

[11] To calculate the multiplier, the Court multiplied $1.00 by the prime rate in 1999 (8%) and added that amount to $1.00, yielding $1.08. Then, the Court took that amount and multiplied it by the prime rate in 2000 (9.23%) and added that amount to $1.08, yielding $1.17968. Continuing this iterative process through 2014 yields a multiplier of 2.26185.

[12] The Court calculated the multiplier using the Federal Reserve's data for the average annual prime rate in each year between 1998 and 2014. See Bd. of Governors of the Fed. Reserve Sys. Historical Data, available at http://www.federalreserve.gov/releases/h15/data.htm (last visited July 25, 2014). As of the date of this opinion, the Federal Reserve has not posted the annual prime rate for 2014, so the Court will conservatively estimate that rate to be 3.25%, the rate for the previous six years.

[13] The product of the multiplier and the base damages amount includes both the prejudgment interest and the base damages amount; in other words, applying the multiplier calculates not the prejudgment interest but the base damages amount plus the prejudgment interest, or the total compensatory damages award.

have been torn apart; instead, they offer only a helping hand. But that is the very least that these plaintiffs are owed. Hence, it is what this Court will facilitate.

A separate Order consistent with these findings has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 25, 2014