**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MILLY MIKALI AMDUSO,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| | ) Case No. 08-cv-1361 (JDB) |
| | ) |
| v. | ) |
| | ) |
| **REPUBLIC OF SUDAN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## PLAINTIFFS' MOTION TO COMPEL RULE 69 DISCOVERY FROM THE REPUBLIC OF SUDAN

Pursuant to Federal Rule of Civil Procedure Rule 69(a)(2) in aid of their final judgment entered by this Court in July 2015, Plaintiffs respectfully submit this motion to compel discovery from judgment debtor the Republic of Sudan ("Sudan").  Judgment debtor Sudan has refused to provide any discovery to assist Plaintiffs' efforts to identify and locate Sudan's assets to satisfy Plaintiffs' final judgments.  Despite Plaintiffs' repeated attempts to secure discovery of documents and electronic information from Sudan pursuant to Federal Rule 69 in aid of Plaintiffs' final judgments, Sudan has refused to comply with the Federal Rules of Civil Procedure.  Accordingly, Plaintiffs respectfully seek an Order by this Court compelling Sudan to comply with Plaintiffs' discovery requests to provide, among other items, documents and information revealing the financial institutions and others participating with Sudan to transfer, conceal, and maintain Sudan's assets in and through the United States and other locations and documents revealing those parties' efforts and schemes to conceal the assets and property of Sudan and entities under Sudan's ownership or control.

1

## I.      INTRODUCTION

"Sudan chose (for whatever reason) to ignore these cases over the years, changing course only when the final judgments saddled it with massive liability."  Court's Memorandum Opinion Denying Motion to Vacate ("Opinion"), D.E. 305 at 18-19.  In its last minute effort to vacate the Court's judgment, Sudan represented that it was finally willing to appear before the Court and play by the rules:

> Sudan desires to appear in the court, defend itself on the merits if need be . . .Sudan wants to clear its name. It's willing to provide evidence to do so . . . .

Exhibit A; Hearing Transcript Excerpts, 12/18/15 at 144:6-12.

Despite its proclamation to the Court, Sudan's recent conduct demonstrates that it has no such intention of playing by the rules.  It will do so only to the extent it believes such rules will favor Sudan.  Based on prior rulings by this Court, Sudan is a judgment debtor of the Plaintiffs, the victims of the August 1998 bombings of the U.S. embassies in Kenya and Tanzania.  This Court recently affirmed the validity of that judgment by rejecting several arguments raised by Sudan.  Opinion, D.E. 305 at 75.  Nevertheless, Sudan still refuses to produce _any_ discovery in aid of the execution of that judgment to which Plaintiffs are entitled under the Federal Rules of Civil Procedure and binding Supreme Court precedent.  As detailed below, the law is clear that Sudan's refusal is in breach of the Federal Rules.  Whatever appeals or further challenges Sudan wishes to levy against the judgment in this case do not relieve it of its obligations to provide discovery in aid of the execution of Plaintiffs' judgment under Federal Rule of Civil Procedure 69(a)(2).  Sudan has proclaimed its desire to finally comply with the Rule of Law.  The time to do so is now.  Sudan's efforts to delay and disrupt Plaintiffs' attempts to seek relief in this case must finally come to an end, and Sudan must be forced to live up to its stated intention to litigate in good faith.

Instead, in response to Plaintiffs' properly served Requests for Production of Documents pursuant to Rule 69(a)(2), Exhibit B; Ps' First Request for Production of Documents,  Sudan proffered scores of boilerplate objections designed to frustrate Plaintiffs' ability to obtain any information to which they are entitled.  These objections include assertions that: (1) discovery should be limited by the Foreign Sovereign Immunities Act ("FSIA"); (2) discovery is "premature" given the pending appeal and motion to vacate this Court's Judgment; (3) Plaintiffs are not entitled to discovery until an order is issued pursuant to Title 28 U.S.C. §1610(c); (4) Sudan is immune from the jurisdiction of this Court for any purpose; and (5) Plaintiffs' requests are not reasonably calculated to lead to the discovery of attachable assets.[1]

Plaintiffs have repeatedly expressed a willingness to address all of these objections and, indeed, have already done so in writing on multiple occasions.  With respect to the scope of the discovery requests, Sudan has objected to virtually every element of Plaintiffs' discovery requests ranging from disputes about the relevant period and definitions to claims that factual findings by the Court regarding Sudan's conduct—many of which are also found in BNP Paribas' factual statement in support of its guilty plea entered in a U.S. federal criminal case— are not the proper subject of discovery.

Although Plaintiffs suspected that most of Sudan's objections on these points were designed to simply obstruct the process further, Plaintiffs still sought to narrow the issues in dispute by positing a simple question: does Sudan intend to produce _any_ documents in response

---

[1]  One of Sudan's additional objections was that Plaintiffs' attorney Michael J. Miller was not authorized to issue discovery from the *Amduso* matter in October 2015 because he had not yet paid his court renewal fees at that time.  He has since done so.  Plaintiffs refuted Sudan's objection, however, and out of an abundance of caution, Plaintiffs re-issued the exact same document requests to Sudan on January 21, 2016. *See* Exhibit I.  The resolution of that issue apparently has had no impact on Sudan's willingness to respond to the discovery requests.

to Plaintiffs' requests?  In other words, are there some items or areas of discoverable information for which the parties are in agreement?  Unfortunately, and perhaps unsurprisingly, Sudan declined to answer this question but the import of its silence makes it abundantly clear that the answer is "No." [2]

BNP Paribas' guilty plea demonstrated Sudan has been engaged in a decades-long criminal conspiracy to, *inter alia*, evade and defeat U.S. sanctions by concealing its assets. Specifically, BNP Paribas admitted under penalty of perjury that Sudan conspired with numerous entities to actively conceal its assets.  Exhibit G; BNPP Facts at ¶ 19.   With U.S. sanctions against Sudan still firmly in place, there is every reason to believe that many of the individuals and entities that began assisting Sudan in its criminal evasion of U.S. trade sanctions in 1997 continue to help Sudan conceal its assets today and prevent the victims in this case from executing on their lawful judgments.  Thus, discovery regarding the identities of these co-conspirators and the nature of the assistance they provided to Sudan is not only relevant to Plaintiffs' attempts to enforce their lawful judgment against Sudan—it is critically important to that effort.

In light of Sudan's refusal to provide any responsive documents, Plaintiffs served a Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  (Exhibit C: Notice of Deposition).  Sudan responded with the same boilerplate objections and refused to produce a witness to testify to any of the designated areas of inquiry identified by Plaintiffs. This Court's recent decision to deny Sudan's motion to vacate, (D.E. 305), has had no impact on

---

[2]  Sudan has stated in correspondence that, despite its refusal to respond to Plaintiffs' question, it believes that Plaintiffs are still obligated to do more to narrow their requests.  This is an assertion without substance and provides further evidence of Sudan's efforts to simply obstruct the process.  If Sudan cannot identify a single item or piece of information that it believes is properly discoverable under Rule 69(a)(2), then any attempt by Plaintiffs to try and narrow the scope further will undoubtedly be futile.

Sudan's willingness to reconsider its position on any of Plaintiffs' requests.  A proper judgment has been entered against Sudan and there is no stay of enforcement precluding Plaintiffs from seeking discovery in aid of execution of their judgment.  While Sudan has stated that it is now fully committed to defending these actions and litigating in good faith, its conduct bares its unwillingness to pay the judgment or even to submit to discovery designed to identify the assets that are potentially subject to execution. Sudan's objections are not supported in law, and have only one true purpose – to improperly delay and disrupt Plaintiffs' efforts to enforce this Court's Judgment.  Indeed, the record to date makes it clear that Sudan will not comply with its obligations in this litigation absent an order from this Court compelling it to do so..

For these reasons, Plaintiffs now must request that this Court compel Sudan to comply with its obligations under the Federal Rules of Civil Procedure, binding legal precedent, and the recent ruling of this Court concluding that Plaintiffs' judgments against Sudan are valid and therefore are subject to execution.

## I.        BACKGROUND

On July 31, 2009, the Court consolidated this case with *Wamai v. Republic of Sudan*, No. 08-1349  (JDB), *Mwila v. Islamic Republic of Iran*, No. 08-1377 (JDB), *Onsongo v. Republic of Sudan*, No. 08-1380 (JDB), and *Khaliq v. Republic of Sudan*, No. 10-0356 (JDB), all of which arose from the 1998 Embassy bombings, for purposes of discovery.  On July 25, 2014, this Court ordered that Final Judgment be entered in favor of the Plaintiffs for their injuries and damages caused by the Government of Sudan and others who were responsible for supporting, funding, and otherwise carrying out the 1998 Embassy Bombings in Nairobi and Dar es Salaam.  (D.E. 254, 256).  Sudan filed a notice of appeal on August 21, 2014, (D.E. 261), in this case and every related case in this Court arising from the 1998 Embassy bombings, and then filed a motion to

vacate the Court's Judgment on April 22, 2015.  (D.E. 285).  The Court denied Sudan's Motion to Vacate on March 23, 2016.  (D.E. 305).

In aid of execution of the judgment, Plaintiffs served Sudan with post-judgment discovery in aid of its judgment and execution pursuant to Rule 69(a)(2) on October 2, 2015. *See* Exhibit A.  The document contains a total of fourteen narrowly targeted Requests for Production of Documents ("RPD[s]") that are designed to elicit from Sudan the nature of its illegal evasion of the U.S. trade sanctions and asset blocking regime through a criminal conspiracy with BNP Paribas and others.  BNP Paribas pled guilty in July 2014 to conspiring to undertake billions of dollars of illegal transactions through the U.S. financial system on behalf of Sudan from 1997 until 2012 in violation of the International Emergency Economic Powers Act ("IEEPA") and the Trading With the Enemy Act ("TWEA").  In support of its guilty plea, BNP Paribas admitted that as a result of its conduct "the Government of Sudan and numerous banks connected to the Government of Sudan, including [Specially Designated Nationals], were able to access the U.S. financial system and engage in billions of dollars' worth of U.S. dollar-based financial transactions, significantly undermining the U.S. embargo."  Exhibit G; BNP Paribas Statement of Facts (emphasis added) at ¶ 18.  As BNP Paribas further admitted, its conspiracy with Sudan began at least as early as November 1997:

> **In 1997, shortly after the imposition of U.S. sanctions against Sudan, BNPP Geneva agreed to become the sole correspondent bank in Europe for Sudanese Government Bank 1**, which, as noted above, was designated by OFAC as an SDN.  Sudanese Government Bank 1 [the Central Bank of Sudan] then directed all major commercial banks located in Sudan to use BNPP Geneva as their primary correspondent bank in Europe. As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva.

*Id*. (emphasis added) at ¶ 19.

BNP Paribas' "most egregious conduct, measured by dollar volume and role in undermining the U.S. embargo, involved its U.S. dollar transactions with Sudan." *See* Exhibit H: U.S. Government's Memorandum in Support of Court's Acceptance of Plea Agreement, at 3. In sum, BNP Paribas admitted that it conspired with the Government of Sudan, over the course of many years, and numerous other Sudanese banks and entities to structure, conduct, and conceal the processing and transfer of billions of dollars through the United States. Notably, BNP Paribas admitted that it knowingly assisted Sudan "despite the Government of Sudan's role in supporting terrorism and committing human rights abuses." Exhibit G, BNP Paribas Statement of Facts at ¶ 18 (emphasis added). Thus, BNP Paribas conspired with the government that aided and abetted Al Qaeda, as the Court found:

> Sudanese government support was critical to the success of the 1998 embassy bombings: The presence, the safe haven that Al Qaeda had in the Sudan was absolutely integral for its capability of launching operations not just in Kenya, but in Somalia, in Eritrea, in Libya. Without this base of operations, none of this would have happened. The support of Sudanese intelligence, the safe haven provided by the Sudanese government to house al Qaeda's leadership and train its operatives, and the provision of passports allowing al Qaeda to open businesses and charities enabled al Qaeda to build its terrorist cells in Kenya, Somalia and Tanzania . . . **Sudan's support thus facilitated and enabled the 1998 terrorist bombings on the two U.S. embassies in East Africa.**

*Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 146 (D.D.C. 2011) (internal citations and quotations marks omitted) (emphasis added).

On November 4, 2015, Sudan served counsel with Objections to Plaintiffs' RPDs. Exhibit D; Sudan's Objections to Plaintiff's First Request for Production. On January 8, 2016, Plaintiffs served Sudan with a Notice of Deposition pursuant to Rule 30(b)(6) seeking the deposition of a representative or representatives of Sudan most knowledgeable about nineteen (19) specific areas relating to Sudanese assets in aid of execution of the judgment. *See* Exhibit C. Sudan asserted the same objections in response to Plaintiffs' Notice of Deposition. Exhibit

E; Sudan's Objections to P's Notice of Dep..   Plaintiffs agreed to continue the 30(b)(6) deposition until the Court ruled on Plaintiffs' Motion to Compel discovery in response to their RPDs.

The parties exchanged correspondence between November 2015 and February 2016 in order to try and reach an agreement on these objections. Exhibit F; Meet-and-Confer correspondence.  As this correspondence record makes clear, Plaintiffs attempted to address all of Sudan's so-called "threshold" legal objections—by outlining the clear requirements of the Federal Rules of Civil Procedure and controlling legal precedent, including the Supreme Court's seminal decision regarding discovery in a FSIA setting in *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2254 (2014).  Sudan also raised numerous "specific objections" regarding definitions, time periods, and even the validity of this Court's prior factual findings.  *See*, *e.g.*, Exhibit F:  Meet-and-Confer Correspondence, January 11, 2016 Letter from White & Case at 2 ("Sudan objected to [the definition of co-conspirator] because Sudan was not found by any court to have been a part of any conspiracy in respect of the 1998 embassy bombings and because Sudan denies that it provided any material support or resources to any entity or individual listed in that Definition.").  However, Sudan refused to state whether there was even a single document or area of inquiry which it agreed was a proper subject of discovery.  Instead, Sudan merely demanded that Plaintiffs "address" its purportedly "well-founded" objections—presumably by simply abandoning their requests for discovery to which they are lawfully entitled.  Plaintiffs decline to do so.  To date, Sudan has refused to produce a single document in response to Plaintiffs' requests.

On March 15, 2016, the parties notified the Court that they have reached a discovery impasse. The Court instructed Plaintiffs to file a Motion to Compel by no later than April 6,

2016.  Accordingly, Plaintiffs must now move to compel Sudan: (1) to produce discovery in response to Plaintiffs' Request for Production of Documents; and (2) to produce a witness to testify on the matters identified in Plaintiffs' Notice of Deposition pursuant to Rule 30(b)(6).

## II.    ARGUMENT

Plaintiffs are entitled to discovery in aid of execution of their judgment with respect to Sudan's illegal conspiracy with BNP Paribas, which involved a vast, illegal, money-laundering-scheme with a variety of Sudanese government entities over the period of over a decade and the movement of assets  inside the United States.  Against the factual backdrop of Sudan's long-standing conspiracy to defeat U.S. economic sanctions against it and to conceal its assets both inside and outside the United States, Plaintiffs' requests are both necessary and reasonably calculated to lead to the discovery of attachable assets.   Sudan raises numerous unfounded boilerplate objections to Plaintiffs discovery.  All of these various objections can be reduced to the following basic arguments: (1) discovery should be limited by the Foreign Sovereign Immunities Act ("FSIA"); (2) discovery is "premature" given the pending appeal and motion to vacate this Court's Judgment (although this latter ground is now mooted); (3) Plaintiffs are not entitled to discovery until a 28 U.S.C. sec. 1610(c) order is issued; (4) Sudan is immune from the jurisdiction of this Court for any purpose; and (5) Plaintiffs' requests are not "proportional to the needs of the case" as required by Rule 26(b)(1).  However, at their heart, all of these objections are meritless and designed solely to delay and disrupt Plaintiffs' ability to enforce their judgment, and belie Sudan's professed intention to finally appear before the Court and litigate in good faith.

Since the outset of this case, Sudan has acted in bad faith by choosing to do "absolutely nothing for years, while plainly aware of the litigation." (Opinion Denying Motion to Vacate,

D.E. 305 at 17) (emphasis in original).   Despite "[t]he years of delay spawned by Sudan's nonparticipation" Sudan now seeks to preclude Plaintiffs from obtaining any discovery in execution of their judgment. *Id*. at 20. There is quite simply no precedent or other legal basis justifying an indefinite stay of post-judgment discovery without the posting of a supersedeas bond. *See* Fed. R. Civ. P. 62(d).

Although Sudan now disputes this Court's conclusions that it was responsible for the 1998 Embassy bombings, there can be no real dispute that Sudan participated in a complex, illegal, and fraudulent scheme to clear payments through the United States in order to provide the country with access to the U.S. dollar markets. Exhibit G.  BNP Paribas, as the "central banker" for the Government of Sudan, has already admitted this much.  *Id.*  Nevertheless, Sudan bizarrely denies its involvement in any criminal scheme with BNP Paribas to defeat U.S. sanctions— thus implicitly asserting that BNP Paribas perjured itself so that it could enjoy the privilege of pleading guilty and paying nearly $9 billion in fines. Exhibit F: Meet-and-Confer Correspondence, January 11, 2016 Letter from White & Case at 2.

Sudan would like to ignore its criminal past which incontrovertibly connects it to BNP Paribas' criminal conduct, and rely upon OFAC to satisfy its discovery obligations.  This is not the standard by which discovery is governed.  Plaintiffs are entitled to broad discovery of Sudanese assets under Rule 69 including assets that have been hidden or fraudulently concealed. Plaintiffs' discovery requests are reasonably calculated to lead to the discovery of this vital information.

    **A.  Post-Judgment Discovery in Aid of Execution Against Foreign Sovereigns Is Governed By Federal Rule of Civil Procedure 69 And Not The Foreign Sovereign Immunity Act ("FSIA").**

"The rules governing discovery in post-judgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2254 (2014).  Federal Rule of Civil Procedure 69(a)(2) states that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in the rules or by the procedure of the state where the court is located.'" *Id*.  Thus, the right of a party to conduct discovery "applies both before and after judgment."  *Credit Lyonnais, S.A. v. SGC International, Inc*., 160 F.3d 428, 430 (8th Cir. 1998); *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967).

Post-judgment creditors need not make a motion to commence post-judgment discovery, *see e.g. Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* No. 91-7776, 1995 WL 662120 at *2 (S.D.N.Y. Nov. 9, 1995), and because a judgment creditor "has a right to discover information pertaining to Defendant's ability to satisfy the judgment the scope of post-judgment discovery is very broad." *National Satellite Sports, Inc. v. Elizondo*, No. 00-2297L, 2003 WL 21507362, at *1 (N.D. Tex. Apr. 25, 2003) (quoting *FDIC v. LeGrand,* 43 F.3d 163, 172 (5th Cir. 1995)).

Plaintiffs are entitled to a "thorough examination of a judgment debtor with respect to its assets, including discovery [of] the identity and location of any of the judgment debtor's assets, wherever located." *British Int'l Ins. Co. v. Seguros La Republica, S.A.,* No. 90 Civ. 2370, 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000). As federal courts have routinely found "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *1ST Technology,* No. No. 06-cv-01110, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (quoting *British International II,* 200 F.R.D. at 589).

### 1.   The FSIA does not Limit Discovery Under Federal Rule 69.

The discovery rules that apply to foreign sovereigns are no different than those that apply to any other judgment debtor. "Congress kept in place a court's normal discovery apparatus in FSIA proceedings." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 378 (D.C. Cir. 2011) (citing to H.R. Rep. No. 94-1487, at 23 (1976)); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 50 (2d Cir. 2002) (ordering district court to permit judgment creditor to "conduct full discovery" pursuant to Rule 69 against "alter ego" of sovereign instrumentality); *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1472 (9th Cir. 1992) (upholding district court's order granting discovery of "worldwide" assets of Chinese government instrumentality).

Indeed, in its recent decision in *Republic of Argentina v. NML Capital, Ltd.*, the U.S. Supreme Court affirmed that there is no provision in the FSIA "forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets" and therefore discovery is not limited by the FSIA.  134 S. Ct. at 2256.  Sudan is not the first foreign sovereign to challenge post-judgment discovery in aid of execution on the grounds that it is entitled to special treatment—as a result of its sovereign status—with respect to requests for information regarding potentially attachable assets.  But those arguments have been repeatedly and summarily rejected, and should be here as well.  In light of the Supreme Court's clear language in *NML Capital*, there is no colorable argument to the contrary. In sum, "[f]oreign sovereigns enjoy no such 'discovery-in-aid-of-execution' immunity under the FSIA." *Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria,* 308 F.R.D. 27, 34 (D.D.C. 2015).

Sudan also attempts to conflate the issues of attachment or execution and discovery in aid of attachment or execution in its objections to Plaintiffs' RPDs.  *See e.g.* Exhibit D, ¶ 12.  The

Supreme Court has explicitly clarified that the question of whether an asset is ultimately determined to be attachable is not dispositive as to whether information about that asset is subject to discovery:

> Argentina maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property. But the reason for these subpoenas is that NML does not yet know what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law. . . . They ask for information about Argentina's worldwide assets generally, so that NML can identify where Argentina may be holding property that is subject to execution. To be sure, that request is bound to turn up information about property that Argentina regards as immune. But NML may think the same property not immune. In which case, Argentina's self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter.

*Id.* at 2257-58.

In other words, "whatever execution immunity [defendant] may possess under the FSIA, it currently poses no bar to the discovery [plaintiff] seeks." *Continental Transfert*, 308 F.R.D. at 34; *Em Ltd. v. Republic of Argentina*, 695 F. 3d 201, 209 (2d Cir. 2012) ("whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery."); *Export-Import Bank of the Republic of China v. Grenada*, 768 F. 3d 75, 82 (2d Cir. 2014) (finding that the FSIA does not bar broad discovery in aid of executing a judgment against a sovereign).

### B. Plaintiffs' Discovery Requests Are Not Premature

#### 1. Plaintiff Was Not Required To Wait Until A 28 U.S.C. § 1610(c) Order Was Entered Prior to Issuing Discovery to Sudan

One of Sudan's primary objections is that Plaintiffs are not entitled to discovery in aid of execution of the judgment until the Court issues an order pursuant to 28 U.S.C. § 1610(c)[3]. Once

---

[3] Currently pending before the Court is Plaintiffs' Motion for Order under 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment. (D.E. No. 304).

again, Sudan improperly conflates the issue of *attachment* or *execution* of a judgment with *discovery* in aid of *attachment* or *execution*. Section 1610(c) states:

> No *attachment* or *execution* referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c) (emphasis added).  Section 1610 has nothing to say about discovery and is irrelevant to the analysis, which correlates to the Supreme Court's holding in *NML Capital Ltd.,* 134 S. Ct. at 2256.

The issuance of post-judgment discovery pursuant to Rule 69 is not akin to attaching Sudan's property.  They are two entirely separate concepts.  Indeed, Plaintiffs are seeking discovery precisely because they lack reliable information on what assets Sudan holds in the United States. *See id.* at 2257 (finding discovery appropriate as judgment-creditor "does not yet know what property [debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's law). The text of sec. 1610(c) does not preclude the broad discovery authorized by Rule 69 and available to a judgment debtor in aid of execution of the judgment.

### 2.  Plaintiffs Are Entitled to Take Post-Judgment Discovery from Sudan Despite the Pending Appeal and Post-Trial Motions.

During the pendency of an appeal, this Court retains jurisdiction to enforce a judgment. *See e.g.*, *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1128-29 (D.C. Cir. 1978). The power to enforce a judgment includes the power to compel a party to respond to post-judgment discovery – even during the appeal of the merits judgment. *See, e.g., C.H. Sanders Co., Inc., v. BHAP Housing Development Fund Co., Inc*., 750 F. Supp. 67, 69-70 (E.D.N.Y. 1990) (*citing Deering Milliken* in finding that a district court retained the power to enforce the judgment by compelling defendant to comply with a discovery request during pendency of appeal); *United States v.*

*Thurner*, No. 00-82, 2007 WL 4171516, at *2 (E.D. Wis. Nov. 20, 2007) (granting plaintiff's motion to compel and stating that pendency of appeal did not excuse defendant from responding to post-judgment discovery requests).

If the sovereign does not post a supersedeas bond; the pendency of an appeal has no effect on a judgment-creditor's right to seek broad discovery to identify assets that may be available to satisfy the judgment. *So v. Suchanek*, 670 F.3d 1304, 1309 (D.C. Cir. 2012) (a judgment debtor may "face execution of the judgment or post a bond to suspend its effect.") (citing Federal Rule 62(d)); *see also, e.g.*, *Minpeco v. Hunt*, No. 81-cv-7619, 1989 WL 57704, at *2 (S.D.N.Y. May 24, 1989) (citations omitted).  Of course, Sudan has not posted a supersedeas bond or obtained a stay of the judgment pending the resolution of its appeal.   Therefore, Plaintiffs may treat the judgment as final and execute upon it. *See e.g.*, *National Service Industries, Inc., v. Vafla Corporation*, 694 F.2d 246, 250 (11th Cir. 1982).

Furthermore, the Sudan's post-judgment motions do not limit the availability of discovery in aid of enforcing judgments.  *See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc*., 298 F.R.D. 692, 693 (M.D. Fla. 2014) (permitting post-judgment discovery where "judgment debtors [] have presented no support for their argument that they should not be required to engage in discovery in aid of execution while their post-trial motions are pending. Nor has either party moved to stay the execution of the judgment under Rule 62.")

Sudan's current posture in this litigation is a product of its own intentional, flawed litigation strategy.  As this Court observed with respect to Sudan's decision not to appear to defend these matter for years, "Sudan has no one to blame for the consequences but itself." D.E. 305 at 4.  Correspondingly, the only reason Sudan is faced with the "burdens" of responding to discovery is "because [it] refused to post a supersedeas bond or letter of credit to stay execution

of the judgment pending appeal, as required by Fed. R. Civ. P. 62(d)." *Richmark*, 959 F.2d at 1477 (citation omitted); *cf. Minpeco*, 1989 WL 57704 at *2 ("[w]hile compliance with the discovery requests may be burdensome to [judgment debtor], the burden does not outweigh [the judgment creditor's] right to secure its judgment"). Sudan has three choices: pay the judgment, post a bond, or comply with its discovery obligations under the Federal Rules of Civil Procedure. *See Richmark,* 959 F.2d at 1477-78 ("Beijing can avoid any hardship it may face by following normal litigation procedure and posting a *supersedeas* bond"). What it cannot do, however, is simply ignore or defy Plaintiffs' lawful attempts to exercise their post-judgment rights to discovery, attachment, and execution, or the validity of the Court's judgment.  Sudan's behavior in this respect is especially galling in view of its repeated assertions that it now wishes to litigate in good faith, after years or ignoring this Court.

Sudan's repeated objection that it is generally immune from the jurisdiction of the Court does not relieve its burden of responding to Rule 69 discovery, unless it is willing to post a supersedeas bond.  The jurisdictional issue has been litigated, and decided twice: Sudan is subject to the jurisdiction of this Court.  Under black letter law, the fact that Sudan is again challenging the jurisdictional rulings on appeal does not relieve them of their obligation to respond to valid discovery requests.  Sudan's argument for discovery immunity in the context of a pending appeal is essentially the same as their argument that discovery should be stayed pending appeal, and should likewise be rejected.

### C.  Plaintiffs Are Entitled To Broad Discovery Relating to Sudanese Assets

#### 1.  Plaintiffs Are Not Limited To Discovery of Assets Within the United States

Sudan objects to Plaintiffs' discovery requests as overly broad and unduly burdensome, arguing that that judgment-creditors may only obtain discovery regarding assets located in the

United States.  Sudan seems to suggest that Plaintiffs are required to make a *prima facie* showing that an asset is executable before they are entitled to discovery. This argument has been rejected by the Supreme Court:

> The dissent apparently agrees that the Act has nothing to say about the scope of postjudgment discovery of a foreign sovereign's extraterritorial assets. It also apparently agrees that the rules limit discovery to matters relevant to execution. Our agreement ends there.  The dissent goes on to assert that, unless a judgment creditor proves up front that all of the information it seeks is relevant to execution under the laws of all foreign jurisdictions, discovery of information concerning extraterritorial assets is limited to that which the Act makes relevant to execution in the United States. **We can find no basis in the Act or the rules for that position**.

*NML Capital,* 134 S. Ct. at 2257-58 (internal citation omitted) (emphasis added).

In *NML Capital*, the judgment creditors obtained federal judgments against Argentina arising from various defaults on its debt.  The Court noted that "'[i]n order to locate Argentina's assets and accounts, **learn how Argentina moves its assets through New York and around the world**, and accurately identify the places and times when those assets might be subject to attachment and execution **(whether under [United States law] or the law of foreign jurisdictions**),'" the judgment creditors served subpoenas on two non-party banks.  *Id.* at 2253 (emphasis added).  Argentina sought to quash the subpoenas in the district court, then on appeal, and subsequently before the Supreme Court.  "Argentina's petition for writ of certiorari asked us to decide only whether that [Foreign Sovereign Immunities] Act 'imposes [a] limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world.'"  *Id.* at 2255.  The Supreme Court answered clearly and unequivocally that it does not.  *Id.* at 2258.

Broad discovery of the identity and location of judgment debtor's assets "wherever located" is necessary due to the complex, international nature of sovereign business dealings,

including the common use of agencies and instrumentalities, and the possibility that assets may be "hidden or concealed." *See*, e.g., *Rafidain*, 281 F.3d at 54 (quoting *Minpeco*, 1989 WL 57704 at *1-2 ("courts have compelled judgment debtors to answer questions, that include no territorial limitation, about assets they hold or have transferred") (citations omitted); *National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982), and citing *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974) ("plaintiff is entitled to a very thorough examination of the judgment debtor")); *see also Richmark*, 959 F.2d at 1471 (upholding district court order authorizing discovery of "worldwide" assets of sovereign instrumentality).   It is particularly critical in a case such as this one, where the judgment debtor Sudan has engaged in a long-standing and unusually-sophisticated criminal conspiracy to conceal its assets from the U.S. government, as well as potential judgment creditors.

**2.   The Fact That Plaintiffs May Obtain Limited Information From OFAC Regarding Sudanese Assets Blocked in the United States Does Not Relieve Sudan Of Its Obligation To Respond To Discovery In Aid of Execution of the Judgment**

Sudan seeks to place its burden of responding to relevant discovery on the United States government. Sudan argues that because the U.S. Department of Treasury is directed to "make every effort to fully, promptly and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing the property of that foreign state or any agency or instrumentality of such state" all other discovery is unnecessary. 28 U.S.C. § 1610(f)(2)(A). This argument requires Plaintiffs and this Court to blindly accept Sudan's representations that a) the only assets available for attachment and execution are those that have been blocked by OFAC and b) OFAC has the complete universe of information about Sudanese assets, "wherever". Sudan's history of bad faith in this litigation and BNP Paribas's criminal conviction as part of criminal conspiracy involving the government of Sudan and various entities

18

from its financial system plainly demonstrates that discovery is necessary to determine whether Sudan can be taken at its word. Given Sudan's involvement in a decades-long conspiracy to conceal its assets using sophisticated means, it is absurd for it to now assert that all of its assets are known to OFAC.   Indeed, it is far more likely that one of the reasons Sudan opposes discovery so strenuously is because its long-standing conspiracy continues today.   Given that OFAC only seeks and maintains information regarding Sudanese assets within the United States, it cannot possibly satisfy Plaintiffs discovery requests which request information worldwide, which is discoverable even in a FSIA case. *See NML Capital,* 134 S. Ct. at 2257-58   (defendant argues "discovery of information concerning extraterritorial assets is limited to that which the Act makes relevant to execution in the United States. **We can find no basis in the Act or the rules for that position**.").

It is equally absurd for Sudan to assert that all information regarding Sudanese assets is already known by the U.S. Government as a result of BNP Paribas' cooperation.   Exhibit F: January 11, 2016 White & Case Letter at 2.   As the U.S. Department of Justice has stated publicly, not only did "BNP Paribas flout[] U.S. sanctions laws to an unprecedented extreme," it also "**concealed its tracks, and then chose not to fully cooperate with U.S. law enforcement,** leading to a criminal guilty plea and nearly $9 billion penalty."     (Exhibit I; Remarks by Assistant Attorney General Leslie R. Caldwell at 22nd Annual Ethics and Compliance Conference (October 1, 2014) (emphasis added)).   Plaintiffs have no way of knowing the scope of information BNP Paribas turned over to the U.S. government or whether the U.S. government exercised vigilance in forcing complete disclosure.

> **3.  Plaintiff Must Be Permitted To Obtain Discovery Relating to Sudan's Relationship With BNP Paribas For The Entire Period Of The Conspiracy To Evade Economic Sanctions.**

In connection with BNP's guilty plea in *United States v. BNP Paribas,* No. 14-CR-00460 (LGS) (S.D.N.Y. 2014), BNP and the U.S. Government identified Sudan, its instrumentalities, and its Central Bank as co-conspirators in a wide-ranging criminal conspiracy to violate U.S. sanctions. Of note, the Statement of Facts in support of BNP Paribas' guilty plea states that in November 1997, "shortly after imposition of U.S. sanctions against Sudan," BNP stepped in and came to the assistance of the Government of Sudan to "become the sole correspondent bank in Europe" for the Sudanese Central Bank and "all major commercial banks located in Sudan." *See* Exhibit G: BNP Statement of Facts at ¶ 19. Deposits by the Government of Sudan through its Central Bank at the Geneva branch of BNP Paribas alone came to "represent[] about 50% of Sudan's foreign currency assets." *Id*. "In short, BNP [Paribas] became, in effect, the global private banker for Sudan – unlawfully opening the door to the U.S. financial markets" at the same time the United States and the United Nations Security Council sought to heavily sanction Sudan to limit the Sudanese government's assistance for al-Qaeda and international terrorism. *See* Exhibit H: US. Government's Memorandum in Support of the Court's Acceptance of Plea Agreement, at 4.

As the recitation in support of BNP Paribas' guilty plea makes clear, Sudan was actively moving and concealing funds and assets in the wake of U.S. economic sanctions—beginning in the period 1997 through 2001. Sudan has been subject of comprehensive international sanctions since November 1997 for its support of international terrorism, and in that time it has become adept at concealing its assets lest they be seized or blocked.  Because of the sanctions regimes imposed against it, common sense dictates that Sudan has assets all over the world, including the United States, which are now carefully concealed or held through affiliates or agents. Thus, discovery for the period 1997-2010 is arguably the most critical to uncovering where Sudan's

executable assets reside since that early time period is when the mechanisms of concealment were first implemented.  The identity and actions of Sudan's co-conspirators in that time period are critical to Plaintiffs' enforcement program because it is likely that many of them continue to conceal Sudanese assets through the present day.  And if they do not, they will know how the scheme operated, which will provide Plaintiffs with further valuable information in devising their enforcement program.

The scope of post-judgment discovery under the Federal Rules is broad, permitting a judgment creditor to obtain discovery not only of the judgment debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets. *See, e.g., Cont'l Transfer Technique, Ltd.* 308 F.R.D. at 37; *ClearOne Commc'ns, Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011) (under Rule 69, "[t]he presumption is in favor of 'full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment. . . .'") (quoting *United States v. Neumann*, 1999 WL 156151, at *1 (D. Mass. March 5, 1999); *O.H.M. Resource Recovery Corp. v. Industrial Fuels & Resources, Inc.,* No. S90–511., 1991 WL 146234, at *2 (N.D. Ind. July 24, 2001) (the scope of discovery under Rule 69(a) "is broad, permitting a judgment creditor to obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets.").

Pursuant to Rule 69(a)(2) of the Federal Rules of Civil Procedure, a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in the[] rules or by the procedure of the state where the court is located." *NML Capital*, 134 S. Ct. at 2254.  Neither Rule 69 nor the other provisions of the federal civil discovery rules it incorporates

impose the geographic or temporal limitations used by Sudan as a foundation of its objections to the propounded discovery. *See, e.g., Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.,* 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) (finding that "even if the discovery request is a 'fishing expedition' . . . this Court recognized long ago that 'a judgment creditor is entitled to fish for assets of the judgment debtor.").

### 4. Plaintiffs' Requests are Proportional to the Needs of the Case

Sudan asserts that Plaintiffs' discovery requests are not proportional to the needs of the case. Exhibits D & E. As an initial matter, it is important to clarify that Sudan is not truly objecting on proportionality grounds. Sudan simply seeks to further delay and disrupt Plaintiffs' efforts to execute their lawful judgment. Sudan demonstrates this by repeatedly declining to concede that *any* document or piece of information is within the appropriate scope of permissible discovery, despite repeated requests. In any event, as set forth below, all of the requests are entirely proportional to the needs of the Embassy Bombing victims to execute a multi-billion dollar judgment against Sudan. Rule 26(b)(1) provides the following guidance and direction in determining the proportionality of a discovery request:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). These factors all favor full and immediate production of the requested information by Sudan.

First, the "importance of the issues at stake" in this case and "the amount in controversy" are extraordinary. Sudan assisted al Qaeda in perpetrating one of the largest terrorist attacks in

history against U.S. Government employees. The Plaintiffs in this litigation suffered approximately $4.3 billion in compensatory damages alone—a damages amount that was determined by this Court after careful consideration of the evidence according to the rule of law.

Second, Sudan is the only party in the world with "access to relevant information" regarding the extent of its assets in the United States and abroad.  Neither OFAC, which only maintains records regarding Sudanese assets inside the United States, nor BNP Paribas, which only knows of the portions of the particular criminal conspiracy in which it played a role, can produce the entire set of information Plaintiffs seek.  Plaintiffs have no access to this information and no alternative way to obtain the information.  In light of Sudan's longstanding efforts to conceal its assets, as exposed by BNP's criminal plea in 2015, even U.S. Government agencies such as the Departments of Justice and OFAC are unlikely to have this information and there is no reason to think that BNP Paribas was the only criminal facilitator of Sudan's money laundering schemes.

Third, the "importance of the discovery in resolving the issues"  critical. Plaintiffs have no way of enforcing their judgments until they identify, locate, and understand the extent and nature of Sudan's concealed and unconcealed assets. The *Cont'l Transfert Technique, Ltd.*, court found this circumstance to be very important in ruling the defendant should respond to judgment-enforcement discovery requests in that FSIA case.  308 F.R.D. at 38 ("It does not appear that Nigeria has paid anything towards satisfying the judgment, and without the discovery Continental seeks, there is little likelihood that Continental's efforts at recovery will be successful.").   The longer Sudan can delay providing this information, the longer these victims are forced to suffer and the greater ability Sudan has to further insulate its assets from recovery.

Finally, the "likely benefit" of this information is incalculable to the victims and severely outweighs any "burden or expense" of Sudan. Plaintiffs have had to expend substantial time and resources in obtaining their judgments against Sudan. Sudan has engaged in a decades-long criminal conspiracy and has knowingly and affirmatively decided not to defend its misconduct on the merits.  Nor has Sudan ever demonstrated any intention to pay these judgments. The only evidence of Sudan's willingness to litigate in good faith, its prior participation in the related case *Owens v. Republic of Sudan*, No. 01-2244 (JDB) which ended after decisions were entered against it, demonstrate its lack of respect for this Court. At every step of the way, Sudan has been evasive or sought to delay the proceedings, including to this very moment.  The time for delay has come to an end.

### D. Plaintiffs Are Entitled To Take The Deposition of a Representative of Sudan Most Knowledgeable About the Issues Identified In Their Rule 30(b)(6) Notice of Deposition.

Sudan also opposes any Plaintiffs' requests to produce a Section 30(b)(6) witness on similar grounds as its opposition to Plaintiffs' document requests and because it asserts that a sovereign is not a proper subject of Rule 30(b)(6) deposition.  Exhibit E.  However,  a foreign sovereign is the proper subject of a Rule 30(b)(6) deposition. *Cont'l Transfer Technique, Ltd.*, 308 F.R.D. at 33; *McKesson Corp. v. Islamic Republic of* Iran, 184 F.R.D. 70, 79 (D.D.C. 1999). In *Cont'l Transfer Technique, Ltd. v. Federal Government of Nigeria,*  the Court denied a foreign sovereign's motion to quash a Rule 30(b)(6) notice issued in aid of execution of a judgment. 308 F.R.D. 27 (D.D.C. 2015).  The court noted that:

> [T]he very purpose of Continental's Rule 30(b)(6) notice is to determine which of Nigeria's assets in the United States may be attachable because they are used by Nigeria for commercial activity rather than for a sovereign function. Nigeria does not address how Continental could make that determination at this point without the aid of discovery.

*Id*. at 33. The Court further denied the sovereign's argument that the 30(b)(6) deposition was improper as it was overbroad, unduly burdensome and expensive. *Id*. at 37-38.  Inherent in the Court's decision was the finding that Nigeria had not paid anything toward satisfying the judgment, and "without the discovery Continental seeks, there is little likelihood that Continental's efforts at recovery will be successful." *Id*. at 38.

This reasoning of the Court's decision in *Continental Transfer* should be applied in this case.  In fact, many of the areas of inquiry included in Plaintiffs Notice of Deposition are *identical* to those permitted by the Court in *Continental Transfer*. *See* (Exhibit K: Notice of Deposition, *Continental Transfert v. The Federal Government of Nigeria, et al*., Case No. 08-2026).  The areas of inquiry outlined in Plaintiffs' Notice would not be "categorically immune from execution under the FSIA." *Continental Transfer*, 308 F.R.D. at 37.

## IV.    CONCLUSION

For the aforementioned reasons, the Court should compel Sudan to provide documents responsive to the Plaintiffs' Request for Production of Documents and produce a witness, or witnesses, to testify to the issues outlined in Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6).

Respectfully submitted,

**/s/ Michael J. Miller**
Michael J. Miller, Esq.  (D.C. Bar # 397689)
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055

**/s/ Steven R. Perles**
Steven R. Perles (No. 326975)
Edward B. MacAllister (No. 494558)
Joshua K. Perles
Perles Law Firm, PC
1050 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20036
Tel: 202-955-9055

Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April 2016, a true and correct copy of the foregoing

Plaintiffs' Motion to Compel  was filed electronically with the Clerk of Court using the CM/ECF

system which will send a notification of such filing on all counsel of record.


*/s/ Michael J. Miller*
Michael J. Miller