

# The Miller Firm LLC
### T R I A L   L A W Y E R S

Michael J. Miller – VA, MD, DC, PA
Nancy Guy Miller  – MS
Bruce D. Burtoff, M.D., J.D. – VA, DC, FL, MS
David J. Dickens – VA, DC
Jeffrey Travers – VA
Tayjes Shah – PA, NJ
Timothy Litzenburg – VA
Jonathan Goslow - IL
Curtis G. Hoke – CA

**The Sherman Building
108 Railroad Avenue
Orange, Virginia 22960**

Nancy Leftwich, R.N.
Elisa A Dickson, RN, BSN, MS
Website: Millerfirmllc.com
Telephone:  (540) 672-4224
(866) 529-3323
Facsimile:  (540) 672-3055

November 19, 2015

<u>**VIA FACSIMILE**</u>

Christopher M. Curran, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Re:   *Amduso, et al. v. Republic of Sudan, et al.*, No. 08-1361 (JDB)

Dear Christopher,

On November 4, 2015, we received Sudan's Objections to Plaintiffs' Request for Production of Documents and Electronically Stored Information. Sudan has refused to produce any documents in response to Plaintiffs' requests. The purpose of this letter is to confer with you in good faith to reach an agreement concerning Sudan's production of relevant documents without necessitating the intervention of the Court.

Plaintiffs have an absolute right to obtain discovery from Sudan pursuant to Rule 69 of the Federal Rules of Civil Procedure. The scope of post-judgment discovery is broad.  As federal courts have routinely found "[T]he judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *1ST Technology,* 2007 WL 5596692 at *4 (D. Nev. Nov. 13, 2007) (quoting *British International II,* 200 F.R.D. at 588). Plaintiffs are entitled to a "thorough examination of a judgment debtor with respect to its assets, including discovery [of] the identity and location of any of the judgment debtor's assets, wherever located." *British Int'l Ins. Co. v. Seguros La Republica, S.A.,* 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000). The filing of an appeal does not stay execution of the judgment and is not a legitimate basis for objecting to Plaintiffs' discovery requests.

Please let me know your availability on Friday, November 20, 2015 or Monday, November 23, 2015 for a phone call to meet and confer over Sudan's Objections. If Sudan intends to stand by its objections and refuses to produce any responsive documents, please let me know so that we can immediately file a Motion to Compel with the Court.

Very truly yours,

THE MILLER FIRM, LLC

Michael J. Miller

November 19, 2015
Page 2

cc:     Steven R. Perles
        Edward B. MacAllister
        Gavriel Mairone
        William Wheeler
        John Arthur Eaves, Sr.
        Allen L. Rothenberg

WHITE & CASE

November 19, 2015

VIA EMAIL

Michael J. Miller
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
Fax: (540) 672-3055

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
**T** +1 202 626 3600

whitecase.com

Re:    *Amduso, et al. v. Republic of Sudan, et al.*, Civil Action No. 08-1361
       (D.D.C.)

Dear Michael:

This responds to your letter of even date addressed to my colleague
Christopher Curran. As indicated in Sudan's Objections to Plaintiffs' Request
for Production of Documents and Electronically Stored Information, we are
amenable to a meet-and-confer with you on Sudan's Objections. We are
available for a teleconference on Monday any time from 2pm onwards. Please
let us know what time you prefer. We would be happy to circulate dial-in
information via email. If agreeable, we would like to communicate on this
matter further via email rather than facsimile to help ensure that all
communications are properly and timely received.

We note that your letter does not specifically address Sudan's Objections to
Plaintiffs' Requests, but mentions generally your view of the scope of
permissible discovery under Rule 69 of the Federal Rules of Civil Procedure
and the effect of Sudan's appeal on the timing of such discovery. In order to
have a meaningful meet-and-confer on Monday, it would be helpful to
understand Plaintiffs' position as to Sudan's specific objections in advance of
our discussion.

Sincerely,

**Claire A. DeLelle**
Christopher M. Curran
Nicole Erb

WHITE & CASE

November 19, 2015

cc:     Steven R. Perles
        Edward B. MacAllister
        Gavriel Mairone
        William Wheeler
        John Arthur Eaves, Sr.
        Allen L. Rothenberg



# The Miller Firm LLC
### T R I A L   L A W Y E R S

Michael J. Miller – VA, MD, DC, PA
Nancy Guy Miller  – MS
Bruce D. Burtoff, M.D., J.D. – VA, DC, FL, MS
David J. Dickens – VA, DC
Jeffrey Travers – VA
Tayjes Shah – PA, NJ
Timothy Litzenburg – VA
Jonathan Goslow - IL
Curtis G. Hoke – CA

**The Sherman Building**
**108 Railroad Avenue**
**Orange, Virginia 22960**

Nancy Leftwich, R.N.
Elisa A Dickson, RN, BSN, MS
Website: Millerfirmllc.com
Telephone:  (540) 672-4224
(866) 529-3323
Facsimile:  (540) 672-3055

November 24, 2015

<u>**VIA E-MAIL**</u>

Claire A. DeLelle
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

> **Re:** *Amduso, et al. v. Republic of Sudan, et al*., No. 08-1361 (JDB)

Dear Claire,

I am writing to follow-up on our meet-and-confer of November 23, 2015. Specifically, you requested additional written correspondence regarding Plaintiffs' position to certain general objections raised by Defendant. In an effort to resolve outstanding issues and obtain relevant discovery without the need to file a motion, Plaintiffs hereby provide the following:

## A.  Defendant's Objection that Sudan's Property is Immune from Attachment and Execution.

Sudan has objected to producing any discovery on the basis that its property and assets are immune from attachment and execution under the Foreign Sovereign Immunities Act (FSIA). See Def's General Objections No. 2, 5, 11, 12, 13.  Sudan's objections are improper as "[f]oreign sovereigns enjoy no such 'discovery-in-aid-of-execution' immunity under the FSIA." *Continental Transfert Technique Limited v. The Federal Government of Nigeria*, 308 F.R.D. 27, 34 (D.D.C. 2015). As the Court noted in *Continental Transfert*, "whatever execution immunity [defendant] may possess under the FSIA, it currently poses no bar to the discovery [plaintiff] seeks. *Id*; *EM Ltd. v. Republic of Argentina,* 695 F. 3d. 201, 209 (2d Cir. 2012)("whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery."); *Export-Import Bank of the Republic of China v. Grenada*, 768 F. 3d 75, 82 (2d Cir. 2014)(finding that the FSIA does not bar broad discovery in aid of executing a judgment against a sovereign).

The Supreme Court has found that there is no immunity that would "shield from discovery a foreign sovereign's extraterritorial assets."[1] *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2257 (2014)(finding that discovery related to a country's "worldwide assets generally" is proper to allow plaintiff to identify where the debtor may be holding property that *is* subject to execution).

---

[1] Def's General Objections No. 14, 15, 19

November 24, 2015
Page 2

**B. Defendant's Objection that Plaintiff's Requests are Improper Prior to Obtaining an Order Pursuant to 28 U.S.C. 1610(c).**

Sudan objects to Plaintiffs' Requests arguing that Plaintiffs may not begin attachment or execution efforts prior to obtaining an order under 28 U.S.C. 1610(c). Def's General Objections No. 6. While Section 1610(c) sets forth the procedure for *attaching and executing* upon sovereign property it does not require an order prior to obtaining relevant discovery as to the location of assets. The issuance of discovery for the purpose of identifying assets does not have any legal effect on Sudan's property. *EM Ltd v. Republic of Argentina*, 695 F. 3d 201, 208 (2d Cir. 2012); *Walters v. Industrial and Commercial Bank of China*, 651 F. 3d 280 (2d Cir. 2011)(finding that Rule 69 discovery is permitted for the purpose of identifying assets that may be subject to attachment and execution). Although a 1610(c) Order is required as prerequisite to execution on any property, Plaintiffs "need not satisfy the stringent requirements for attachment in order to simply receive information about [defendant's] assets. *EM Ltd*., 695 F. 3d at 209. *See also Continental Transfert*, 308 F.R.D. at 35 (finding that it would be unfair to impose on plaintiff the impossible burden of demonstrating what assets are subject to execution without first permitting discovery concerning those assets).

**C. Defendant's Objection on the Basis that there is a Pending Motion to Vacate and Appeal from Default Judgment.**

Sudan's argument that discovery for the purpose of identifying Sudan's assets is "premature" as a result of the pending motion to vacate and appeal has already been rejected by Judge Bates in this litigation. In issuing a 1610(c) Order against Sudan, Judge Bates concluded that there is no "automatic stay of execution pending the resolution of postjudgment motions." *Owens v. Republic of Sudan*, 2015 WL 6530582 (D.D.C. Oct. 28, 2015)--- F. Supp. 3d --- (2015).   "[I]f Sudan would like a stay of execution pending the resolution of its motions, it can move for such relief under Federal Rule of Civil Procedure 62(b)." *Id.* at *7.

**D. Sudan's Other Objections**

In a showing of good faith, Plaintiffs have addressed each of Sudan's primary objections, in detail, both through correspondence and on our initial meet-and-confer on November 23, 2015. The cases cited above permit discovery of a foreign sovereign's assets in order to begin any efforts to execute and attach specific property. Plaintiffs have thoroughly addressed Sudan's specific objections including the basis for seeking discovery relating to BNP as far back as 1997.

Please let me know whether Sudan will agree to produce documents in response to Plaintiffs' Requests by Friday, November 27, 2015. If Sudan refuses to produce relevant discovery in light of its general and specific objections, Plaintiffs will have no choice to file a Motion to Compel before the Court.

November 24, 2015
Page 3

Very truly yours,

THE MILLER FIRM, LLC

David J. Dickens

cc:    Christopher M. Curran
       Nicole Erb
       Michael J. Miller
       Steven R. Perles
       Edward B. MacAllister
       Gavriel Mairone
       William Wheeler
       John Arthur Eaves, Sr.
       Allen L. Rothenberg

**David Dickens**

---

| | |
|---|---|
| **From:** | David Dickens |
| **Sent:** | Monday, November 30, 2015 9:30 AM |
| **To:** | 'DeLelle, Claire' |
| **Cc:** | Curran, Christopher; Erb, Nicole; Michael Miller; 'Steve  Perles (sperles@perleslaw.com)'; 'Ed  Macallister'; 'mmlaw (ctlaw@mm-law.com)'; ''wwheeler@wheelerfrankslaw.com (wwheeler@wheelerfrankslaw.com)'; 'john@eaveslaw.com'; 'allen@injurylawyer.com' |
| **Subject:** | RE: Amduso v. Republic of Sudan |
| | |
| **SentFromSession:** | TMF-TERMINAL.ddickens.11/30/2015 8:13:52 AM |

Claire,

There was nothing in my November 24th letter that reneged on our meet-and-confer agreement. It appeared clear from our meet-and-confer, and in review of the pleadings filed in the Owens matter on the Rule 1610(c) Order, that Sudan has no intention of producing any documents without a Court Order. If that assessment is correct, further efforts to meet-and-confer serve no purpose other than to delay the inevitable motion practice before the Court. The purpose of my letter was not to "jam" you with a response to our letter after Thanksgiving but, rather, to determine whether Sudan intends to produce *any* documents in response to Plaintiffs' requests.

I look forward to receiving your letter by the close of business tomorrow. I anticipate that your correspondence will address: (1) which requests, if any, Sudan will be producing documents; and (2) the general and specific objections that Defendant continues to assert in opposition to Plaintiffs' requests.

Regards,

David J. Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: 540-672-4224

---

**From:** DeLelle, Claire [mailto:claire.delelle@whitecase.com]
**Sent:** Wednesday, November 25, 2015 5:57 PM
**To:** David Dickens
**Cc:** Curran, Christopher; Erb, Nicole; Michael Miller; 'Steve Perles (sperles@perleslaw.com)'; 'Ed Macallister'; 'mmlaw (ctlaw@mm-law.com)'; ''wwheeler@wheelerfrankslaw.com (wwheeler@wheelerfrankslaw.com)'; 'john@eaveslaw.com'; 'allen@injurylawyer.com'
**Subject:** RE: Amduso v. Republic of Sudan

David:

I am in receipt of your letter of November 24.  We agreed during our meet-and-confer conference call held on November 23, 2015, that you would provide Plaintiffs' position as to the balance of Sudan's objections so that we could sufficiently evaluate Plaintiffs' position given that your prior correspondence addressed only two objections and asserted a blanket right to post-judgment discovery of any kind.  We also agreed that once you had sent a letter that included responses to Sudan's specific objections, including identification of the authorities

that you mentioned on our call, we would confer again as necessary within 7 to 14 days of that correspondence. In view of our agreed-upon course of action, we were thus surprised to find your letter of yesterday demanding that Sudan inform you on Friday, November 27, whether it intended to produce documents. We do not know what has transpired on your side since our meet-and-confer, but whatever that may have been, it is no basis to renege on our meet-and-confer agreement and for you to seemingly attempt to jam us by demanding a response to your letter on the day after Thanksgiving. We will carefully review the positions stated in your letters and the authorities cited and respond by close of business on Tuesday, December 1.

Regards,
Claire

**Claire A. DeLelle**  |  Counsel
**T** +1 2026266485   **M** +1 2027440518   **E** claire.delelle@whitecase.com

White & Case LLP  |  701 Thirteenth Street, NW  |  Washington, DC 20005-3807

---

**From:** David Dickens [mailto:DDickens@millerfirmllc.com]
**Sent:** Tuesday, November 24, 2015 7:58 AM
**To:** DeLelle, Claire
**Cc:** Curran, Christopher; Erb, Nicole; Michael Miller; 'Steve Perles (sperles@perleslaw.com)'; 'Ed Macallister'; 'mmlaw (ctlaw@mm-law.com)'; ''wwheeler@wheelerfrankslaw.com' (wwheeler@wheelerfrankslaw.com)'; 'john@eaveslaw.com'; 'allen@injurylawyer.com'
**Subject:** Amduso v. Republic of Sudan

Claire,

Please see the attached correspondence in follow-up to our meet-and-confer.

Regards,

David J. Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: 540-672-4224


================================================================================

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please contact sender or call (202) 626-3600. Thank you.

================================================================================

**Total Control Panel**                                                                                      Login

To: ddickens@millerfirmllc.com          Remove this sender from my allow list
From: claire.delelle@whitecase.com

*You received this message because the sender is on your allow list.*

WHITE & CASE

December 1, 2015

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

<u>VIA EMAIL</u>

David J. Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960

Re:     *Amduso, et al. v. Republic of Sudan, et al.*, Civil Action No. 08-1361
        (D.D.C.)

Dear David:

In keeping with my email to you of November 25, this responds to your letter
of November 24 and email of November 30.  Your recent correspondence still
fails to address numerous objections made by Sudan as discussed in our meet-
and-confer on November 23.  Rather, your letter asserts, in cursory fashion,
only that (i) a § 1610(c) order is not required in order to commence post-
judgment discovery, (ii) there is no blanket immunity from post-judgment
discovery (Sudan has not in any event argued a blanket immunity from post-
judgment discovery; rather, Sudan objects on the basis that it is immune from
the jurisdiction of this Court for any purpose for the reasons set forth in its
motion to vacate), and (iii) Sudan's pending motion to vacate and the
indefinite stay of Sudan's appeal procured by Plaintiffs do not bar issuance of
a § 1610(c) order.

It would appear therefore that Plaintiffs have no real intent of resolving these
points with Sudan, but would prefer to task the Court with resolving numerous
Objections to Plaintiffs' Document Requests, which Plaintiffs have ignored
entirely.  Our meet-and-confer agreement was that your correspondence would
address the balance of Sudan's Objections not dealt with in your November 23
and 24 correspondence (and they were numerous) and, specifically, we
requested Plaintiffs' position on Sudan's Objections based upon § 1610(f)
(*see, e.g.*, General Objection No. 18, applicable to all Requests), particularly
in light of your statements that Plaintiffs had in fact subpoenaed OFAC for
details of property in the United States blocked under the Sudanese Sanctions
Regulations and had received a response.

Moreover, we reiterate Sudan's Objection that Plaintiffs' Document Requests
are facially invalid, having not been signed by an attorney of record in this
case who was also in good standing at the time the discovery was issued.  You

WHITE & CASE

December 1, 2015

stated that if we decided to rely on this "non-substantive issue," then you understood we had to do what was in our client's interests.  Sudan's Objection is well founded upon the Federal Rules of Civil Procedure and the Local Civil Rules, and it is not raised at the expense of substance.  If Sudan is to be required to respond to burdensome and improper discovery despite its other Objections, it should only be required to do so in respect of discovery that is, at a minimum, issued in compliance with the applicable rules.  Plaintiffs have had ample time to reissue the document requests, but have thus far chosen not to do so.  We intend to bring this issue to the Court's attention in connection with any motion to compel.

Under Sections A through C below, we provide our response to the select Objections your November 24 letter addresses.  In Section D, without prejudice to the remaining Objections that Plaintiffs have failed to address, we identify a number of Objections we specifically discussed during our meet-and-confer teleconference to which Plaintiffs still have not responded.

### A.  Plaintiffs Have No Legal Basis to Seek Discovery of Property Outside the United States in this Case.

Sudan has objected to any post-judgment discovery on the grounds that its property is immune from attachment and execution for the reasons set forth in its motion to vacate.  The first paragraph of Section A of Plaintiffs' letter appears to confuse that issue with an objection that foreign states are generally immune from any type of post-judgment discovery based on a valid judgment.

The remainder of Section A of your letter appears to assert a position that Plaintiffs are entitled to discovery of Sudanese assets abroad based on *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014).  But the holding in *NML Capital* is not accurately stated.  *NML Capital* permits discovery of third-party banks that may hold assets of a foreign sovereign abroad so long as the discovery is relevant to identifying assets that are subject to attachment and execution, that is, assets located in the United States.  *Id.* at 2258.  *NML Capital* does not in any event apply in this case involving a foreign sovereign whose assets located in the United States are already blocked pursuant to U.S. economic sanctions administered and enforced by OFAC.

Plaintiffs make no effort to explain how the discovery of information from 1997 to 2001 or the present, primarily concerning or relating to BNP Paribas, is relevant to the identification of potentially attachable assets in the United States.  Your letter of November 23 appeared to attempt to justify the Requests concerning these time-periods and subject matter by asserting that Sudan was allegedly involved in a "fraudulent conveyance" of its assets in 1997.  But Plaintiffs did not obtain their default judgment against Sudan until July 25, 2014.  None of your letters or our meet-and-confer discussion elucidates how Plaintiffs might have had any attachable interest in assets that were allegedly removed from or passed through the United States before the terrorist bombing at issue in 1998, Plaintiffs' filing of the

2

December 1, 2015

complaint in this action in August 2008, or the issuance of the default judgment in July 2014. As the Supreme Court stated in *NML Capital*, "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Id.* at 2257.

Moreover, as Sudan's Objections state and as discussed in our meet-and-confer teleconference, special statutory provisions are at Plaintiffs' disposal to aid their identification of potentially attachable assets in the United States of a foreign sovereign subject to U.S. economic sanctions (blocking and prohibiting the transfer of any and all of that foreign sovereign's assets located in the United States, *see* 31 C.F.R. § 538.201). There is therefore no justification for Plaintiffs' convoluted and burdensome Requests that seek — on their face — information concerning purported historical assets of Sudan located abroad.

Section 1610(f)(2) of the FSIA provides Plaintiffs a statutory tool to aid their identification of attachable assets in the United States by requiring that the United States give their full cooperation to aid that process. Under the Sudanese Sanctions Regulations, "U.S. persons" (including individuals or entities in the United States and U.S. citizens and green-card holders, wherever located) are required to provide reports to OFAC detailing the nature of the assets they have blocked. *See, e.g.*, 31 C.F.R. §§ 501.602, 501.603, 538.601. This information should be readily available to Plaintiffs and should identify any and all assets in which Sudan may have an interest in the United States.

During our meet-and-confer teleconference, you stated that the *Amduso* plaintiffs had in fact subpoenaed OFAC and received information in response. Any discovery directed at Sudan is necessarily redundant, overly broad and unduly burdensome. Separately, we have been unable to locate in the docket any protective order governing any information that the *Amduso* plaintiffs obtained from OFAC pursuant to a subpoena. We would therefore request pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure, barring any protective order or other legal impediment of which we are unaware, that you provide us with a copy of the subpoena and any documents or information produced by OFAC in response as soon as possible.

**B. Plaintiffs May Not Engage in Discovery Prior to Entry of an Order Pursuant to § 1610(c).**

During our meet-and-confer teleconference you stated that authorities supported your position that post-judgment discovery may proceed despite the lack of a § 1610(c) order in this case. None of the authorities in your letter support that position. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) and *Continental Transfert Technique Limited v. Federal Government of Nigeria*, 308 F.R.D. 27 (D.D.C. 2015), do not mention, much less analyze, or render any conclusions on the interplay between post-judgment discovery and § 1610(c). And *Walters v. Industrial & Commercial Bank of China Ltd.*, 651 F.3d 280 (2d Cir. 2011), has nothing to do with whether a § 1610(c) order must issue before post-judgment discovery can begin.

December 1, 2015

On the other hand, numerous authorities, from the D.C. federal court and others, support Sudan's position that a § 1610(c) order is required in order for a judgment creditor to begin the enforcement process, which necessarily includes post-judgment discovery.  Mem. Op. at 15, *Owens v. Republic of Sudan*, C.A. No. 01-2244 (D.D.C. Oct. 28, 2015), Dkt. No. 388; *Harrison v. Sudan*, No. 13-mc-80116, 2013 WL 3815660, at *5 (N.D. Cal. July 22, 2013); *Bayer & Willis Inc. v. Republic of Gambia*, 283 F. Supp. 2d 1, 3 (D.D.C. 2003) (quoting *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001)); *see also* Tr. of Telephone Conference at 6, *Micula v. Government of Romania*, C.A. No. 15-0107 (S.D.N.Y. Sept. 3, 2015), Dkt. No. 83.

### C.  Plaintiffs May Not Proceed with Discovery after Procuring an Indefinite Stay of the Resolution of Sudan's Appellate Rights.

Sudan has objected to Plaintiffs' Document Requests not only on the basis that Plaintiffs do not have § 1610(c) authority to proceed with such discovery but on the basis that Plaintiffs would not in any event be entitled to the issuance of a § 1610(c) order for several reasons, including that such an order (i) would be unreasonable in view of the pending motion to vacate the default judgment and the indefinite stay of Sudan's appeal procured by Plaintiffs, (ii) cannot be issued until there is a final, non-appealable judgment, and (iii) cannot be issued because Plaintiffs have not, as conceded by you during our meet-and-confer teleconference, served the default judgment on all Defendants, namely the Iranian Defendants, *see* Order at 5-6, *Owens v. Republic of Sudan*, C.A. No. 01-2244 (D.D.C. Apr. 1, 2015), Dkt. No. 359.

Your November 24 letter addresses only the first Objection and cites as support the Court's October 28 Opinion in the *Owens* case.  Contrary to your assertion, however, the Court's Opinion did not address the propriety of issuance of a § 1610(c) order in view of the indefinite stay of Sudan's appeal.  The Opinion addressed only the propriety of a § 1610(c) order in view of a pending motion to vacate.  Sudan is currently challenging the Court's Opinion in that respect through its opposition to the *Mwila* plaintiffs' motion for a § 1610(c) order filed on November 27.

### D.  Plaintiffs Have Made No Effort to Address Sudan's Remaining Objections.

As stated above, we agreed during our meet-and-confer teleconference that you would provide Plaintiffs' position as to the balance of Sudan's Objections and we specifically highlighted some of those Objections by way of example only, as we do again here.

During our meet-and-confer teleconference, we highlighted the improper and overly broad definition of "Sudan" contained in Definition A that affects almost all of Plaintiffs' Requests (so far as we can tell, despite the vagueness and ambiguity present in many of the Requests).  Definition A, for instance, improperly conflates Sudan with agencies, instrumentalities and other persons, and would necessarily

WHITE & CASE

December 1, 2015

encompass information related to the Central Bank of Sudan or the Bank of Sudan, the assets of which are "immune from attachment and from execution" pursuant to § 1611(b)(1) of the FSIA.

We believe it incumbent on the parties in discharge of their meet-and-confer obligations to determine whether there is common ground among them upon any of Sudan Objections, notwithstanding Sudan's threshold Objections.   Plaintiffs have made no serious effort to discharge that obligation with the scattershot approach to responding to Sudan's Objections to Plaintiffs' Document Requests.   Without understanding Plaintiffs' position as to each of Sudan's well-founded Objections, Sudan is not in a position to properly assess — separate and apart from its threshold Objections for this purpose only — whether it could produce responsive, non-privileged documents, to the extent any exist, where Plaintiffs might agree to narrow their requests to alleviate any of Sudan's Objections.

For all the reasons stated above, we view any motion to compel as premature and not well founded upon the meet-and-confer record thus far.   Sudan therefore stands by its Objections to Plaintiffs' Document Requests in their entirety.

Sincerely,

Claire A. DeLelle

cc:     Steven R. Perles
        Edward B. MacAllister
        Gavriel Mairone
        William Wheeler
        John Arthur Eaves, Sr.
        Allen L. Rothenberg
        Christopher M. Curran
        Nicole Erb



# The Miller Firm LLC
## TRIAL LAWYERS

Michael J. Miller – VA, MD, DC, PA
Nancy Guy Miller – MS
Bruce D. Burtoff, M.D., J.D. – VA, DC, FL, MS
David J. Dickens – VA, DC
Jeffrey Travers – VA
Tayjes Shah – PA, NJ
Timothy Litzenburg – VA
Curtis G. Hoke – CA
Jeff T. Seldomridge - VA

**The Sherman Building**
**108 Railroad Avenue**
**Orange, Virginia 22960**

Nancy Leftwich, R.N.
Elisa A Dickson, RN, BSN, MS
Website: Millerfirmllc.com
Telephone:  (540) 672-4224
(866) 529-3323
Facsimile:  (540) 672-3055

December 29, 2015

**VIA E-MAIL AND UNITED STATES MAIL**

Claire A. DeLelle
White & Case, LLP
701 13th Street, NW
Washington, DC 20005

   Re: *Amduso v. Republic of Sudan, et al.*, No. 08-cv-1361 (D.D.C.)

Dear Claire:

   We are writing in response to your recent letter dated December 1, 2015, relating to the Plaintiffs', the 1998 East African Embassy Bombing Victims' (the "Embassy Bombing Victims[']"), outstanding Rule 69 post-judgment discovery request.  Over the past month, the Embassy Bombing Victims repeatedly have attempted to meet-and-confer in good faith in order to resolve or at least narrow the issues before seeking any necessary judicial assistance in holding Sudan to the requirements of Rule 69 discovery.  Nonetheless, Sudan has been unwilling to provide **any** discovery by a date certain.

   In recent correspondence, we included a straight-forward inquiry: Does Sudan intend to produce **any** documents or information responsive to the Rule 69 requests from my clients, the 1998 East African Embassy Bombing Victims ("Embassy Bombing Victims")?  Sudan has still not answered that simple and foundational question.  Despite your lengthy five-page December 1 letter to us, you still have not answered that simple question.  If Sudan is willing to produce **anything** in response to our Rule 69 discovery request and informs us which items or information will be provided and when, then the meet-and-confer process could move forward fairly and efficiently.  Conversely, if Sudan continues in its refusal to answer our simple and straight-forward question regarding Sudan's willingness to provide any Rule 69 discovery voluntarily, then we will be required to seek judicial assistance.

   We again request Sudan to inform us whether it will provide **any** responsive information or discovery in response to our Rule 69 post-judgment discovery request.  Please inform me of Sudan's decision by **January 11, 2016**.  In the meanwhile, we wanted to respond to Sudan's principal objections which you raised to assist in narrowing our disagreement about Sudan's obligations to abide by the requirements of Rule 69 and the rule of law in connection with this judicial proceeding.

\*\*\*

December 29, 2015
Page 2

A.      **The Supreme Court's Decision in <u>NML Capital</u> Squarely Supports The Enforceability of the Embassy Bombing Victims' Rules 69 Discovery Requests**

Although it is true that the Supreme Court's recent decision in <u>Republic of Argentina v. NML Capital, Ltd.</u>, 134 S. Ct. 2250 (2014) (hereinafter "<u>NML Capital</u>"), involved post-judgment discovery requests directed at third party banks rather than the foreign sovereign itself, the decision still resolves virtually all of the objections raised by Sudan in this matter.

With the exception of the party to whom the subpoenas were addressed, <u>NML Capital</u> is virtually identical to the instant case.  In <u>NML Capital</u>, the judgment creditors obtained federal judgments against Argentina arising from various defaults on its debt.  The Court noted that "'[i]n order to locate Argentina's assets and accounts, **learn how Argentina moves its assets through New York and around the world**, and accurately identify the places and times when those assets might be subject to attachment and execution **(whether under [United States law] or the law of foreign jurisdictions**),'" the judgment creditors served subpoenas on two non-party banks.  <u>NML Capital</u>, 134 S. Ct. at 2253 (emphasis added).  Argentina was a party to the motion to quash the subpoenas in the district court and on appeal, and Argentina filed the motion for a writ of certiorari seeking to defeat the subpoenas based on its own sovereign immunity.  "Argentina's petition for writ of certiorari asked [the Court] to decide only whether that [Foreign Sovereign Immunities] Act ] 'imposes [a] limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world.'"  <u>NML Capital</u>, 134 S. Ct. at 2255.  The Supreme Court answered clearly and unequivocally that it does not.  <u>Id</u>. at 2258.

Nevertheless, you stated in your December 1 letter that "the holding in NML Capital is not accurately stated [by the Embassy Bombing Victims]. NML Capital permits discovery of third-party banks that may hold assets of a foreign sovereign abroad so long as the discovery is relevant to identifying assets that are subject to attachment and execution, that is, assets located in the United States."  In support of this proposition, you cite <u>NML Capital</u> at page 2258.  Notably, your letter does not quote from the decision.  In any event, a quotation is unnecessary because your reading of the holding is incorrect.  The Supreme Court said no such thing.

Contrary to your summary of the holding, the Supreme Court adopted the exact position that the Embassy Bombing Victims have taken in this case—that they are entitled to discovery relating to Sudan's assets regardless of whether or not Sudan believes those assets will ultimately be subject to execution.  Below is the relevant passage from the holding of the <u>NML Capital</u> decision:

> Argentina maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property.  But the reason for these subpoenas is that **NML does not yet know what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law**. If, bizarrely, NML's subpoenas had sought only "information that could not lead to executable assets in the United States or abroad," then Argentina likely would be correct to say

2

December 29, 2015
Page 3

that the subpoenas were unenforceable—not because information about non-executable assets enjoys a penumbral "discovery immunity" under the Act, but because information that could not possibly lead to executable assets is simply not "relevant" to execution in the first place . . . But of course that is not what the subpoenas seek. They ask for information about Argentina's worldwide assets generally, so that NML can identify **where** Argentina may be holding property that is subject to execution. **To be sure, that request is bound to turn up information about property that Argentina regards as immune. But NML may think the same property not immune. In which case, Argentina's self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter**.

NML Capital, 134 S. Ct. at 2257-2258 (emphasis added).

Like the judgment creditors in NML Capital, the Embassy Bombing Victims assert that every one of their discovery requests aim to and could possibly identify executable assets.

Nevertheless, despite this clear language, Sudan seems to suggest there is some general immunity to post-judgment discovery contained in the FSIA. The Court was actually quite explicit that "any sort of immunity defense made by a foreign sovereign in an American court must stand on the [Foreign Sovereign Immunity] Act's text. Or it must fall." Id. And the FSIA provided only two types of immunity (1) immunity against jurisdiction subject to certain exceptions; and (2) qualified immunity from execution on certain property in the United States. Id. at 2256. "There is no third provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." Id. Thus, Sudan's objections must fail on this basis alone.

Moreover, your letter appear to suggest that even if there is a right to discovery, the Embassy Bombing Victims must make some type of *prima facie* showing that an asset is executable before they are entitled to discovery. This is plainly incorrect and was also rejected by the Supreme Court. Indeed, in Footnote 4 of NML Capital the Court made this point explicit:

The dissent apparently agrees that the Act has nothing to say about the scope of postjudgment discovery of a foreign sovereign's extraterritorial assets. It also apparently agrees that the rules limit discovery to matters relevant to execution. Our agreement ends there. The dissent goes on to assert that, unless a judgment creditor proves up front that all of the information it seeks is relevant to execution under the laws of all foreign jurisdictions, discovery of information concerning extraterritorial assets is limited to that which the Act makes relevant to execution in the United States. Post, at 2259 (opinion of GINSBURG, J.). **We can find no basis in the Act or the rules for that position**.

NML Capital, 134 S.Ct. at 2257-2258 (emphasis added).

3

December 29, 2015
Page 4

Similarly, in this case it is impossible for the Embassy Bombing Victims to identify which assets of Sudan are executable until it knows which assets Sudan has.  The victims are legally entitled to that opportunity.

**B.     The Embassy Bombing Victims Are Entitled to Discovery Throughout the Relevant Period**

In your December 1 letter and objections, you take issue with the Embassy Bombing Victims' request for discovery prior to July 25, 2014.  The date by which Plaintiffs obtained their final judgment, however, does not define the scope of permissible discovery.

In connection with its guilty plea in United States v. BNP Paribas, No. 14-CR-00460 (LGS) (S.D.N.Y. 2014), BNP Paribas and the U.S. Government identified Sudan, its instrumentalities, and its Central Bank as co-conspirators in a wide-ranging criminal conspiracy to violate U.S. sanctions. Of note, the Statement of Facts in support of BNP Paribas' guilty plea states that in November 1997, "shortly after imposition of U.S. sanctions against Sudan," BNP Paribas stepped in and came to the assistance of the Government of Sudan to "become the sole correspondent bank in Europe" for the Sudanese Central Bank and "all major commercial banks located in Sudan."[1]  Deposits by the Government of Sudan through its Central Bank at the Geneva branch of BNP Paribas alone came to "represent[] about 50% of Sudan's foreign currency assets."[2]  "In short, BNP [Paribas] became, in effect, the global private banker for Sudan – unlawfully opening the door to the U.S. financial markets" at the same time the United States and the United Nations Security Council sought to limit the Sudanese government's assistance for al-Qaeda and international terrorism.[3] Numerous public sources confirm the accuracy of the information relating to Sudan's culpability offered by the Government in support of BNP Paribas' guilty plea.

As the recitation in support of BNP Paribas' guilty plea makes clear, Sudan was actively moving and concealing funds and assets in the wake of U.S. economic sanctions—beginning in the period 1997 through 2001.  Sudan has been subject to comprehensive sanctions since November 1997 for its support of international terrorism, and in that time it has become adept at concealing its assets lest they be seized or blocked.  Because of the sanctions regimes imposed against it, common sense dictates that Sudan has assets all over the world, including the United States, which are now carefully concealed or held through affiliates or agents.   Thus, discovery for the period 1997-2001 is arguably the most critical to uncovering where Sudan's executable assets reside since that early time period is when the mechanisms of concealment were first implemented.

Sudan has no basis to restrict or limit discovery of his highly relevant information.  Indeed, the Court in NML Capital observed that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive."  NML Capital, 134 S. Ct. at 2254.  Indeed, pursuant to Rule 69(a)(2) of the Federal Rules of Civil Procedure, a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in the[] rules or by the procedure of the

---

[1] BNP Statement of Facts, at ¶ 19.
[2] Id.
[3] U.S. Government's Memorandum in Support of the Court's Acceptance of Plea Agreement, at 4.

December 29, 2015
Page 5

state where the court is located."  Neither Federal Rule of Civil Procedure 69 nor the other provisions of the federal civil discovery rules it incorporates impose either the geographic or temporal limitations that Sudan is positing.

As the Embassy Bombing Victims have previously detailed, the scope of post-judgment discovery under the Federal Rules is broad, permitting a judgment creditor to obtain discovery not only of the judgment debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets.  See, e.g., ClearOne Commc'ns, Inc. v. Chiang, 276 F.R.D. 402, 404 (D. Mass. 2011) (Under Rule 69, "[t]he presumption is in favor of 'full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment. . . .'") (quoting United States v. Neumann, 1999 WL 156151, at *1 (D. Mass. March 5, 1999); O.H.M Resource Recovery Corp. v. Industrial Fuels & Resources, Inc., 1991 WL 146234, at *2 (N.D. Ind. July 24, 2001) (The scope of discovery under Rule 69(a) "is broad, permitting a judgment creditor to obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets.").

In sum, judgment creditors are given a wide berth in discovery under Rule 69 to locate and identify the judgment debtor's assets.  See, e.g., Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc., 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) (finding that "even if the discovery request is a 'fishing expedition' . . . this Court recognized long ago that 'a judgment creditor is entitled to fish for assets of the judgment debtor.").  NML Capital made it clear that there is nothing in the FSIA that alters this basic presumption under Rule 69.  Thus, the Embassy Bombing Victims' requests are wholly appropriate.

C.     **The Embassy Bombing Victims Lack Reliable Information on What Assets Sudan Holds in the United States**

Your letter also states, without citing legal support, that "NML Capital does not in any event apply in this case involving a foreign sovereign whose assets located in the United States are already blocked pursuant to U.S. economic sanctions administered and enforced by OFAC."  This is plainly incorrect.

One of the few points of agreement I think we have is that Sudan's assets within the United States may be subject to execution under the Terrorism Risk Insurance Act.  As I clarified in recent correspondence, the Plaintiffs in the Amduso matter have not received any information from OFAC regarding Sudan's blocked assets.  Even if Plaintiffs were to receive such information, it would be exceedingly naïve to think that such blocking information would identify all assets in the United States in which Sudan has an interest.  See, e.g., In re 650 Fifth Avenue and Related Properties, 2013 WL 5178677, at *38 (S.D.N.Y. Sep. 16, 2013) (finding a decades long concealment and conspiracy by a New York company and others to possess and own property in the U.S. as a front for an Iranian bank and the Iranian government).

5

December 29, 2015
Page 6

As the Statement of Facts offered in support of BNP Paribas' guilty plea demonstrates, Sudan and its leading government-owned banks have been engaged in a long running criminal conspiracy to evade U.S. economic sanctions by hiding and concealing its assets and financial transactions within the U.S. In connection with that scheme, it has been shown beyond a reasonable doubt that Sudan has been actively concealing its interests in assets both within and without the United States. The Embassy Bombing Victims' discovery requests seek to shine light on these assets. Accordingly, there is absolutely no basis for denying the Embassy Bombing Victims' request for discovery relating to assets in the United States simply because some assets may be blocked by OFAC.

      **D.**           **Remaining Objections**

In light of the authorities cited above, including <u>NML Capital</u>, it is clear that as judgment creditors of Sudan, the Embassy Bombing Victims are entitled to broad post-judgment discovery in aid-of-execution of their lawful judgment. The Embassy Bombing Victims hold lawful judgments against Sudan. While it is true that Sudan may be now collaterally attacking these judgments, that does not stay or interrupt the post-judgment discovery process. If that were not the case, then post-judgment discovery would never be permissible since the possibility of a collateral attack would always exist. With the exception of Sudan's assertion that it should be so, there is absolutely no authority that requires the issuance of an order pursuant to Section 1610(c) of the FSIA before post-judgment discovery can commence. None of the cases cited in your letter address the issue of post-judgment discovery. As <u>NML Capital</u> and the other cases cited above make clear, enforcement of a judgment and discovery-in-aid of enforcement are two entirely different legal concepts.

For the same reason, Sudan's objection regarding the definition of Sudan is unavailing. Regardless of whether the assets of certain component of Sudan's Government would be immune from attachment under Section 1611 of the FSIA, the Embassy Bombing Victims are still entitled to discovery relating to those assets. It will be a factual determination (ultimately made by the Court) whether the Government of Sudan holds an interest in them and whether the victims can execute on that interest. That determination can never be made until discovery of those assets is complete.

\*\*\*

We very much look forward to your response. If Sudan is willing to provide *some* discovery in connection with Plaintiffs' requests, then it makes sense to continue a dialogue. If however, Sudan intends to persist in objecting to *any* discovery under *any* circumstances then Plaintiffs will be required to seek judicial enforcement of their Rule 69 post-judgment request for discovery.

December 29, 2015
Page 7

Very truly yours,

THE MILLER FIRM, LLC

Michael J. Miller

cc:     Christopher M. Curran
        Nicole Erb
        Michael J. Miller
        Steven R. Perles
        Edward B. MacAllister
        Gavriel Mairone
        William Wheeler
        John Arthur Eaves, Sr.
        Allen L. Rothenberg

7

**WHITE & CASE**

January 11, 2016

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
**T** +1 202 626 3600

whitecase.com

VIA EMAIL

Michael J. Miller
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960

Re:     *Amduso, et al. v. Republic of Sudan, et al.*, Civil Action No. 08-1361
        (D.D.C.)

Dear Michael:

This responds to your letter dated December 29, 2015.  Your letter states that
Plaintiffs have attempted to "meet-and-confer in good faith in order to resolve
or at least narrow the issues" before seeking the Court's assistance.  The
record does not support this statement.   Your letter, as with your prior
discovery letters, continues to address only Sudan's threshold Objections upon
which the parties fundamentally disagree.  As we have made clear, without
resolution of those threshold Objections, Sudan cannot agree to produce any
responsive documents to the extent they exist.  What is missing from the meet-
and-confer record, however, is any attempt on Plaintiffs' part to address in
good faith any of Sudan's other Objections to try to narrow the issues for the
Court.   The recent amendments to Rule 26 of the Federal Rules of Civil
Procedure call for a more cooperative process between the parties to limit
discovery to that which is "proportional to the needs of the case," and we
believe that requires a detailed and complete meet-and-confer process.

Although the Court may ultimately have to resolve Sudan's threshold
objections should Plaintiffs continue to pursue enforcement discovery, we
believe it incumbent on Plaintiffs in furtherance of their meet-and-confer
obligations to meaningfully respond to each and every Objection. Without
doing so, Plaintiffs would place before the Court a discovery dispute where no
attempt has been made by Plaintiffs to resolve or at least narrow many of
Sudan's Objections.

There are many remaining Objections on which we have not yet received
Plaintiffs' position and whether they are willing to amend their requests
accordingly.  Plaintiffs have failed, for example, to address Sudan's Objection
to Definition A, defining "Sudan," as used in Requests 1, 2, 3, 5, 6, 8, 11, 12,
13, 14, and 15 where that Definition improperly conflates agencies,

WHITE & CASE

January 11, 2016

instrumentalities, and other persons and entities with Sudan.  Plaintiffs have also failed to respond to Sudan's Objection to Definition G, defining "Co-conspirator," as used in Requests 8 and 15.  Sudan objected to that Definition because Sudan was not found by any court to have been a part of any conspiracy in respect of the 1998 embassy bombings and because Sudan denies that it provided any material support or resources to any entity or individual listed in that Definition.  In addition, Sudan objected to the Definition as overly broad because it attempts to extend the scope of the Requests to information outside the possession, custody, or control of Sudan.  You also have not addressed Sudan's Objection to Definition C, defining "unaffiliated Regional Banks," as used in Requests 2, 3, 10, and 11. Sudan objected to this Definition as vague and imprecise and to the extent that it suggests that Sudan was complicit in unlawful conduct or takes a position as to the BNP Paribas guilty plea.

Furthermore, we note again our position that our client not be required to act upon invalid Document Requests that were not signed by a member of the Court in good standing at the time of issuance.

As to the remainder of your letter, we respond as follows:

Sudan has objected to Plaintiffs' definition of the "Relevant Period," that is November 1, 1997 to the present, as well as the time period from 1997 to 2001.  Your letter (at 4), however, responds only to Sudan's objection to the latter 1997 to 2001 time period.  As an initial matter, we dispute any and all factual conclusions against Sudan that you purport to extrapolate from the BNP Paribas guilty plea, including your unfounded comment (at 6) that "it has been shown beyond a reasonable doubt that Sudan has been actively concealing its interests in assets both within and without the United States." Moreover, as we stated in our December 1 letter (at 2), Plaintiffs have no standing to assert an alleged "fraudulent conveyance" theory based on alleged BNP Paribas transactions from 1997 through 2001 in respect of a default judgment that was not obtained until July 25, 2014.  Your letter still does not explain how Plaintiffs have standing to seek information on an alleged fraudulent conveyance theory.

If Plaintiffs are instead asserting that there could allegedly be Sudanese assets held in the United States *today* through undisclosed affiliates or agents in connection with alleged BNP Paribas transactions from over fifteen years ago, then this assertion is based on pure speculation.  Nothing in the BNP Paribas guilty plea supports it.  Moreover, you have not explained how discovery of broad information between 1997 and 2001 could reveal potentially attachable assets in the United States *today*.  In addition, it is difficult to understand how the investigation against BNP Paribas would not have revealed Sudanese assets allegedly concealed through affiliates and agents.  If such information exists, Plaintiffs can obtain it through targeted requests directed at the United States.  As David informed us in his email of December 2, Plaintiffs have never subpoenaed any information from the U.S. Department of Treasury pursuant to § 1610(f)(2).

2

WHITE & CASE

January 11, 2016

Rule 69 requires that discovery be "tailored to the specific purpose of enabling a judgment creditor to discover assets upon which it can seek to execute a judgment and that the judgment debtor's discovery should not devolve into a fishing expedition for irrelevant or cumulative information which does not advance that purpose." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012).  Requiring an almost twenty-year "Relevant Period" is not "tailored" to identifying assets that Plaintiffs may attach or execute in satisfaction of their judgment.  The cases you cite do not support a right to information within the time periods in Plaintiffs' Requests.  *ClearOne Communications* does not involve document requests and in fact the court there held that ClearOne was "entitled to full discovery of Yang's *current financial situation*."  276 F.R.D. at 404.  *O.H.M. Resource Recovery Corp.* related to requests that predated the entry of judgment by only three years, not *seventeen years* as Plaintiffs are requesting here.  1991 WL 146234, at *1-2.

Finally, we have made our position on *NML Capital* and § 1610(c) abundantly clear through our prior letters and our meet-and-confer call.  Suffice it to say that we continue to disagree with Plaintiffs' position as to those authorities.

Sincerely,

Claire A. DeLelle

cc:   Steven R. Perles
      Edward B. MacAllister
      Gavriel Mairone
      William Wheeler
      John Arthur Eaves, Sr.
      Allen L. Rothenberg
      Christopher M. Curran
      Nicole Erb

3

# The Miller Firm LLC

## TRIAL LAWYERS

Michael J. Miller – VA, MD, DC, PA
Nancy Guy Miller – MS
Bruce D. Burtoff, M.D., J.D. – VA, DC, FL, MS
David J. Dickens – VA, DC
Jeffrey Travers – VA
Tayjes Shah – PA, NJ
Timothy Litzenburg – VA
Curtis G. Hoke – CA
Jeff T. Seldomridge - VA

**The Sherman Building**
**108 Railroad Avenue**
**Orange, Virginia 22960**

Nancy Leftwich, R.N.
Elisa A Dickson, RN, BSN, MS
Website: Millerfirmllc.com
Telephone: (540) 672-4224
(866) 529-3323
Facsimile: (540) 672-3055

January 21, 2016

**VIA E-MAIL**

Claire A. DeLelle
White & Case LLP
701 13th Street NW
Washington, DC 20005

Re:   *Amduso v. Republic of Sudan, et al.*, No. 08-cv-1361 (D.D.C.)

Dear Claire:

I am writing in response to your January 11, 2016 letter, relating to Plaintiffs' outstanding Rule 69 post-judgment discovery requests. Sudan's position with respect to these requests is apparently the following:  (1) Sudan refuses to produce any discovery whatsoever in this matter and will not discuss or defend its asserted legal objections further; and (2) despite Sudan's unwillingness to provide any discovery in this matter, our clients must nevertheless limit their outstanding requests in a manner acceptable to Sudan (even though Sudan has suggested that it will not ever voluntarily comply with the requests).

The asymmetry and inequity in this approach by Sudan is inconsistent with the just, speedy, and inexpensive determination of the Embassy Bombing Victims' request for information from Sudan. In light of your most recent letter, we are left with the unfortunate conclusion that Sudan is no longer seeking to meet and confer in good faith.

Thus, it appears that we are at an impasse.  Under the rule of law, Sudan has been found to have supported and facilitated acts of international terrorism against diplomatically protected persons and to have engaged in a lengthy scheme with its Central Bank and other financial institutions to violate U.S. law.  Unfortunately, our clients have been the victims of that criminal misconduct and have had to seek redress from the United States courts to obtain some measure of justice.  Now holding lawful final judgments against Sudan—which contrary to Sudan's assertions were based on a detailed factual record presented at a bench trial to the U.S. District Court Judge John D. Bates and presented over the course of nearly three years to Special Masters appointed by the Court—Sudan seeks to delay justice for these victims again.

I will briefly respond to each of your additional objections below.  Unless Sudan determines and acts to produce at least some of the requested information and documents by January 28, 2016, we will be required to seek an order from Judge Bates compelling discovery in this matter.

January 21, 2016
Page 2

***

(1)      **Validity of the Document Requests**

As an initial matter, the standard legal counsel dues, which had been overdue and which you noted to oppose the victims' request, were paid in 2015. Mr. Miller is a member in good standing of the bar of the U.S. District Court for the District of Columbia and had previously filed documents in the *Amduso* matter prior to the issuance of Plaintiffs' discovery requests. We believe this is sufficient to resolve your objection that Sudan is permitted to simply ignore the original Document Requests. Nevertheless, out of an abundance of caution, we are re-issuing the identical requests contemporaneous with this letter.

(2)      **Threshold Legal Objections to Submitting to Discovery**

With respect to your threshold legal objections, in our prior letter to you dated December 29, 2015, we carefully weighed each of your objections against the governing law, including the controlling Supreme Court precedent in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014). We included citations and quotations from *NML Capital* addressing each of your objections. We also pointed out a number of instances in which you misconstrued NML Capital's holding for legal propositions which were directly contrary to the conclusions by the Court.

We were hopeful that by outlining Sudan's misunderstanding of the relevant law, it would lead to some progress on resolving your objections. Unfortunately, having been presented with case law that is unfavorable to its position, Sudan apparently does not wish to engage further or to address at this stage any of the points we made in our letter.

(3)      **Appropriateness of the Relevant Period**

With respect to the appropriateness of the Relevant Period and the objections to the definitions, our clients have amply outlined responses to your objections in our earlier correspondence regarding the relevance of the periods 1997 through 2001 and 2001 through the Present. Although you mistakenly and repeatedly mischaracterize our clients' request for any information prior to 2014 as a "fraudulent conveyance" theory, the Embassy Bombing Victims' have made no such assertion.

As outlined in our prior correspondence, Sudan has conspired over the past 20+ years to bomb and attack diplomatically protected persons and facilities in the United States and Africa and to circumvent and defeat United States and international sanctions designed to deter and disrupt those acts of international terrorism. Although Sudan would now like to dispute or disregard these historical facts, those facts have been found by:

(1) the United States Secretary of State in designating Sudan as a state sponsor of international terrorism in August 1993 (a designation which remains in place today);

(2) the U.S. Department of Justice in naming the Government of Sudan's Mission to the United Nations and associated individuals in a February 1995 judicial notice as unindicted co-conspirators in the plot to bomb the United Nations Headquarters, the U.S. Federal Building housing the FBI, the Lincoln and Holland Tunnels, and the George

January 21, 2016
Page 3

Washington Bridge in New York City and to kidnap and assassinate government officials, law enforcement officers, and judicial officers of the United States;

(3) the Security Council of the United Nations in sanctioning Sudan in April 1996 for its support, facilitation, and harboring of international terrorists, actions to destabilize the governments of neighboring African nations, and its refusal to abide by the norms of international law;

(4) Judge Bates and a number of other federal judges in hearing the civil actions of those injured or killed by acts of terrorism sponsored, supported, or facilitated by Sudan;

(5) the U.S. District Court in the Southern District of New York in reviewing and approving the July 2014 criminal guilty plea by Sudan's co-conspirator BNP Paribas S.A.; and others.

On November 3, 1997, U.S. President William J. Clinton, invoking the authority, inter alia, of the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Section *1701 et seq.*, issued Executive Order 13067, which declared a national emergency with respect to the policies and actions of the Government of Sudan, "including continued support for international terrorism." Exec. Order No. 13067 (Nov. 3, 1997). Sudan's designation as a state sponsor of terrorism continues in effect today.

Multiples agencies and components of the Sudanese Government participated in this conspiracy to conceal assets including the Central Bank of Sudan. And multiple other financial institutions and entities conspired with Sudan and al Qaeda to conceal and transport these assets. On July 10, 2014, a federal court in New York accepted the following facts regarding Sudan's role as proven beyond a reasonable doubt:

In 1997, shortly after the imposition of U.S. sanctions against Sudan, BNPP Geneva agreed to become the sole correspondent bank in Europe for Sudanese Government Bank 1, which, as noted above, was designated by OFAC as an SDN. Sudanese Government Bank 1 [the Central Bank of Sudan] then directed all major commercial banks located in Sudan to use BNPP Geneva as their primary correspondent bank in Europe. As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva.

Statement of Facts in Support of Guilty Plea, United States v. BNP Paribas, S.A, Case No. 14-cr 00460 (S.D.N.Y. July 10, 2014) at ¶ 19.

Since the BNP Paribas guilty plea, other financial institutions have admitted to conspiring with Sudan to conceal the country's assets. See, e.g., October 19, 2015 Deferred Prosecution Agreement between Crédit Agricole Corporate and Investment Bank and the U.S. Department of Justice. Accordingly, our clients have sound reason to conclude that Sudan began hiding assets commencing in November 1997 and has been actively concealing those assets since.

The only meaningful way to overcome Sudan's active (and undisputed) concealment is to obtain information from the period during which Sudan has systematically and fraudulently engaged in a conspiracy to conceal and hide its assets and to circumvent and defeat U.S. sanctions. As outlined in our

January 21, 2016
Page 4

earlier letter, information for the period 1997 through 2001 is the arguably the most relevant.  Sudan's primary mechanisms and schemes for concealment were put in place during that time period.  The financial institutions and others ready, willing, and able to engage in those schemes and frauds with Sudan joined Sudan's conspiracy during that time period.  Recent criminal guilty pleas and administrative enforcement actions by the U.S. Government confirm those conclusions and highlight the importance of that early time period to identifying, locating, and tracking down Sudan's assets and property outside of Sudan.

**(4)      Appropriateness of the Scope of Requests Under Rule 26(b)(1)**

Finally, our clients agree that the discovery requested should be "proportional to the needs of the case" as required by Rule 26(b)(1) and have made their requests in that light.  Rule 26(b)(1) provides the following guidance and direction in determining the proportionality of a discovery request:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure 26(b)(1).  Those factors all favor full and immediate production of the requested information by Sudan. To illustrate why the 1998 Embassy Bombing Victims' Discovery Requests are entirely proper and with the prayer that Sudan elects to minimize the further costs, delays, and injuries suffered to the Bombing Victims, we briefly note each of the factors outlined in the above Rule.

First, both the importance of the issues in this case—for our clients and the international community—and the amount in dispute are extraordinary.  Sudan assisted al Qaeda in perpetrating one of the largest terrorist attacks ever against U.S. Government employees and our clients suffered approximately $4.3 billion in compensatory damages alone—a damages amount that was determined by the Court with the assistance of judicially appointed Special Masters after consideration of the evidence according to the rule of law.

Second, Sudan is the only party in the world with information regarding the extent of its assets in the United States and abroad.  The 1998 Embassy Bombing Victims have no access to this information and no alternative way to get it.  In light of Sudan's longstanding efforts to conceal its assets, even U.S. Government agencies such as the Departments of Justice and Treasury and Sudan's criminal co-conspirators like BNP Paribas are unlikely to have this information.

Third, the nature of the discovery requested pursuant to Rule 69 is critical.  The 1998 Embassy Bombing Victims have no way of enforcing their judgments until they identify, locate, and understand the extent and nature of Sudan's concealed and unconcealed assets.  The longer Sudan can delay providing this information, the longer these victims are forced to suffer and the greater ability Sudan has to further insulate its assets from recovery.

January 21, 2016
Page 5

Finally, the benefit of this information is incalculable to the victims and severely outweighs any burden on Sudan.  The 1998 Embassy Bombing Victims have had to expend substantial time and resources in obtaining judgments against Sudan.  Sudan has engaged in a decades-long criminal conspiracy and has knowingly and affirmatively decided not to defend its misconduct on the merits.  At every step of the way, Sudan has been evasive or sought to delay the proceedings, including to this very moment.  The time for delay has come to an end.

In sum, the discovery requested in this case pursuant to Rule 69 is proportional to the needs of this case as plainly demonstrated by the factors listed in Rule 26(b)(1).

\*\*\*

We look forward to receiving your response and an initial production of documents and information by January 28, 2016.  Alternatively, we will be forced to seek an order by the Court compelling Sudan to comply with the 1998 Embassy Bombing Victims' discovery requests pursuant to Rule 69 and federal law.

Very truly yours,

David J. Dickens

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MILLY MIKALI AMDUSO,** *et al.*,

                Plaintiffs,

**v.**

**REPUBLIC OF SUDAN, et al.,**

              Defendants.

**CIVIL ACTION NO.: 08-1361 (JDB)**

## PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION FROM JUDGMENT DEBTOR <u>REPUBLIC OF SUDAN</u>

Pursuant to Federal Rules of Civil Procedure 69, 34, and 26, Plaintiffs submit the following requests for production of documents and electronically stored information in aid of execution of their lawful judgments against Judgment Debtor, the Republic of Sudan, in the above-captioned matter.

The Republic of Sudan has been found, under the rule of law, responsible to the plaintiffs for their deaths, injuries, and losses caused by the Republic of Sudan and others in the murderous attacks and bombings in August 1998 upon the United States Embassies in Kenya and Tanzania.  The Plaintiffs are current and former employees of the United States of America and their immediate family members.

On  July 25, 2014, following a 2010 bench trial, issuance of an extensive written opinion and Orders on liability in 2011, and extended evidentiary review and evaluation of damages from 2011 through 2014 by seven Special Masters appointed by the Court, U.S. District Court Judge John D. Bates issued his findings and opinion with regard to the

damages suffered by the Plaintiffs and caused directly and proximately by the Government of Sudan and others.  See  Amduso v. Republic of Sudan, 61 F. Supp. 3d 42 (D.D.C. 2015). That same day, Judge Bates ordered entry of Final Judgment for the 567 Plaintiffs in a total amount of $8,684,523,372 based on the prior finding after bench trial that Sudan had caused the devastating attacks and murders of August 1998 in Kenya and Tanzania and, as a result, was liable under the Foreign Sovereign Immunities Act ("FSIA").  A certified copy of that judgment is attached as Exhibit 1.  The Plaintiffs now seek justice, under the rule of law, from the Government of Sudan and its co-conspirators.

Plaintiffs submit the following Request for Production of Documents and Electronically Stored Information:

(a) to identify, locate, and secure the Government of Sudan's and other judgment debtors' accounts, investments, credits, assets, and property in whatever form held;

(b) to identify and discover the movement or transfer of such accounts, investments, credits, assets, and property;

(c) to identify persons or custodians who are facilitating or controlling or have facilitated or controlled the movement or transfer of such accounts, investments, credits, assets, and property or who are or have been in custody or control of such accounts, investments, credits, assets, and property; and

(d) to identify persons with knowledge about 1. such accounts, investments, credits, assets, and property, their custody or control, and their movement or transfer, or 2. those persons previously or currently involved in the management, deposit, withdrawal, handling, investment, profit, transfer, movement, custodianship, accounting, or possession

2

of the Government of Sudan's and other judgment debtors' accounts, investments, credits, assets, and property.

All of the above is necessary and proper to allow the plaintiffs to recover upon their lawful judgments against the Government of Sudan and others under the rule of law.

The Plaintiffs rely upon the Federal Rules of Civil Procedure and the below definitions and instructions in making this Request.

## DEFINITIONS and INSTRUCTIONS

**Definitions:**

A.      The term Sudan or the Government of Sudan means the Republic of Sudan; the Central Bank of Sudan or the Bank of Sudan; all departments, agencies, and offices of the Government of Sudan; state owned or controlled financial institutions; and any representatives, agents, and all other persons conducting, facilitating, or supervising financial transactions or investments for or on behalf of the Republic of Sudan.

B.      The term "BNP Paribas S.A. or any subsidiary or affiliated financial institution"  includes BNP Paribas S.A., BNP Paribas (Suisse) S.A., BNP Paribas North America, BNP Paribas's branch offices in New York, NY, Geneva, Switzerland, Paris, France, and all other financial institutions controlled by or otherwise affiliated with BNP Paribas S.A.

C.      The term "unaffiliated Regional Banks" means the nine (9) financial institutions located in Africa, Europe and the Middle East referenced in Paragraph 17 and Footnote 4 of the stipulated Consent Order between the New York State Department of

Financial Services and BNP Paribas S.A. or used by BNP Paribas and Sudan to facilitate financial transactions through the United States.

       D.      The term "document" (or "documents") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(l)(A), and includes writings, drawings, graphs, charts, photographs, sound recordings, visual recordings, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a).

       E.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) in oral, written, or electronic format.

       F.      The term "person" means any natural person, or any business, legal, or governmental corporation, entity, association, or group.

       G.      The term "Co-conspirators" shall refer to Omar al-Basir;  all state-owned or controlled Sudanese financial institutions;  the National Congress Party of the National Islamic Front; BNP Paribas SA or any subsidiary or affiliated financial institution; Al Shamal Islamic Bank, Tadamon Islamic Bank, Faisal Islamic Bank-Sudan, and Bank of Almusia; al-Qaeda; Egyptian Islamic Jihad; Osama bin-Laden , Ayman Al-Zawahiri, Muhammad Atef, Saif al Adel, Mamdouh Mahmud Salim, Abdullah Ahmed Abdullah, Muhsin Musa Matwali Atwah, Khalid al Fawwaz, Wadih el Hage, Anas al Liby, Ibrahim Eidarous, Adel Abdel Bary, Fazul Abdullah Mohammed, Ahmed Mohammed Hamed Ali,

Mohammed Sadeek Odeh, Mohamed Rashed Daoud al-'Owhali, Mustafa Mohamed Fadhil, Khalfan Khamis Mohamed, Ahmed Khalfan Ghailani, Fahid Mohammed Ally Msalam, and Sheikh Ahmed Salim Swedan; and any person or entity involved in the August 7, 1998 attacks on the United States embassies in Dar-es-Salaam, Tanzania and Nairobi, Kenya or any related financial transaction either before or after those attacks.

H.     The term "financial institution" includes (i) any financial institution as defined in Section 5312(a)(2) of Title 31 of the United States Code and (ii) any foreign bank as defined in Section 1 of the International Banking Act of 1978 (12 U.S.C. § 3101).

I.     The term "financial transaction" includes any financial transaction as defined in Section 1956(c) of Title 18 of the United States Code.

J.     Unless otherwise specified, the term "Relevant Period" shall refer to the period November 3, 1997 through the present.

**Instructions**:

K.     A written response to this document request is required under Rule 34. All requested documents may be produced by mailing copies to the undersigned counsel for the Plaintiffs at the following address:

> Michael J. Miller, Esq.
> THE MILLER FIRM, LLC
> 108 Railroad Avenue
> Orange, VA 22960
> Tel: (540) 672-4224
> Fax: (540) 672-3055

L.     Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that

may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

M.      A document is deemed in your actual or constructive possession, custody or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, law, order or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document upon any terms; or ( d) have, as a practical matter, been able to use, inspect, examine or copy such document when You sought to do so.  For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody or control if it is accessible on a network or server that You maintain.

N.      The specifications of these document requests are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive; the word "all" means "any and all" and the word "any" means "any and all."

O.      In producing responsive documents, You should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including Your attorneys or their agents, employees or representatives.

6

P.      If in responding to this request, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

Q.      If a privilege is claimed as the basis for not producing any document, you are to furnish as required by Rule 26 of the Federal Rules of Civil Procedure a privilege log setting forth, for each such document: (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state or foreign law, indicate the state or foreign nation's privilege rule being invoked; (ii) the type of document, e.g., letter, memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients of the document.

## REQUESTS FOR DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

1.      From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, BNP Paribas S.A. or any subsidiary or affiliated financial institution relating, in any manner, to any U.S. dollar transaction, financial transaction, investment, property, financial/dollar clearing operation, financial investment, financial record, financial holding, loan, security, or real or personal property in or transiting through the United States or a U.S. financial institution wherever located.

2.      From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, BNP Paribas S.A. or any subsidiary or affiliated financial institution or any "unaffiliated Regional Banks" relating, in any manner, to U.S. sanctions against Sudan.

3.      All account opening documents, transaction histories, records of electronic funds transfers, documents, communications, and electronically stored information relating to the accounts referenced in Paragraph 17 and Footnote 4 of the stipulated Consent Order between the New York State Department of Financial Services and BNP Paribas S.A. which were established at BNP Paribas S.A. or any subsidiary or affiliated financial institution or at unaffiliated Regional Banks.  Paragraph 17 and Footnote 4 of the Consent Order state:

> "Soon after the imposition of U.S. sanctions against Sudan in 1997, BNPP Geneva established account relationships with unaffiliated regional banks ('Regional Banks') located in Africa, Europe and the Middle East, eventually nine in all, **some with no other business purpose than to clear payments for Sudanese clients. The accounts with the Regional Banks were created and established to provide a means to circumvent U.S. sanctions**." (emphasis added).
>
> ***
>
> Footnote 4: "In the account opening documentation for these banks the following notation appeared: 'As requested, we hereby confirm that we wish to open the account to facilitate transfers of funds for our mutual Sudanese customers.'"

4.      All directions, instructions, documents, electronically stored information, communications which the Bank of Sudan sent to Sudanese banks from November 1, 1997 to October 31, 2001 directing or requesting such banks to use BNP Paribas-Geneva.

Further description of that direction or communication is set forth at Paragraph 19 of the stipulated Statement of Facts in support of BNP Paribas S.A.'s guilty plea in federal court in New York in July 2014.  Paragraph 19 states:

> "**In 1997, shortly after the imposition of U.S. sanctions against Sudan**, **BNPP Geneva agreed to become the sole correspondent bank in Europe for Sudanese Government Bank 1 [the Central Bank of Sudan or the Bank of Sudan], which, as noted above, was designated by OFAC as an SDN**.  [The Sudanese Central Bank] then directed all major commercial banks located in Sudan to use BNPP Geneva as their primary correspondent bank in Europe.  **As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva**. In addition to processing U.S. dollar transactions, in 2000, BNPP Geneva also developed a business in letters of credit for the Sudanese banks.  Due to its role in financing Sudan's export of oil, BNPP Geneva took on a central role in Sudan's foreign commerce market." (emphasis added).

5.    All documents, communications, and electronically stored information relating, in any manner, to the following facts or scheme set forth in Paragraphs 22 and 23 of the stipulated Statement of Facts in support of BNP Paribas S.A.'s criminal guilty plea in federal court in New York:

> "22.    In order to avoid having transactions identified and blocked by filters at banks in the United States, beginning at least as early as 2002 and continuing through 2007, BNPP agreed with Sanctioned Entities in Sudan not to mention their names in U.S. dollar transactions processed through the United States.  For example, when conducting U.S. dollar business with BNPP, the Sanctioned Entities frequently instructed BNPP not to mention the names of the Sanctioned Entities in wire transfer messages, which BNPP then agreed to do. In many instances, the instructions specifically referenced the U.S. embargo.  For example: 'due to the US embargo on Sudan, please [debit our U.S. dollar account] without mentioning our name in your payment order' and 'transfer the sum of USD 900,000 . . . without mentioning our name - repeat without mentioning our name under swift confirmation to US.'  Such payment messages frequently bore stamps from BNPP employees stating: 'ATTENTION: US EMBARGO.'  At times, BNPP front

9

office employees directed BNPP back office employees processing transactions with Sudanese Sanctioned Entities to omit any reference to Sudan:  '! Payment in $ to [French Bank l] without mentioning Sudan to N.Y. !!!' Indeed, until 2004, BNPP's internally published policy for processing U.S. dollar payments involving Sudan stated: 'Do not list in any case the name of Sudanese entities on messages transmitted to American banks or to foreign banks installed in the U.S.'

23.    In addition to omitting references to Sudan in U.S. dollar payment messages, another method used by BNPP Geneva to evade the U.S. embargo against Sudan involved, as noted above, the use of unaffiliated, non-Sudanese, non-U.S. banks (referred to internally at BNPP Geneva as 'satellite banks') to help disguise the true nature of transactions with sanctioned Sudanese banks. BNPP Geneva began its relationship with many of these satellite banks shortly after the imposition of U.S. sanctions against Sudan in 1997, and the vast majority of the satellite banks' business with BNPP Geneva involved facilitating U.S. dollar payments for sanctioned Sudanese banks."

6.    For the period from November 1, 1997 through October 31,  2001, all SWIFT records, documents, communications, and electronically stored information relating, in any manner, to any financial transaction through the United States or any United States financial institution on behalf of the Government of Sudan, including but not limited to any financial transaction conducted or facilitated by BNP Paribas S.A. or any subsidiary or affiliated financial institution or by an unaffiliated Regional Bank.

7.    From November 1, 1997 through October 31, 2001, all SWIFT records, documents, communications, and electronically stored information relating, in any manner, to any financial transaction through the United States or any United States financial institution wherever located on behalf of Al Shamal Islamic Bank, Tadamon Islamic Bank, Faisal Islamic Bank-Sudan, Bank of Almusia, or any other financial institution owned or controlled by one of the preceding financial institutions.

8.      From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, any "Co-conspirator" relating, in any manner, to the imposition, avoidance, or circumvention of U.S. sanctions against Sudan.

9.      For the Relevant Period, all documents, communications, and electronically stored information, including all SWIFT records, relating to any financial transaction, property, or investment in or conducted through the United States on behalf of Al-Hijrah Construction and Development, Ltd.; Wadi al Aqiq; al Themar; al Damazine; Taba Investment Limited; Khartoum Tannery; the Haramain Islamic Foundation; the al Wafa organization; Hasan al-Turabi; the National Congress Party of the National Islamic Front; or Sudanese President Omar al-Bashir.

10.     Copies of any "Suspicious Activity Report" (also known as a SAR) or FinCEN Form 111 received, directly or indirectly, from BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank during the Relevant Period.

11.     From January 2014 until the present, all documents, communications, and electronically stored information received from, or sent to, directly or indirectly BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank relating, any manner, to:

       (i) the U.S. investigation of BNP Paribas S.A. or the resulting guilty plea in United States v. BNP Paribas, S.A., 14-cr-00460-LGS (S.D.N.Y. 2014);

       (ii) the financial penalties imposed in connection with the settlement agreements between BNP Paribas S.A. and the U.S. Department of Treasury/Office

11

of Foreign Assets Control ("OFAC"), the New York County District Attorney's Office, and the New York State Department of Financial Services; or

       (iii) any agreement or understanding with BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank to share costs or expenses or to make reimbursement for any penalties or forfeitures imposed in relation to <u>United States v. BNP Paribas, S.A.</u>, 14-cr-00460-LGS (S.D.N.Y. 2014), the administrative actions brought against BNP Paribas S.A. by OFAC, the New York District Attorney's Office, and the New York Department of Financial Services, or any other related civil or administrative action against BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank.

12.    During the Relevant Period, all documents, communications and electronically stored information sufficient to identify all accounts; investments; securities; credits; assets; real, personal, or intangible property; and any interest in property (of any nature whatsoever, direct or indirect) of the Government of Sudan, which is or was (i) present within the United States, (ii) transferred through the United States, or (iii) within the full or partial custody, control, management, supervision, or possession of a United States person.

13.    All documents, communications and electronically stored information sufficient to identify all signatories, the stated purpose, the opening and closing dates, and source of funds for all accounts, investments, securities, credits, assets, real/personal/or intangible property, and any interest in property (of any nature whatsoever, direct or indirect) of the Government of Sudan identified in response to Document Request 12.

14.    All documents, communications, and electronically stored information sufficient to identify the balance, value, transactional histories, custodians, nominees, and legal and beneficial owners or joint owners relating to all accounts, investments, securities, credits, assets, real/personal/or intangible property, and any interest in property (of any

12

nature whatsoever, direct or indirect) of the Government of Sudan identified in response to Document Request 12.

15.     During the Relevant Period, all documents, communications, and electronically stored information relating, in any manner, to any financial transaction, wire transfer, account, investment, security, credit, asset, real/personal/or intangible property, and any interest in property (of any nature whatsoever, direct or indirect) provided to, obtained from, maintained for, or held in common with any Co-conspirator that is or was (i) present within the United States, (ii) transferred through the United States, or (iii) within the full or partial custody, control, management, supervision, or possession of a United States person.

Dated: January 21, 2016

Respectfully submitted,

Michael J. Miller, Esq.
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055

Steven R. Perles (No. 326975)
Edward B. MacAllister (No. 494558)
Perles Law Firm, PC
1050 Connecticut Avenue, N.W.
Suite 1000
Washington, DC 20036
Tel: 202-955-9055

Gavriel Mairone
MM~Law LLC
980 North Michigan Ave., Suite 1400
Chicago, IL 60611

William Wheeler
Wheeler & Franks Law Firm, P.C.
114 S. Broadway Street
Tupelo, MS 38804

John Arthur Eaves, Sr.
Law Offices of John Arthur Eaves
101 North State Street
Jackson, MS 39201

Allen L. Rothenberg
Law Firm of Allen L. Rothenberg
1420 Walnut Street, 2nd Floor
Philadelphia, PA  19102

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Plaintiffs' Interrogatories and Requests for Production of Documents to Judgment Debtor Republic of Sudan has been made this 21st day of January 2106, by placing a true copy thereof in the U.S. mail, postage prepaid, addressed to:

Claire A. DeLelle
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

_____
Michael J. Miller
Counsel for Plaintiffs

15

WHITE & CASE

January 28, 2016

<u>VIA EMAIL</u>

David J. Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
**T** +1 202 626 3600

whitecase.com

Re:    *Amduso, et al. v. Republic of Sudan, et al.*, Civil Action No. 08-1361
       (D.D.C.)

Dear David:

This responds to your letter of January 21, 2016. Your letter misstates
Sudan's position as to Plaintiffs' Requests. Sudan has not refused to "discuss
or defend its asserted legal objections further." Rather, our January 11 letter
declined to repeat Sudan's positions in detail since the parties' correspondence
had unfortunately become circular and therefore counter-productive on the
select objections upon which Plaintiffs have chosen to engage. Over the
course of our communications thus far, and particularly your letter of
December 29, 2015, the parties have maintained their fundamental
disagreement as to Sudan's threshold objections (detailed extensively in our
prior correspondence), but Plaintiffs have continued to ignore Sudan's specific
objections, as summarized in our last letter.

Your letter threatens a motion to compel without Plaintiffs having ever
articulated a position on Sudan's specific objections. If the Court were
inclined to overrule Sudan's threshold objections, the Court would be required
to resolve Sudan's well-founded specific objections, without Plaintiffs having
ever attempted in good faith to narrow the dispute or refine its Document
Requests in any way. As previously stated, we do not view this as consistent
with the parties' meet-and-confer obligations.

We continue to disagree with the remainder of your letter, and we specifically
dispute the continued repetition of Plaintiffs' assertion that Sudan has been
found to have participated in any conspiracy.

Finally, we acknowledge receipt of Plaintiffs' re-issued Document Requests
dated January 21, 2016, and will serve Sudan's objections in accordance with
the Federal Rules of Civil Procedure. Given the renewal of Mr. Miller's
lapsed July 1, 2014 membership with the Court on November 18, 2015 and his

WHITE & CASE

January 28, 2016

entry of appearance in this case on December 29, 2015, the reissuance of the Requests obviates Sudan's objection as to the facial invalidity of the Document Requests signed by Mr. Miller on October 2, 2015.

Sincerely,

**Claire A. DeLelle**

cc:     Steven R. Perles
        Edward B. MacAllister
        Gavriel Mairone
        William Wheeler
        John Arthur Eaves, Sr.
        Allen L. Rothenberg
        Christopher M. Curran
        Nicole Erb

# The Miller Firm LLC

## TRIAL LAWYERS

Michael J. Miller – VA, MD, DC, PA
Nancy Guy Miller – MS
Bruce D. Burtoff, M.D., J.D. – VA, DC, FL, MS
David J. Dickens – VA, DC
Jeffrey Travers – VA
Tayjes Shah – PA, NJ
Timothy Litzenburg – VA
Curtis G. Hoke – CA
Jeff T. Seldomridge - VA

**The Sherman Building**
**108 Railroad Avenue**
**Orange, Virginia 22960**
Nancy Leftwich, R.N.
Elisa A Dickson, RN, BSN, MS
Website: Millerfirmllc.com
Telephone: (540) 672-4224
(866) 529-3323
Facsimile: (540) 672-3055

March 4, 2016

**VIA UNITED STATES MAIL AND E-MAIL**

Claire A. DeLelle, Esquire
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

>      Re:     Embassy Bombing Litigation: *Wamai v. Republic of Sudan*, Case No. 08-13489; -
> *Amduso v. Republic of Sudan*, Case No. 08-0136; *Onsongo v. Republic of Sudan*, 08-
> 1380; and *Opati v. Republic of Sudan*, 12-1224

Dear Claire,

On February 3, 2016, we received Sudan's Objections to Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6). Sudan has objected to each area of inquiry and has refused to designate a representative to testify to any of the matters identified in Plaintiffs' Notice. The objections asserted by Sudan in response to the Rule 30(b)(6) Notice are identical to those asserted in response to Plaintiffs' Request for Production of Documents. We have addressed Sudan's objections in our previous correspondence of November 19, 2015, November 24, 2015, December 29, 2015 and January 21, 2016. It is clear that we will not be able to narrow these issues without intervention of the Court. Therefore, there is no need to rehash our positions to each of these objections.

The matters of examination identified by Plaintiffs in Areas of Inquiry 1-9 and 17-19 are virtually identical to those asserted by the judgment creditors in *Continental Transfer Technique Limited v. Federal Government of Nigeria*, 308 F.R.D. 27 (D.D.C. 2015). In denying Nigeria's motion to quash a 30(b)(6) deposition, the Court held:

> Contrary to Nigeria's assertion, it is *not* "obvious that the property targeted for discovery"
> in Continental's deposition notice "is immune from arrest, attachment or execution."
> None of the areas of inquiry outlined in Continental's notice, on their face, appear to be
> directed at property or assets that would be categorically immune from execution under
> the FSIA. Continental seeks, in its notice, only information about Nigeria's property,
> assets, transactions, or investments which are used for commercial activities and which
> are located, or undertaken, in the United States.

*Id.* at 37 (internal citation omitted).

Plaintiffs' notice of deposition has been served as a means to streamline discovery and obtain relevant, necessary information regarding Sudanese assets to satisfy their judgment. Sudan has not

# The Miller Firm
### TRIAL LAWYERS

Claire A. DeLelle, Esquire
March 4, 2016
Page 2

asserted a valid objection to discovery regarding Sudanese property, assets, transactions or investments which are used for commercial activities or which are located in the United States. In light of the *Continental Transfer* decision, Plaintiffs request that Sudan waive their objections to Areas of Inquiry 1-9 and 17-19.

In accordance with Judge Bates' ordinary practice, Plaintiffs intend to inform the Court of the discovery disputes relating to both the document requests and 30(b)(6) Notice. It is our understanding that the parties should jointly contact chambers prior to filing a discovery motion to allow the Court to make a determination as to the manner in which the discovery dispute will be handled. Please let me know your availability next week so that we can jointly contact chambers.

Very truly yours,

THE MILLER FIRM, LLC

Michael J. Miller

cc:    Christopher M. Curran, Esquire
       Nicole Erb, Esquire
       Steven R. Perles, Esquire
       Edward B. MacAllister, Esquire
       Gavriel Mairone, Esquire
       William Wheeler, Esquire
       John Arthur Eaves, Sr., Esquire
       Allen L. Rothenberg, Esquire