UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILLY MIKALI AMDUSO,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **REPUBLIC OF SUDAN, et al.**, <br><br> Defendants. | CIVIL ACTION NO.: 08-1361 (JDB) |

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION FROM JUDGMENT DEBTOR <u>REPUBLIC OF SUDAN</u>**

Pursuant to Federal Rules of Civil Procedure 69, 34, and 26, Plaintiffs submit the following requests for production of documents and electronically stored information in aid of execution of their lawful judgments against Judgment Debtor, the Republic of Sudan, in the above-captioned matter.

The Republic of Sudan has been found, under the rule of law, responsible to the plaintiffs for their deaths, injuries, and losses caused by the Republic of Sudan and others in the murderous attacks and bombings in August 1998 upon the United States Embassies in Kenya and Tanzania. The Plaintiffs are current and former employees of the United States of America and their immediate family members.

On July 25, 2014, following a 2010 bench trial, issuance of an extensive written opinion and Orders on liability in 2011, and extended evidentiary review and evaluation of damages from 2011 through 2014 by seven Special Masters appointed by the Court, U.S. District Court Judge John D. Bates issued his findings and opinion with regard to the

1

damages suffered by the Plaintiffs and caused directly and proximately by the Government of Sudan and others.  See  Amduso v. Republic of Sudan, 61 F. Supp. 3d 42 (D.D.C. 2015). That same day, Judge Bates ordered entry of Final Judgment for the 567 Plaintiffs in a total amount of $8,684,523,372 based on the prior finding after bench trial that Sudan had caused the devastating attacks and murders of August 1998 in Kenya and Tanzania and, as a result, was liable under the Foreign Sovereign Immunities Act ("FSIA").  A certified copy of that judgment is attached as Exhibit 1.  The Plaintiffs now seek justice, under the rule of law, from the Government of Sudan and its co-conspirators.

Plaintiffs submit the following Request for Production of Documents and Electronically Stored Information:

(a) to identify, locate, and secure the Government of Sudan's and other judgment debtors' accounts, investments, credits, assets, and property in whatever form held;

(b) to identify and discover the movement or transfer of such accounts, investments, credits, assets, and property;

(c) to identify persons or custodians who are facilitating or controlling or have facilitated or controlled the movement or transfer of such accounts, investments, credits, assets, and property or who are or have been in custody or control of such accounts, investments, credits, assets, and property; and

(d) to identify persons with knowledge about 1. such accounts, investments, credits, assets, and property, their custody or control, and their movement or transfer, or 2. those persons previously or currently involved in the management, deposit, withdrawal, handling, investment, profit, transfer, movement, custodianship, accounting, or possession

of the Government of Sudan's and other judgment debtors' accounts, investments, credits, assets, and property.

All of the above is necessary and proper to allow the plaintiffs to recover upon their lawful judgments against the Government of Sudan and others under the rule of law.

The Plaintiffs rely upon the Federal Rules of Civil Procedure and the below definitions and instructions in making this Request.

## DEFINITIONS and INSTRUCTIONS

**Definitions:**

A.   The term Sudan or the Government of Sudan means the Republic of Sudan; the Central Bank of Sudan or the Bank of Sudan; all departments, agencies, and offices of the Government of Sudan; state owned or controlled financial institutions; and any representatives, agents, and all other persons conducting, facilitating, or supervising financial transactions or investments for or on behalf of the Republic of Sudan.

B.   The term "BNP Paribas S.A. or any subsidiary or affiliated financial institution" includes BNP Paribas S.A., BNP Paribas (Suisse) S.A., BNP Paribas North America, BNP Paribas's branch offices in New York, NY, Geneva, Switzerland, Paris, France, and all other financial institutions controlled by or otherwise affiliated with BNP Paribas S.A.

C.   The term "unaffiliated Regional Banks" means the nine (9) financial institutions located in Africa, Europe and the Middle East referenced in Paragraph 17 and Footnote 4 of the stipulated Consent Order between the New York State Department of

Financial Services and BNP Paribas S.A. or used by BNP Paribas and Sudan to facilitate financial transactions through the United States.

  D. The term "document" (or "documents") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(l)(A), and includes writings, drawings, graphs, charts, photographs, sound recordings, visual recordings, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a).

  E. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) in oral, written, or electronic format.

  F. The term "person" means any natural person, or any business, legal, or governmental corporation, entity, association, or group.

  G. The term "Co-conspirators" shall refer to Omar al-Basir; all state-owned or controlled Sudanese financial institutions; the National Congress Party of the National Islamic Front; BNP Paribas SA or any subsidiary or affiliated financial institution; Al Shamal Islamic Bank, Tadamon Islamic Bank, Faisal Islamic Bank-Sudan, and Bank of Almusia; al-Qaeda; Egyptian Islamic Jihad; Osama bin-Laden , Ayman Al-Zawahiri, Muhammad Atef, Saif al Adel, Mamdouh Mahmud Salim, Abdullah Ahmed Abdullah, Muhsin Musa Matwali Atwah, Khalid al Fawwaz, Wadih el Hage, Anas al Liby, Ibrahim Eidarous, Adel Abdel Bary, Fazul Abdullah Mohammed, Ahmed Mohammed Hamed Ali,

Mohammed Sadeek Odeh, Mohamed Rashed Daoud al-'Owhali, Mustafa Mohamed Fadhil, Khalfan Khamis Mohamed, Ahmed Khalfan Ghailani, Fahid Mohammed Ally Msalam, and Sheikh Ahmed Salim Swedan; and any person or entity involved in the August 7, 1998 attacks on the United States embassies in Dar-es-Salaam, Tanzania and Nairobi, Kenya or any related financial transaction either before or after those attacks.

H.  The term "financial institution" includes (i) any financial institution as defined in Section 5312(a)(2) of Title 31 of the United States Code and (ii) any foreign bank as defined in Section 1 of the International Banking Act of 1978 (12 U.S.C. § 3101).

I.  The term "financial transaction" includes any financial transaction as defined in Section 1956(c) of Title 18 of the United States Code.

J.  Unless otherwise specified, the term "Relevant Period" shall refer to the period November 3, 1997 through the present.

**Instructions:**

K.  A written response to this document request is required under Rule 34. All requested documents may be produced by mailing copies to the undersigned counsel for the Plaintiffs at the following address:

>  Michael J. Miller, Esq.
>  THE MILLER FIRM, LLC
>  108 Railroad Avenue
>  Orange, VA 22960
>  Tel: (540) 672-4224
>  Fax: (540) 672-3055

L.  Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that

may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

M. A document is deemed in your actual or constructive possession, custody or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, law, order or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document upon any terms; or ( d) have, as a practical matter, been able to use, inspect, examine or copy such document when You sought to do so.  For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody or control if it is accessible on a network or server that You maintain.

N. The specifications of these document requests are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive; the word "all" means "any and all" and the word "any" means "any and all."

O. In producing responsive documents, You should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including Your attorneys or their agents, employees or representatives.

P.      If in responding to this request, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

Q.      If a privilege is claimed as the basis for not producing any document, you are to furnish as required by Rule 26 of the Federal Rules of Civil Procedure a privilege log setting forth, for each such document: (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state or foreign law, indicate the state or foreign nation's privilege rule being invoked; (ii) the type of document, e.g., letter, memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients of the document.

**REQUESTS FOR DOCUMENTS AND**
**ELECTRONICALLY STORED INFORMATION**

1.      From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, BNP Paribas S.A. or any subsidiary or affiliated financial institution relating, in any manner, to any U.S. dollar transaction, financial transaction, investment, property, financial/dollar clearing operation, financial investment, financial record, financial holding, loan, security, or real or personal property in or transiting through the United States or a U.S. financial institution wherever located.

2. From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, BNP Paribas S.A. or any subsidiary or affiliated financial institution or any "unaffiliated Regional Banks" relating, in any manner, to U.S. sanctions against Sudan.

3. All account opening documents, transaction histories, records of electronic funds transfers, documents, communications, and electronically stored information relating to the accounts referenced in Paragraph 17 and Footnote 4 of the stipulated Consent Order between the New York State Department of Financial Services and BNP Paribas S.A. which were established at BNP Paribas S.A. or any subsidiary or affiliated financial institution or at unaffiliated Regional Banks. Paragraph 17 and Footnote 4 of the Consent Order state:

> "Soon after the imposition of U.S. sanctions against Sudan in 1997, BNPP Geneva established account relationships with unaffiliated regional banks ('Regional Banks') located in Africa, Europe and the Middle East, eventually nine in all, **some with no other business purpose than to clear payments for Sudanese clients. The accounts with the Regional Banks were created and established to provide a means to circumvent U.S. sanctions**." (emphasis added).
>
> \*\*\*
>
> Footnote 4: "In the account opening documentation for these banks the following notation appeared: 'As requested, we hereby confirm that we wish to open the account to facilitate transfers of funds for our mutual Sudanese customers.'"

4. All directions, instructions, documents, electronically stored information, communications which the Bank of Sudan sent to Sudanese banks from November 1, 1997 to October 31, 2001 directing or requesting such banks to use BNP Paribas-Geneva.

Further description of that direction or communication is set forth at Paragraph 19 of the stipulated Statement of Facts in support of BNP Paribas S.A.'s guilty plea in federal court in New York in July 2014.  Paragraph 19 states:

> "**In 1997, shortly after the imposition of U.S. sanctions against Sudan**, **BNPP Geneva agreed to become the sole correspondent bank in Europe for Sudanese Government Bank 1 [the Central Bank of Sudan or the Bank of Sudan], which, as noted above, was designated by OFAC as an SDN**. [The Sudanese Central Bank] then directed all major commercial banks located in Sudan to use BNPP Geneva as their primary correspondent bank in Europe. **As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva**. In addition to processing U.S. dollar transactions, in 2000, BNPP Geneva also developed a business in letters of credit for the Sudanese banks.  Due to its role in financing Sudan's export of oil, BNPP Geneva took on a central role in Sudan's foreign commerce market." (emphasis added).

5.      All documents, communications, and electronically stored information relating, in any manner, to the following facts or scheme set forth in Paragraphs 22 and 23 of the stipulated Statement of Facts in support of BNP Paribas S.A.'s criminal guilty plea in federal court in New York:

> "22.    In order to avoid having transactions identified and blocked by filters at banks in the United States, beginning at least as early as 2002 and continuing through 2007, BNPP agreed with Sanctioned Entities in Sudan not to mention their names in U.S. dollar transactions processed through the United States.  For example, when conducting U.S. dollar business with BNPP, the Sanctioned Entities frequently instructed BNPP not to mention the names of the Sanctioned Entities in wire transfer messages, which BNPP then agreed to do. In many instances, the instructions specifically referenced the U.S. embargo.  For example: 'due to the US embargo on Sudan, please [debit our U.S. dollar account] without mentioning our name in your payment order' and 'transfer the sum of USD 900,000 . . . without mentioning our name - repeat without mentioning our name under swift confirmation to US.'  Such payment messages frequently bore stamps from BNPP employees stating: 'ATTENTION: US EMBARGO.'  At times, BNPP front

9

> office employees directed BNPP back office employees processing transactions with Sudanese Sanctioned Entities to omit any reference to Sudan:  '! Payment in $ to [French Bank l] without mentioning Sudan to N.Y. !!!' Indeed, until 2004, BNPP's internally published policy for processing U.S. dollar payments involving Sudan stated: 'Do not list in any case the name of Sudanese entities on messages transmitted to American banks or to foreign banks installed in the U.S.'
>
> 23.     In addition to omitting references to Sudan in U.S. dollar payment messages, another method used by BNPP Geneva to evade the U.S. embargo against Sudan involved, as noted above, the use of unaffiliated, non-Sudanese, non-U.S. banks (referred to internally at BNPP Geneva as 'satellite banks') to help disguise the true nature of transactions with sanctioned Sudanese banks. BNPP Geneva began its relationship with many of these satellite banks shortly after the imposition of U.S. sanctions against Sudan in 1997, and the vast majority of the satellite banks' business with BNPP Geneva involved facilitating U.S. dollar payments for sanctioned Sudanese banks."

6.     For the period from November 1, 1997 through October 31, 2001, all SWIFT records, documents, communications, and electronically stored information relating, in any manner, to any financial transaction through the United States or any United States financial institution on behalf of the Government of Sudan, including but not limited to any financial transaction conducted or facilitated by BNP Paribas S.A. or any subsidiary or affiliated financial institution or by an unaffiliated Regional Bank.

7.     From November 1, 1997 through October 31, 2001, all SWIFT records, documents, communications, and electronically stored information relating, in any manner, to any financial transaction through the United States or any United States financial institution wherever located on behalf of Al Shamal Islamic Bank, Tadamon Islamic Bank, Faisal Islamic Bank-Sudan, Bank of Almusia, or any other financial institution owned or controlled by one of the preceding financial institutions.

8. From November 1, 1997 through October 31, 2001, all documents, communications, and electronically stored information sent to, or received from, any "Co-conspirator" relating, in any manner, to the imposition, avoidance, or circumvention of U.S. sanctions against Sudan.

9. For the Relevant Period, all documents, communications, and electronically stored information, including all SWIFT records, relating to any financial transaction, property, or investment in or conducted through the United States on behalf of Al-Hijrah Construction and Development, Ltd.; Wadi al Aqiq; al Themar; al Damazine; Taba Investment Limited; Khartoum Tannery; the Haramain Islamic Foundation; the al Wafa organization; Hasan al-Turabi; the National Congress Party of the National Islamic Front; or Sudanese President Omar al-Bashir.

10. Copies of any "Suspicious Activity Report" (also known as a SAR) or FinCEN Form 111 received, directly or indirectly, from BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank during the Relevant Period.

11. From January 2014 until the present, all documents, communications, and electronically stored information received from, or sent to, directly or indirectly BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank relating, any manner, to:

    (i) the U.S. investigation of BNP Paribas S.A. or the resulting guilty plea in <u>United States v. BNP Paribas, S.A.</u>, 14-cr-00460-LGS (S.D.N.Y. 2014);

    (ii) the financial penalties imposed in connection with the settlement agreements between BNP Paribas S.A. and the U.S. Department of Treasury/Office

of Foreign Assets Control ("OFAC"), the New York County District Attorney's Office, and the New York State Department of Financial Services; or

(iii) any agreement or understanding with BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank to share costs or expenses or to make reimbursement for any penalties or forfeitures imposed in relation to United States v. BNP Paribas, S.A., 14-cr-00460-LGS (S.D.N.Y. 2014), the administrative actions brought against BNP Paribas S.A. by OFAC, the New York District Attorney's Office, and the New York Department of Financial Services, or any other related civil or administrative action against BNP Paribas S.A. or any subsidiary or affiliated financial institution or an unaffiliated Regional Bank.

12. During the Relevant Period, all documents, communications and electronically stored information sufficient to identify all accounts; investments; securities; credits; assets; real, personal, or intangible property; and any interest in property (of any nature whatsoever, direct or indirect) of the Government of Sudan, which is or was (i) present within the United States, (ii) transferred through the United States, or (iii) within the full or partial custody, control, management, supervision, or possession of a United States person.

13. All documents, communications and electronically stored information sufficient to identify all signatories, the stated purpose, the opening and closing dates, and source of funds for all accounts, investments, securities, credits, assets, real/personal/or intangible property, and any interest in property (of any nature whatsoever, direct or indirect) of the Government of Sudan identified in response to Document Request 12.

14. All documents, communications, and electronically stored information sufficient to identify the balance, value, transactional histories, custodians, nominees, and legal and beneficial owners or joint owners relating to all accounts, investments, securities, credits, assets, real/personal/or intangible property, and any interest in property (of any

nature whatsoever, direct or indirect) of the Government of Sudan identified in response to Document Request 12.

15. During the Relevant Period, all documents, communications, and electronically stored information relating, in any manner, to any financial transaction, wire transfer, account, investment, security, credit, asset, real/personal/or intangible property, and any interest in property (of any nature whatsoever, direct or indirect) provided to, obtained from, maintained for, or held in common with any Co-conspirator that is or was (i) present within the United States, (ii) transferred through the United States, or (iii) within the full or partial custody, control, management, supervision, or possession of a United States person.

Dated: October 2, 2015

Respectfully submitted,

*/s/*

_____
Michael J. Miller, Esq.
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055

Steven R. Perles (No. 326975)
Edward B. MacAllister (No. 494558)
Perles Law Firm, PC
1050 Connecticut Avenue, N.W.
Suite 1000
Washington, DC 20036
Tel: 202-955-9055

Gavriel Mairone
MM~Law LLC
980 North Michigan Ave., Suite 1400
Chicago, IL 60611

William Wheeler
Wheeler & Franks Law Firm, P.C.
114 S. Broadway Street
Tupelo, MS 38804

John Arthur Eaves, Sr.
Law Offices of John Arthur Eaves
101 North State Street
Jackson, MS 39201

Allen L. Rothenberg
Law Firm of Allen L. Rothenberg
1420 Walnut Street, 2nd Floor
Philadelphia, PA  19102

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiffs' Interrogatories and Requests for Production of Documents to Judgment Debtor Republic of Sudan has been made this 2nd day of October, 2015, by placing a true copy thereof in the U.S. mail, postage prepaid, addressed to:

Christopher M. Curran, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Michael J. Miller
Counsel for Plaintiffs