## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ZARMACH OIL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-02164 (ESH) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| THE TREASURY, OFFICE OF FOREIGN | ) |
| ASSETS CONTROL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DESIGNATION AND CERTIFICATION OF ADMINISTRATIVE RECORD

I, Andrea Gacki, Assistant Director for Licensing at the Department of the Treasury's Office of Foreign Assets Control, do hereby certify that the attached pages constitute a true and complete copy of the documents that may be considered to constitute the agency record pertaining to the Department of the Treasury, Office of Foreign Assets Control's decisions at issue in this litigation. The documents at Bates 001-005 are the complete agency record pertaining to the January 28, 2004 decision to deny Banco Atlantico, Gibraltar's request for a specific license to authorize the release of a transfer of $915,102.00 from Cliveden Petroleum LTD for the benefit of the Sudanese Petroleum Corporation. The documents at Bates 006-155 are the complete agency record pertaining to the September 2, 2009 decision to deny Zarmach Oil Services, Inc.'s request for reconsideration of the decision not to license the release. Two references to the name of an OFAC employee have been redacted, one each on AR-000002 and AR-000003.

In accordance with 28 U.S.C. § 1746, I hereby certify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this ___9th___ day of March, 2010.

                                                          _____

Andrea Gacki
Assistant Director for Licensing
Office of Foreign Assets Control



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

SU-1039

**Banco Atlantico (Gibraltar) Limited**
**1 Corral Road**
**P.O. Box 561**
**Gibraltar**
**Attn: Emilio Martinez – Priego**
        **Esteban Maldonodao - Pareja**

Dear Sirs:

This is in response to your application of 01/13/2004 requesting a specific license to authorize the release of the following blocked funds transfer:

| | |
|---|---|
| Originator: | Cliveden Petroleum LTD, Switzerland |
| Originating Bank: | Banco Atlantico, Gibraltar |
| Value Date: | 21-NOV-03 |
| Amount: | USD 915,102.00 |
| Beneficiary Bank: | United European Bank, Geneva, Switzerland |
| Beneficiary: | Sudanese Petroleum Corporation |

**Bank of New York** properly blocked this transfer pursuant to U.S. financial sanctions administered by the Office of Foreign Assets Control ("OFAC") pursuant to 31 C.F.R., Ch. V and/or applicable executive orders. Under these sanctions, the property and all interests in property ("Blocked Property") of "Sanctions Targets" are blocked. Full copies of the relevant regulations and executive orders are available at OFACs Website at <http://www.treas.gov/offices/eotffc/ofac/>, or upon written request to OFAC.

Under these regulations and executive orders, a U.S. financial institution is required to place Blocked Property that comes within its possession or control into an interest bearing blocked account, even where its role is merely that of an intermediary and the underlying transaction does not otherwise involve a person subject to U.S. jurisdiction. An interest in property sufficient to require blocking may be an interest of any nature whatsoever, direct or indirect. A holder of Blocked Property is prohibited from engaging in any transaction in such property or from exercising any rights, powers, or privileges over such property.

As reflected by your application or information otherwise available to OFAC, the blocked funds transfer in question involves an interest of a Sanctions Target; specifically, pursuant to Sudanese Sanctions Regulations, 31 C.F.R. Part 538. Because it would be inconsistent with U.S. sanctions policy to authorize the release of the Blocked Property in this case, your request for a specific license is denied at this time.

Sincerely,

David W. Mills
Chief of Licensing
Office of Foreign Assets Control

OFAC FACDB System

Case 1:09-cv-02164-ESH Document 325-3 Filed 05/01/17 Page 4 of 31
Case 1:09-cv-02164-ESH Document 12-3 Filed 03/10/10 Page 4 of 31

Page 1 of 1

## View ABaRRs Results - SU-P-1039

License Summary | License Records | License Assignments | Related Items | Attached Documents | Search ABaR

Production
**OFAC
FACDB**
Jan 21, 2004

**Current User:**

**Quick Links**
**My
Assignments**
**My Cases**
**AdHoc Query**
**My Reports**

**Log Off**
**Home**

**Mail**
**Licenses**
**Penalty Cases**
**Blocked
Assets**
**Enforcement**
**Folders**
**Reports**
**Administration**
**FOIA Cases**
**Records
(Physical
Folders)**

| | |
|---|---|
| **Institution Name:** | Bank of New York |
| **Program:** | Sudan |
| **Entry Date:** | 12/09/2003 |
| **Amount:** | 915102 |
| **Value Date:** | 11/21/2003 |
| **Residual Amount:** | 915102 |
| **Sender Correspondent:** | |
| **Receiver Correspondent:** | |
| **Originating Party:** | Cliveden Petroleum LTD |
| **Originating Bank:** | Banco Atlantico - Gibraltar |
| **Intermediary Bank:** | BNP Paribas NY Branch - New York, NY |
| **Beneficiary Party:** | Sudanese Petroleum Corporation |
| **Beneficiary Bank:** | United European Bank - Geneva, Switzerland |
| **Bank Ref Num:** | |
| **Case Number:** | |
| **Address 1:** | 101 Barclay St. - 18 west |
| **Address 2:** | |
| **City:** | New York |
| **State:** | NY |
| **Remarks:** | |
| **Instructions:** | |

Associate License

AR-000002

Case 1:09-cv-01064-ESH Document 325-3 Filed 05/01/17 Page 5 of 31
Case 1:09-cv-02164-ESH Document 22-3 Filed 03/10/10 Page 5 of 31
Page 1 of 1

## Office of Foreign Assets Control
# Correspondence Cover Sheet

SU-1039

| Doc ID: | SU-220894 | Received: | 15-JAN-04 | Dated: | | 13-JAN-04 | |
|---|---|---|---|---|---|---|---|
| Due Date: | | Exec Sec No.: | ~ | Enforcement No.: | ~ | | Other Ref No.: ~ |

| | | | |
|---|---|---|---|
| **From:** | Martinez, E./ Maldonado, E. | **Actual Party:** | Sudanese Petroleum Corporation |
| **Organization:** | Banco Atlantico (Gibraltar) Limited | **Subject:** | Request for the release of blocked funds in the amount of $915,102.00. |
| **Address:** | 1 Corral Road | | |
| | PO Box 561 | | |
| | Gibraltar, | | |

| Disposition | CC | Special: | Control | Copy to Director |
|---|---|---|---|---|
| Initial Assignment | | **Reassign 2** | | **Reassign 3** |
| Director | | | | |
| Blocked Assets | | | | |
| Civil Penalties | | | | |
| Compliance | | | | |
| Enforcement | | | | |
| FTAT | | | | |
| I T | | | | |
| Int'l Programs | | | | |
| Licensing | | ███ | | |
| Plans & Policy | | | | |
| Chief Counsel | | | | |
| Sr. Advisor/Records | | | | |

**Notes:**

| **Disposition:** | **File Name/Location:** | **Initials:** | **Date:** |
|---|---|---|---|
| | | | |

**Remarks**

AR-000003
1/15/2004

U.S. DEPARTMENT OF THE TREASURY

OFFICE OF FOREIGN ASSETS CONTROL

APPLICATION FOR THE RELEASE OF BLOCKED FUNDS

(WHEN APPROVED, THIS DOCUMENT BECOMES A
SPECIFIC LICENSE AUTHORIZING THE UNBLOCKING
OF THE SUBJECT FUNDS AND THEIR RELEASE
ACCORDING TO THE TERMS HEREOF)

DO NOT WRITE IN THIS BOX – LICENSE APPROVAL ONLY VALID WITH OFAC SEAL

THIS APPLICATION IS HEREBY:          FAC/LICENSE NO._____

G   APPROVED, AND FUNDS MAY BE UNBLOCKED AND RELEASED, WITH VALUE:
     G    TO ORIGINATOR OR ORIGINATING BANK
     G    IN ACCORDANCE WITH ORIGINAL PAYMENT INSTRUCTIONS

G   DENIED (SEE ATTACHED EXPLANATION)

G   RETURNED WITHOUT ACTION (SEE ATTACHED CHECKLIST)

TYPE OF REQUEST [CHECK APPROPRIATE BOX]
[✓]   LICENSE APPLICATION
[ ]   REQUEST FOR RECONSIDERATION [PROVIDE
    FAC NO. OF PREVIOUS AGENCY ACTION (IF KNOWN)]:  _____

**APPLICANT INFORMATION**

| APPLICANT | | ADDRESS LINE 1 | | ADDRESS LINE 2 | |
|---|---|---|---|---|---|
| BANCO ATLANTICO (GIBRALTAR) LIMITED | | 1 CORRAL ROAD | | P.O. BOX 561 | |

| CITY | STATE | CONTACT PERSON | | TELEPHONE | FAX NUMBER |
|---|---|---|---|---|---|
| GIBRALTAR | GIBRALTAR | EMILIO MARTINEZ - PRIEGO<br>ESTEBAN MALDONADO - PAREJA | | + 350 40117 | + 350 40110 |

| POSTAL CODE | COUNTRY | SOCIAL SECURITY/TAXPAYER I.D. NO.<br>(Required for US Persons) | E-MAIL ADDRESS |
|---|---|---|---|
| | U.K. | | emilio.martinez@bancoatlantico.gi |

**CORPORATIONS AND OTHER ENTITIES**

| PRINCIPAL PLACE OF BUSINESS | STATE OF INCORPORATION OR ORGANIZATION | EMPLOYER IDENTIFICATION NUMBER |
|---|---|---|
| GIBRALTAR | GIBRALTAR | |

THE FOLLOWING INFORMATION, IF KNOWN, SHOULD BE PROVIDED CONCERNING THE BLOCKED FUNDS (USE PAGE 2 AS NEEDED)

| NAME & ADDRESS OF FINANCIAL INSTITUTION WHICH BLOCKED FUNDS | AMOUNT BLOCKED | DATE OF THE BLOCKING |
|---|---|---|
| THE BANK OF NEW YORK<br>1 WALL STREET, 19th FLOOR<br>NEW YORK CITY. NY   USA | USD 915,102 | 11/21/2003 |

| REMITTER NAME & ADDRESS | REMITTING FINANCIAL INSTITUTION NAME & ADDRESS |
|---|---|
| CLIVEDEN PETROLEUM COMPANY LIMITED<br>17 RUE DES PIERRES DU NITON<br>GENEVA (CH-1207). SWITZERLAND | BANCO ATLANTICO (GIBRALTAR) LIMITED<br>1 CORRAL ROAD, P.O. BOX 561<br>GIBRALTAR |

| INTERMEDIARY FINANCIAL INSTITUTION(S) NAME & ADDRESS | BENEFICIARY FINANCIAL INSTITUTION NAME & ADDRESS |
|---|---|
| THE BANK OF NEW YORK<br>1 WALL STREET, 19th FLOOR<br>NEW YORK CITY. NY   USA | BNP PARIBAS (SUISSE) S.A.<br>2 PL. DE HOLLANDE<br>GENEVA (CH-1204). SWITZERLAND |

| BENEFICIARY NAME & ADDRESS | DESCRIPTION OF UNDERLYING TRANSACTION (ATTACH SEPARATE SHEET AS NEEDED) |
|---|---|
| SUDANESE PETROLEUM CORPORATION | |

APPLICATION CERTIFICATION: I, THE UNDERSIGNED, HEREBY DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE INFORMATION PROVIDED ON THIS APPLICATION AND ANY ACCOMPANYING DOCUMENTATION IS TRUTHFUL AND COMPLETE.

| SIGNATURE | NAME OF SIGNER | TITLE OF SIGNER | DATE PREPARED |
|---|---|---|---|
| | E. MARTINEZ<br>E. MALDONADO | GENERAL MANAGER<br>COMMERCIAL MANAGER | 01/13/2004 |

ADDITIONAL COPIES OF THIS FORM MAY BE OBTAINED FROM OFAC'S WEBSITE AT NO CHARGE: <http://www.treas.gov/ofac>

AR-000004

PAGE 2

ADDITIONAL INFORMATON

ACCORDING TO THE INFORMATION PROVIDED BY THE ORDERING CUSTOMER, CLIVEDEN PETROLEUM COMPANY LIMITED, THEY ENTERED WITH THE MINISTRY OF ENERGY AND MINING OF THE REPUBLIC OF SUDAN INTO AN EXPLORATION AND PRODUCTION SHARING AGREEMENT DATED 21st OCTOBER 2003.

UNDER THE ABOVE MENTIONED EXPLORATION AND PRODUCTION SHARING AGREEMENT, CLIVEDEN PETROLEUM COMPANY LIMITED HAS A CERTAIN NUMBER OF OBLIGATIONS AMONG WHCIH THE PAYMENT OF CERTAIN SUMS FOR SOCIAL DEVELOPMENT, TRAINING FUND, SURFACE RENTAL AND SIGNATURE FEE, AS IT IS USUAL IN THE OIL INDUSTRY.

THE AMOUNT OF US DOLLARS 915,102 CORRESPONDS TO THEIR OBLIGATIONS AS STATED ABOVE AND HAD TO BE PAID, BY THE 21st OCTOBER 2003, INTO THE ACCOUNT THAT THE SUDANESE PETROLEUM CORPORATION HAS WITH BNP PARIBAS (SUISSE) S.A. IN GENEVA.

CLIVEDEN PETROLEUM COMPANY LIMITED KNEW THAT THERE WERE SANCTIONS AGAINST THE SUDAN BUT TO THEIR KNOWLEDGE ONLY FOR U.S. COMPANIES AND DID NOT APPLY FOR NON U.S. COMPANIES (CLIVEDEN PETROLEUM COMPANY LIMITED IS A COMPANY REGISTERED IN THE BRITISH VIRGIN ISLANDS).

AR-000005



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Case No.**    **SU-3091-1039**

**Schertler & Onorato, L.L.P.**
**601 Pennsylvania Avenue, N.W.**
**North Building, 9th Floor**
**Washington, DC 20004-2601**

**Attn: David H. Dickieson**

Dear Sir:

This letter responds to your application of August 14, 2009, to the Office of Foreign Assets Control
("OFAC") requesting a reconsideration of OFAC's decision not to license the release of the following
blocked funds transfer:

| | |
|---|---|
| Originator: | Cliveden Petroleum LTD |
| Originating Bank: | Banco Atlantico (Panama) SA |
| Value Date: | 21-NOV-03 |
| Amount: | USD 915,102.00 |
| Intermediary Bank: | BNP Paribas SA |
| Beneficiary Bank: | UNITED EUROPEAN BANK - GENEVA, SWITZERLAND |
| Beneficiary: | Sudanese Petroleum Corporation |

OFAC licenses the release of blocked funds only under limited and compelling circumstances consistent
with the national security and foreign policy interests of the United States. OFAC has reviewed the
information that you submitted, and has determined once again that licensing the release of the blocked
funds would be inconsistent with OFAC policy. As reflected by your application or by information
otherwise available to OFAC, the blocked funds transfer in question involves an interest of a sanctions
target, specifically, **Sudanese Petroleum Corporation**. Therefore, your request is again denied. OFAC
will reconsider its determination only upon receipt of additional relevant information or new information
that demonstrates a change in circumstances.

Sincerely,

*John Smith*    9/2/09

_____
John E. Smith            Date
Associate Director
Program Policy and Implementation
Office of Foreign Assets Control



SCHERTLER & ONORATO, L.L.P.

| | |
|---|---|
| David Schertler<br>*DC & IL Bars* | |
| Danny C. Onorato<br>*DC & CA Bars* | |

Vincent H. Cohen, Jr.
*DC, MD & NJ Bars*

David H. Dickieson
*DC, MD, VA & PA Bars*

Lisa Fishberg
*DC, MD & NY Bars*

Mark E. Schamel
*DC, MD & NY Bars*

Robert J. Spagnoletti
*DC, NJ, NY & TX Bars*

Claire Morris Clark
*VA Bar*

Veronica Renzi Jennings
*MD Bar*

Habib F. Ilahi
*DC & TX Bars*

Michael Starr
*DC Bar*

Peter V. Taylor
*DC Bar*

August 14, 2009

VIA HAND DELIVERY

Licensing Division
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

Re:  Reconsideration of Case Number SU-1039

Dear Sir/Madam:

On behalf of Zarmach Oil Services, Inc., I have enclosed a completed Application for the Release of Blocked Funds which seeks reconsideration of a previous denial of an application filed in 2003 by Zarmach's predecessor, Cliveden Petroleum, Inc. The blocked funds have been held for almost six years by the Bank of New York. Recently, the funds were the subject of an interpleader action in the United States District Court for the Southern District of New York, *Rux v. ABN-AMRO Bank N.V.,* 09-2163-cv. The funds were not released to the Petitioners in the interpleader action because Zarmach Oil Services asserted a documented claim for ownership of the funds. The funds have since been returned to the Bank of New York where they are likely to remain unless released by OFAC. The funds no longer serve any U.S. policy purpose, as neither Sudan nor the Sudanese Petroleum Corporation assert any ownership interest in the funds.

Therefore, we respectfully request that this Application be expeditiously processed and the funds released to Zarmach Oil Services, Inc. Thank you for your consideration of this matter.

Very truly yours,

David H. Dickieson

ATTORNEYS AT LAW

| | | |
|---|---|---|
| | 601 Pennsylvania Avenue, N.W.<br>North Building, 9th Floor<br>Washington, D.C. 20004-2601 | 202.628.4199<br>202.628.4177 *fax*<br>www.schertlerlaw.com |

AR-000007

ORIGINAL

OMB No. 1505-0170
TD-F 90-22.54

U.S. Department of the Treasury

**OFAC**
Office of Foreign Assets Control

**APPLICATION FOR THE RELEASE OF BLOCKED FUNDS**
*It is strongly recommended that you use the computer to complete this form*

TYPE OF APPLICATION **Request for Reconsideration**     Previous Case Number (if applicable): **SU-1039**

| 1. Blocked Amount: **915,102.00** | 2. Currency Type: **U.S. Dollars** | 3. Date Blocked (mm/dd/yyyy): **11/21/2003** |
|---|---|---|

### APPLICANT/CONTACT INFORMATION

4. Business Name (if applicable): **Zarmach Oil Services, Inc.**

5. Last Name:                                    6. First Name:

7. Middle Name:                          8a. Street Address 1: **c/o D. Dickieson, 601 Penn Ave., NW**

8b. Street Address 2: **NORTH Building, 9th Floor**                 9. City: **Washington**

10. **United States**          11. **District of Columbia**          12. Postal Code: **20004**

| | Area | Exchange | Number | Extension | | | | Area | Exchange | Number |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ 13. Int'l  14. Phone: | **(202)** | **824** | **1222** | | | ☐ 15. Int'l  16. Fax: | | **(202)** | **628** | **4177** |

17. E-mail Address: **ddickieson@schertlerlaw.com**     18. Principal Place of Business: **Switzerland**

19. State or Country Where Business is Incorporated: **Switzerland**

20. Transfer Blocked Due to the Following OFAC Sanctions Program: **Sudan**

IF BLOCKING OCCURRED BECAUSE THE NAME OF ANY PARTY TO THE TRANSACTION APPEARS TO MATCH A NAME ON THE SPECIALLY DESIGNATED NATIONALS (SDN) LIST, PLEASE PROVIDE INFORMATION RELATED TO THE NAME MATCH (e.g. copy of: original payment or transfer instructions, invoices, bills of lading, passport, temporary/permanent resident card, birth certificate, Employer Identification Number, passport, national ID card, incorporation document or other government-issued identifying documentation).

### FINANCIAL INSTITUTION THAT BLOCKED FUNDS

21. Institution Name: **Bank of New York Mellon**

22. Street Address: **One Wall Street**                23. City: **New York**

24. **United States**          25. **New York**          26. Postal Code: **10286**

### REMITTER'S INFORMATION

27. Business Name (if applicable): **Cliveden Petroleum Inc. - predecessor to Zarmach Oil Svcs.**

28. Last Name:              29. First Name:              30. Middle Name:

31. Street Address: **c/o D. Dickieson, 601 Pennsylvania Ave, NW**     32. City: **Washington**

33. **United States**          34. **District of Columbia**          35. Postal Code: **20004**

### REMITTING FINANCIAL INSTITUTION

36. Institution Name: **Banco Atlantico**

37. Street Address:                          38. City:

39. **Gibraltar**          40. Province:          41. Postal Code:

Page 1 of 3          Total Barcode Characters: 698

AR-000008

ORIGINAL

2009 AUG 17  PM 3: 30

TREASURY DEPARTMENT
FOREIGN ASSETS CONTROL

AR-000009

OMB No. 1505-0170
TD-F 90-22.54

## APPLICATION FOR THE RELEASE OF BLOCKED FUNDS (cont'd)

### INTERMEDIARY FINANCIAL INSTITUTION

42. Institution Name: **Bank of New York Mellon**

43. Street Address: **One Wall Street**        44. City: **New York**

45. **United States**        46. **New York**        47. Postal Code: **10286**

### BENEFICIARY FINANCIAL INSTITUTION

48. Institution Name: **United European Bank**

49. Street Address:        50. City: **Geneva**

51. **Switzerland**        52. Province:        53. Postal Code:

### BENEFICIARY'S INFORMATION

54. Business Name (if applicable): **Sudanese Petroleum Corporation - no longer the Beneficiary**

55. Last Name:        56. First Name:        57. Middle Name:

58. Street Address:        59. City:

60. **Sudan**        61. Province:        62. Postal Code:

63. *DETAILED* EXPLANATION OF THE TRANSACTION, INCLUDING THE PURPOSE OF THE PAYMENT (Additional space provided on next page.)

SEE ATTACHED Memorandum in Support of Zarmach Oil Services' Application for License for the Release of Blocked Funds, with accompanying Exhibits



Page 2 of 3        Total Barcode Characters: 293

AR-000010

OMB No. 1505-0170
TD-F 90-22.54

## APPLICATION FOR THE RELEASE OF BLOCKED FUNDS (cont'd)

64. *DETAILED* EXPLANATION OF THE TRANSACTION (cont'd)

65. **APPLICANT CERTIFICATION:** I, THE UNDERSIGNED, HEREBY DECLARE THAT, TO THE BEST OF MY KNOWLEDGE, THE INFORMATION PROVIDED ON THIS APPLICATION AND ANY ACCOMPANYING DOCUMENTATION IS TRUTHFUL AND COMPLETE.

66. SIGNATURE: *David H. Dickieson*

67. DATE: 8/12/09

68. SIGNATORY NAME: **David H. Dickieson**

69. SIGNATORY TITLE: **Attorney for Zarmach**



Total Barcode Characters: 170



Page 3 of 3

Total Barcode Characters: 27

AR-000011

David H. Dickieson, Esq.
Schertler & Onorato, LLP
Counsel for Zarmach Oil Services, Inc.

## MEMORANDUM IN SUPPORT OF ZARMACH OIL SERVICES's
## APPLICATION FOR LICENSE FOR THE RELEASE OF BLOCKED FUNDS

### I.  Background

Almost six years ago in November of 2003, Cliveden Petroleum, Inc.  ("Cliveden"), a

Geneva Switzerland corporation, negotiated a lease with Sudan National Petroleum Corporation

("Sudapet") for oil drilling rights in the Sudan.  As a Swiss Corporation, Cliveden was acting

fully within all applicable laws in negotiating and leasing from Sudapet.  The amount owed to

Sudapet for this lease totaled $915,102.  To effectuate payment, Cliveden requested that its bank,

Banco Atlantico, Gibraltar, transfer payment via electronic wire to Sudapet's bank, United

European Bank, Geneva, Switzerland.  The entire transaction was to be conducted external to the

United States.  During the transfer process, the funds were converted from Euros to U.S. Dollars

and unintentionally routed through the intermediary bank of Bank of New York Mellon

("BONY").  During this conversion and wire transfer, the U.S. Department of Treasury, Office

of Foreign Assets Control ("OFAC"), froze the $915,102, claiming violations of Trading with

the Enemy Act ("TWEA"), [12 U.S.C. §95a] and the International Emergency Economic Powers

Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq.*

To no avail, Cliveden wrote a letter to BONY, dated November 21, 2003, requesting that

the frozen funds be released.  *See* **Exhibit 1**.  The Swiss Company, Cliveden, was still obligated

to pay for the oil lease and to fund training programs for the Sudanese workers.  In order to

satisfy the lease obligation with Sudapet, Cliveden wired a separate payment of $915,102 to

AR-000012

Sudapet and thus completed the lease transaction in accordance with all applicable laws. Sudapet never asserted ownership or a claim to the original funds held by OFAC. Shortly thereafter in December of 2003, Cliveden entered into an agreement with Zarmach Oil Services, Inc. ("Zarmach"), transferring all of Cliveden's interest in the frozen funds to Zarmach. *See* **Exhibit 2**. On behalf of Zarmach, the originating financial institution, Banco Atlantico, applied to OFAC for a specific license, permitting release of the frozen funds. Stating that "it would be inconsistent with U.S. sanctions policy to authorize the release of the Blocked Property", the OFAC denied the application. *See* **Exhibit 3** (Letter Denying Release). After this denial to release the frozen funds, Zarmach waited for further action from OFAC. As described herein, the continued retention of the frozen funds is not supported by law and the release of the funds would not be inconsistent with U.S. sanctions policy, as Sudan has no interest in the funds.

## II. Argument

### a. Ownership and Property

#### i. The Rux Recovery Action and the Government's Statements Concerning Wire Transfers.

As OFAC is aware, Zarmach's funds along with millions of dollars of other funds held in abeyance pursuant to the Sudanese Sanction Regulations ("SSR"), 31 C.F.R. § 538.201 became the focus of a judgment recovery action in the Southern District of New York. This judgment action stemmed from litigation that occurred during the same time period as the facts described above, and involved the personal representatives and family members of the victims of the U.S.S. Cole bombing in Yemen ("Rux Plaintiffs") and the Government of the Sudan. The litigation resulted in a favorable outcome for the Rux Plaintiffs and a civil judgment against Sudan in the amount of $12,275,860.

AR-000013

Pursuant to the Sudanese Sanction Regulations ("SSR") and the Terrorism Risk Insurance Act ("TRIA"), the Rux Plaintiffs filed a petition to attach a large quantity of blocked funds, some depository and some wire transfers, held by a number of United States intermediary banks allegedly belonging to Sudan and held within the United States by the intermediary banks. After the filing of the petition, the intermediary banks answered with an interpleader request to the court for assistance in the determination of how to proceed with the Rux Petitioner's recovery action and to determine which, if any, funds were subject to recovery.

All funds subject to the Rux Petitioners' claims were turned over to the court. The Intermediary Banks were ordered to notify all potential owners of the funds and any objections to the action or use of particular funds were filed with the Court. Given that Zarmach was the owner of the funds and received notice accordingly, it filed an objection, along with several other entities and individuals. *See* **Exhibit 4** (Objection). After reviewing these objections, the Court, Rux Petitioners, and intermediary banks determined that the Rux damages could be satisfied out of the blocked funds which received no objections. The intermediary banks also determined that all attorneys' fees and costs could be paid out of the uncontested funds, thus permitting a return of all contested funds to the original intermediary banks who effectuated the original freeze. *See* **Exhibit 5** (Order to Return Funds)

Throughout all of this recovery action, the Court, the intermediary bank, and the government considered Cliveden/Zarmach to be the owner of the funds to which it had a claim. Additionally, the government made broad statements to the Court and those involved with the recovery action concerning the delicate ownership status of funds frozen during a wire transfer. *See* **Exhibit 6** (Hearing Transcript). In particular, the representative for the government stated the following at a hearing before Judge Alvin K. Hellerstein on February 19, 2009:

AR-000014

> We are not taking any categorical position as to wire transfers either originated by Sudan or intended to go to Sudan. I think realistically we have less concern about transfers originated with Sudan because in our mind . . . ownership remains there until the transfer is complete . . . so we think that is a fairly straightforward ownership analysis that makes funds available for petitioner, and then would have the question of funds intended to reach Sudan, which didn't get there, and as to that, I think it's conceivable that there could be Sudanese ownership interest sufficient to reach TRIA, but I think the Court has to sort of tread carefully and those present difficult issues. *Because as a practical matter, it's hard to say whether that's actually money owned by Sudan.*

H'rg Tr. 31:4-6 (emphasis added). Zarmach agrees with the Government attorneys that practically speaking, wire transfers that do not reach the actual beneficiary or even beneficiary's bank cannot be considered the property of the beneficiary and therefore should support the release of such funds back to their owner.

### ii. The Fund in Possession of the Intermediary Bank Cannot be Frozen Because the Funds were not yet the Property of Sudan.

The freezing of the wire transfer at the intermediary bank level also runs contrary to the New York Uniform Commercial Code ("N.Y. U.C.C.") and its definition of ownership and property. Article 4-A-406(1) of the N.Y. U.C.C., clearly states that payment is not effected from the originator to the beneficiary until an order is accepted by the beneficiary bank. Thus, "until the funds transfer is completed by acceptance by the beneficiary's bank of payment order for the benefit of the beneficiary, the beneficiary has no property interest in the funds transfer . . . ." Official Comment, U.C.C. § 502(4).

Applying this logical explanation to the facts of the present case, Cliveden's payment did not become the property of Sudapet until there was acceptance of the transfer by the beneficiary bank, United European Bank. Again, turning to the N.Y. U.C.C., only two methods of acceptance would have sufficed: (1) payment of Sudapet by its beneficiary bank (or notification to Sudapet that a payment order was received), or (2) crediting of its account by the intermediary

bank. *See* N.Y. U.C.C. § 4-A-209(2)(a); *United States v. BCCI Holdings (Lux.)*, 980 F. Supp

507, 513-14 (D.D.C. 1997); *Sheerbonnet Ltd. v. American Express Bank, Ltd.*, 951 F. Supp. 403,

406-07 (S.D.N.Y. 1995). Neither payment of Sudapet nor a crediting of Sudapet's bank by the

intermediary bank occurred in the present case. Sudapet never considered the frozen funds to be

in its possession or its property. This is proven by the fact that Cliveden was forced to transfer

another payment for the amount of $915, 102 to Sudapet so as to satisfy the terms of the

agreement between them. Sudapet never once considered the $915,102 held by BONY to be its

property and does not currently. The only entity with a remaining claim in the frozen funds is

Zarmach and as such the funds should be released and returned to Zarmach.

### b. Policy

#### i. Purpose of the Sanctions

As stated in the implementing Executive Order 13067 of November 5, 1997, the reason

for imposing the sanction, was to counteract the policies and actions of Sudan, "including

continued support for international terrorism; ongoing efforts to destabilize neighboring

governments; and the prevalence of human rights violations. . . ." Exec. Order No. 13067

(1997). Two subsequent executive orders built upon this fundamental purpose. *See* Executive

Order Nos. 13412 & 13400.

In January of 2009, OFAC released a report to Congress, titled, "Effectiveness of the

U.S. Economic Sanctions with Respect to Sudan." *See* **Exhibit 7** (Report). In this report, OFAC

described the "ultimate objective" of the sanctions as that of "behavioral change." Report p. 7.

OFAC added that "short of this ultimate objective . . . the most meaningful measure of a

sanctions program is whether and to what extent it is exerting pressure on relevant decision

makers such that it affects their behavioral calculi." *Id.* The present circumstances offer no

incentive or impetus for Sudan, or any of its decision makers to change its behavior, because it has absolutely no interest in the frozen funds belonging to Zarmach. Continued holding of Zarmach's funds will not cause Sudan any financial difficulties, loss of business opportunities, or even deter others from doing business with Sudan. Sudan received its payment, the transaction was completed, and Sudan never once altered or considered altering its behavior. Punishing and withholding the funds from their rightful owner, Zarmach, fulfills none of the purposes of the Sudanese Sanctions.[1]

### ii. Avoid Disparities in Application

An additional policy consideration that should factor into the determination of whether to grant a license for release is the avoidance of disparities and creating inconsistent policy. As mentioned above, the government on behalf of the treasury and representatives from OFAC made several official commentaries and filings concerning the Rux Petitioner's claims. In its Statement of Interest, the government discussed at length its views on ownership and the definition of property from its policy perspective and within the context of the various controlling authority. Recognizing that the government and OFAC support a very broad interpretation of property and ownership with regard to the application of the SSR and related authority, it was specifically noted that even in cases where funds were blocked properly, certain cases warrant release through the licensing procedure. *See* **Exhibit 8** (Statement of Interest p. 12). The government cited the Government of Ethiopia matter -- also an owner of frozen funds

---

[1]    The continued sequestration of the Zarmach funds by OFAC will not aid other claimants against Sudan. The final decision in the *Rux* interpleader case indicates that the Zarmach funds were not available to pay the *Rux* Petitioners and there is no reason to believe that another court in another interpleader case will determine that the Zarmach funds will be subject to the claims of any other hypothetical petitioners in the future. Thus, the funds are serving no purpose for potential claimants, as well as serving no purpose for our government policy in Sudan. The sole beneficiary of the continued sequestration of the funds is the Bank of New York.

subject to the Rux judgment efforts -- as a particular example of a scenario warranting release of such. *See* Statement of Interest p. 12 ("OFAC presently intends to exercise its authority under the SSR to license the return of the funds to the remitter.").

The facts involved in the Ethopian matter could not be more similar to the facts of Zarmach's case. Similar to Cliveden, Ethiopia negotiated an oil rights lease with Sudapet and effected payment for the transaction through a wire transfer. Also, just as it occurred in Zarmach's case, Ethiopia's wire transfer was inadvertently routed through an intermediary bank in New York to convert the currency into U.S. Dollars and frozen before reaching the beneficiary's banks or account. Again, like Zarmach's matter, Ethiopia never lost possession of or ownership rights to the frozen funds and petitioned both the Court and OFAC for their release. As indicated by the government's Statement of Interest, the facts of Ethiopia's case compelled OFAC to consider a release of the funds and it would be absurd to not draw the same conclusion in a scenario which mirrors the same facts. To provide a license in the Government of Ethiopia scenario, and not in the Zarmach case would provide an inconsistent and disparate view of OFAC's policies.

### III. Conclusion

For all of the above noted reasons, Zarmach respectfully requests that the $915,102 in frozen funds be released pursuant to a specific license. The goals and purposes of the SSR simply are not achieved or promoted through the continued retention of the funds and they should be released.

August 12, 2009                                Respectfully submitted,

                                               SCHERTLER & ONORATO, L.L.P.

                                               David H. Dickieson (DC Bar #321778)
                                               601 Pennsylvania Avenue, N.W.
                                               North Building, Ninth Floor
                                               Washington, D.C. 20004
                                               Ph. (202) 824-1222
                                               Fax (202) 628-4177

                                               *Counsel for Zarmach Oil Services, Inc.*

AR-000019



BANK OF NEW YORK
NEW YORK

To the attention of FTD-BLOCK ENTITY

Geneva 21st November, 2003

Dear Sirs,

We make reference to the two wire transfers executed by our bank, Banco Atlantico (Gibraltar) Ltd respectively on 14th November 2003 for US Dollars 15,452.73 in favour of High Tech Petroleum Co, Khartoum, Sudan to their account with Banque Soudano Francaise in Khartoum and on 21st November, 2003 for US Dollars 915,102 in favour of Sudanese Petroleum Corp to their account with United European Bank, Geneva.

These two transfers have been initiated by our company because on 21st October 2003 we have entered with the Ministry of Energy and Mining of the Republic of Sudan into an Exploration and Production Sharing Agreement together with other local partners including High Tech Petroleum Co.

Under the above mentioned EPSA we have a certain number of obligation among which the payment of certain sums for Social Development, Training Fund, Surface Rental and Signature Fee, as it is usual in the oil industry.

The amount of US Dollars 915,102 corresponds to our obligation as stated above and had to be paid to the Sudanese Petroleum Corp by the 21st November, 2003.

The amount of US Dollars 15,452.73 corresponds to our part of the costs of data provided for our Block by the OEPA data centre.

We knew that there were sanctions against the country but to our knowledge only for US companies and did not apply for non US companies owned by European interests.
Regrettably we reserve our right to claim for damages if we loose our rights on the concession
We therefore kindly request you to urgently return these funds to our account with Banco Atlantico (Gibraltar) Ltd

Best regards

Jean-Gabriel Antoni



EXHIBIT

AR-000020

**This Agreement** is entered into on 2nd of December 2003

by and between:

**Cliveden Petroleum Co Ltd**, a company incorporated and existing under the laws of British Virgin Islands, whose registered office is at Arawak Trust Company Limited, PO Box 173, Road Town, Tortola, BVI_ ("Cliveden" or the "Assignor")

and

**Zarmach Oil Services Inc.** a company incorporated under the laws of British Virgin Islands, whose registered office is at CITCO BVI Limited, PO Box 662, Road Town, Tortola, BVI ("Zarmach" or the "Assignee").

(each a "Party" and collectively the "Parties")

Pursuant to an Exploration and Production Agreement signed between Cliveden Petroleum Sudan Ltd (a wholly owned subsidiary of Cliveden) and the Sudanese Ministry of Energy and Mining on October 31st, 2003, Cliveden paid on 21st November 2003 the amount of US Dollars 915,102 (nine hundred fifteen thousand one hundred two) to Sudapet, the Sudanese National Oil Company.

This payment has been made from **Cliveden** a/c at Banco Atlantico (Gibraltar) Ltd to the a/c of Sudapet at United European Bank (UEB) Geneva, Switzerland.

The Same Date Bank of New York (the United States correspondent Bank of Banco Atlantico acting as payor on behalf of **Cliveden**) stopped processing the instructed payment and froze these funds by claiming submission to the US Executive Order 13067 blocking Sudanese Government Properties and prohibiting transactions with Sudan.

In order to be released from the administrative task of recovering the said blocked amount of USD 915,102 in capital **Cliveden** accepts for value received to irrevocably and unconditionally assign to **Zarmach** all of its rights and benefits attached to the





pending blocked funds and to the related claim against the US Office of Foreign Asset Control. This assignment covers also the interests which might result from the non availability of the funds since the 21st November 2003 until time of their future release.

This Agreement shall be governed and construed in accordance with English Law.

In witness whereof this Agreement has been signed.

**Assignor**

Clivedon Petroleum Co Ltd

By

General Manager

**Assignee**

Zarmach Oil Services Inc.

By

Director



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

SU-1039

Banco Atlantico (Gibraltar) Limited
1 Corral Road
P.O. Box 561
Gibraltar
Attn: Emilio Martinez – Priego
        Esteban Maldonodao - Pareja

Dear Sirs:

This is in response to your application of 01/13/2004 requesting a specific license to authorize the release of the following blocked funds transfer:

| | |
|---|---|
| Originator: | Cliveden Petroleum LTD, Switzerland |
| Originating Bank: | Banco Atlantico, Gibraltar |
| Value Date: | 21-NOV-03 |
| Amount: | USD 915,102.00 |
| Beneficiary Bank: | United European Bank, Geneva, Switzerland |
| Beneficiary: | Sudanese Petroleum Corporation |

Bank of New York properly blocked this transfer pursuant to U.S. financial sanctions administered by the Office of Foreign Assets Control ("OFAC") pursuant to 31 C.F.R., Ch. V and/or applicable executive orders. Under these sanctions, the property and all interests in property ("Blocked Property") of "Sanctions Targets" are blocked. Full copies of the relevant regulations and executive orders are available at OFACs Website at <http://www.treas.gov/offices/eotffc/ofac/>, or upon written request to OFAC.

Under these regulations and executive orders, a U.S. financial institution is required to place Blocked Property that comes within its possession or control into an interest bearing blocked account, even where its role is merely that of an intermediary and the underlying transaction does not otherwise involve a person subject to U.S. jurisdiction. An interest in property sufficient to require blocking may be an interest of any nature whatsoever, direct or indirect. A holder of Blocked Property is prohibited from engaging in any transaction in such property or from exercising any rights, powers, or privileges over such property.

As reflected by your application or information otherwise available to OFAC, the blocked funds transfer in question involves an interest of a Sanctions Target; specifically, pursuant to Sudanese Sanctions Regulations, 31 C.F.R. Part 538. Because it would be inconsistent with U.S. sanctions policy to authorize the release of the Blocked Property in this case, your request for a specific license is denied at this time.

Sincerely,

David W. Mills
Chief of Licensing
Office of Foreign Assets Control

**EXHIBIT**
3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
OLIVIA RUX, et al.,

     Petitioners,       Case No. 08 Civ. 6588 (AKH)

  - against –

ABN-AMRO BANK, N.V., et al.     **CLAIM of ZARMACH OIL**
               **SERVICES, INC.**

     Respondents.
-----------------------------------------------------------X

   NOW COMES CLAIMANT, Zarmach Oil Services, Inc. (Zarmach), a company

incorporated under the laws of British Virgin Islands (BVI), and hereby asserts is claim to funds

of $915,102 plus interest, presently paid into the United States District Court for the Southern

District of New York.  Pursuant to this Court's Order entered on September 9, 2008, Zarmach

provides this claim objecting to the use of its funds to satisfy the judgment of the Petitioners

because such funds are not the property of Sudan or any of its agencies.  In support of its claim,

Zarmach states as follows:

   1.  Zarmach is the successor in interest to Cliveden Petroleum Co,. Ltd. (Cliveden)

with respect to a claim for funds which were blocked by the Bank of New York on November

21, 2003. See Dickieson Affidavit, Exhibit 6.

   2.  Cliveden is a BVI corporation which legally sought to transfer $915,102 to The

Sudanese Petroleum Corporation (Sudapet) account in Switzerland – BNP, Paribas (Suisse) S.A.

Geneva, formerly United European Bank Geneva.  The purpose of the funds was to provide

funds for social development, training and other purposes in exchange for securing rights to an

oil lease in Sudan.  Specifically, on October 21, 2003, Cliveden entered into an Exploration and



EXHIBIT
4

AR-000024

Production Sharing Agreement with the Ministry of Energy and Mining of the Republic of Sudan – the owner of Sudapet.

3.      On November 21, 2003 Cliveden authorized the transfer of $915,102 from Banco Atlantico (Gibraltar) to the Sudapet account in Switzerland. See Dickieson Affidavit, Exhibits 1 and 2.

4.      For reasons currently unverified, the wired funds were routed through the Bank of New York on their way to Sudapet's account. See Dickieson Affidavit, Exhibit 3.

5.      The Bank of New York blocked the further transfer of funds to Sudapet based on sanctions imposed on Sudanese assets in the United States. See Dickieson Affidavit, Exhibit 3.

6.      Sudapet refused to allow the Cliveden transaction to close until it actually received $915,102 in the Swiss Sudapet account.

7.      To close the transaction, on December 8, 2003, Cliveden legally transferred an additional $915,102 to Sudapet in a wire transaction that did not involve any U.S banks. See Dickieson Affidavit, Exhibits 4 and 5.

8.      Sudapet received the second $915,102 and the transaction closed.

9.      Subsequent to receiving the oil rights, Cliveden assigned the oil lease to another company, High Tech Petroleum, and assigned its claim to the blocked $915,102 to Zarmach. See Dickieson Affidavit, Exhibit 6.

10.     At all times, Cliveden, as a BVI corporation, was operating legally and was not in violation of any laws.

11.     At all times, Zarmach, as a BVI corporation, was operating legally and was not in violation of any laws.

2

AR-000025

12.     Neither Sudapet nor the Government of Sudan (or any other agency of Sudan) have any claim to ownership of the sum of $915,102 that is currently held in the registry of this Court.

13.     The $915,102 is solely the property of Zarmach and should be paid to Zarmach.

14.     Under no circumstances should the $915,102 be used to satisfy any claim against Sudapet or the government of Sudan, as that would amount to a confiscation of funds belonging to a BVI corporation, and no such confiscation is authorized by any law. Such confiscation would actually provide a benefit to the Government of Sudan by reducing Sudan's liabilities without sacrificing any Sudanese assets. That clearly was not the intention underlying the order to block the transfer of funds in question.

WHEREFORE, Zarmach Oil Services, Inc. respectfully objects to the distribution of its funds to any Petitioners in this case and requests that the $915,102 plus interest from November 21, 2003 be transferred to Zarmach forthwith.

November 21, 2008                        Respectfully submitted,

                                         SCHERTLER & ONORATO, L.L.P.


                                         By:      _____/s/_____
                                                  Lisa F. Fishberg , Esq.
                                                  David H. Dickieson, Esq.
                                                  601 Pennsylvania Avenue, NW
                                                  North Building – 9th Floor
                                                  Washington, DC 20004
                                                  202-628-4199
                                                  Facsimile: 202-628-4177
                                                  LFishberg@schertlerlaw.com
                                                  DDickieson@schertlerlaw.com

AR-000026

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Claim was filed and served via ECF with copies being sent via facsimile to the following counsel, this 21st day of November, 2008:

> Andrew C. Hall, Esq.
> Hall, Lamb and Hall, PA
> 2665 South Bayshore Drive – Penthouse One
> Miami FL 33133
> Facsimile No: 305-374-5033

> Howard B. Levi, Esq.
> Levi Lubarsky & Feigenbaum LLP
> 1185 Avenue of the Americas – 17th Floor
> New York NY 10036
> Facsimile No: 212-308-8830

David H. Dickieson

4

AR-000027

Case 1:09-cv-02164-ESH   Document 322-1   Filed 05/10/17   Page 30 of 31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
OLIVIA RUX, et al.,

                  Petitioners,                  Case No. 08 Civ. 6588 (AKH)

           - against –

ABN-AMRO BANK, N.V., et al.              **AFFIDAVIT IN SUPPORT**
                                             **OF CLAIM**

                  Respondents.
-----------------------------------------------------------X

     DAVID H. DICKIESON, being duly sworn, does hereby swear and affirm under oath the following:

     1.     I have reviewed the facts and circumstances described in the concurrently-filed Claim and I hereby affirm that Exhibit 1 is a business record of Cliveden Petroleum Co., Ltd. kept in the ordinary course of business, which confirms that on November 18, 2003, Cliveden Petroleum Co., Ltd. issued an order to Banco Atlantico for payment to The Sudanese Petroleum Corporation of $915,102 with respect to the "2003 obligations under EPSA dated 21st October 2003."

     2.     Exhibit 2 is the Banco Atlantico (Gibraltar) Ltd. monthly statement for November 2003 showing that $915,355.45 was transferred by Cliveden to the "SUDANESE EUR" on November 19, 2003.

     3.     Exhibit 3 is a true copy of a letter dated November 21, 2003 from Cliveden Oil to the Bank of New York protesting the blockage of $915,102 in funds to be used for Social Development and Training Fund, among other uses, in Sudan.

     4.     Exhibit 4 confirms that on December 5, 2003, Cliveden Petroleum Co., Ltd. issued another replacement order to Banco Atlantico for payment to The Sudanese Petroleum

AR-000028

Corporation of $915,102 with respect to the "2003 obligations under EPSA dated 21st October 2003."

5.  Exhibit 4 is the Banco Atlantico (Gibraltar) Ltd. monthly statement for December 2003 showing that a second payment of $915,362.23 was transferred to the "SUDANESE PET" on December 9, 2003.

6.  The transfer described in Exhibits 4 and 5 was required to replace the transaction that was contemplated by Exhibits 1 and 2, as the earlier transaction was prevented by the blockage of funds by the Bank of New York.

7.  Corporate records indicate that the second transfer of funds was not blocked and the obligation owed to Sudan was satisfied.

8.  Verification of the fact that Sudan's claim was satisfied is also evidenced by the fact that Sudan has made no claim to the funds which were blocked by the Bank of New York and which have now been paid into this Court.

9.  Exhibit 6 demonstrates that Zarmach Oil is the successor in interest to Cliveden Petroleum Co,. Ltd. with respect to a claim for funds which were blocked by the Bank of New York on November 21, 2003.

10.  The $915,102 is solely the property of Zarmach and no other party has made a legal claim on such funds

2